Steven T. Lowe, Esq. (SBN 122208)
Lowe & Associates
8383 Wilshire Boulevard, Suite 1038
Beverly Hills, CA 90211
E: steven@lowelaw.com

Alfred (AJ) Fluehr, Esq.
Attorney ID No.:  316503
280 N. Providence Road | Suite 1
Media, PA 19063
T:  (215) 341-1063
T:  (215) 500-1000
E: aj@francisalexander.com
*Law Firm / Lawyer for Plaintiff*
*Moving for Admission Pro Hac Vice*

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

Sound and Color, LLC
    *Plaintiff*

        v.

Samuel Smith
Normani Kordei Hamilton
Stargate
Mikkel Storleer Eriksen
Tor Erik Hermansen
James John Napier
Universal Music Group
Universal Music Operations Limited
UMG Recordings Inc.
Sony Music Group
Sony Corporation of America
Sony/ATV Music Publishing LLC
Sony/ATV Music Publishing Ltd.
Sony/ATV Songs LLC
EMI Music Publishing LTD
EMI April Music Inc.
EMI Blackwood Music Inc.
Downtown Music Publishing LLC
Salli Isaak Songs LTD
Naughty Words Limited

**Case No. 2:22-cv-01508**

**Case Filed: 3/4/2022**

**Causes of Action:**
1. Direct Infringement
2. Contributory Infringement
3. Vicarious Infringement

***Jury Trial Demanded***

i

PLAINTIFF'S COMPLAINT

1   Songs of NKH
2   Stellar Songs Limited
    Stellar Songs
3   Tim & Danny Music LLC
4   45th & 3rd Music LLC
            *Defendants*
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFF'S COMPLAINT

## **PLAINTIFF'S COMPLAINT**

### **Introduction**

1.     This music copyright infringement suit arises from copying by defendants Sam Smith ("Smith") and Normani Kordei Hamilton ("Normani") of Plaintiff's 2015 song "Dancing With a Stranger" (the Plaintiffs' composition/song recording shall hereinafter be referred to as the "Song") to create their hit 2019 song "Dancing With a Stranger" (the Defendants' composition/sound recording shall hereinafter be referred to as the "Infringing Song") (collectively the "Songs").

2.     The hook/chorus in both songs—the most significant part and artistic aspect of these works—contains the lyrics "dancing with a stranger" being sung over a nearly identical melody and musical composition. In both songs, the title, hook, chorus, lyrics, and musical composition are all the same—and are repeated throughout the song giving both songs their identities.

3.     A quick listen to the comparison at the following link, and consideration of the extraordinary similarities in the music videos, will quickly dispel any doubt that Plaintiff's song was copied: https://youtu.be/Ibh1yPSCIw8.

4.     The Infringing Song is certified Platinum in over ten countries and was the most-played radio track of 2019 according to several sources. It has been streamed over 3 billion times as of March 2021 and received well over 3.1 billion audience impressions from radio airplay just in 2019.

### **Background**

5.     In February/March 2015, singer and songwriter Jordan Vincent wrote "Dancing with a Stranger" (also known as "Dancing With Strangers"), along with Christopher Miranda of the production duo known as SKX.

6.     SKX is comprised of Christopher Miranda and Rosco Banlaoi, who split ownership for all SKX songs.

7.     The sound recording and composition therein for Plaintiff's song is registered at no. SR0000847699 with the copyright office, attached as **Exhibit 1**.

8.     In April 2015, Vincent, Miranda, and Banlaoi shot a music video for the Song, which primarily consisted of a young woman interpretive dancing alone in a minimalistic room/studio (the "Video").

9.     After extensively shopping the Song and Video around the industry in 2015 and receiving interest (discussed more below), Vincent posted the Song on SoundCloud in January 2016. It garnered over 500,000 listens by mid-2018.

10.    It was then released on Vincent's YouTube channel, Spotify, and other streaming services on August 30, 2017, where it garnered tens of thousands more views/listens by mid-2018.

11.    Following this release, Vincent also hired Rayne Music who promoted the Song and Video to industry contacts in early 2018.

12.    There was interest and Rayne Music had sit down meetings with several interested parties.

13.    On January 11, 2019, Vincent was alerted by a friend that superstar Sam Smith and Normani (formerly of the girl group Fifth Harmony) had released a song entitled "Dancing with A Stranger" earlier that day. The Infringing Song went on to become a massive hit, which to date has been streamed billions of times and has billions of additional radio impressions.

14.    It was immediately obvious from the title, lyrics, melody, and overall production that appears in both songs, especially the hooks, that Defendants had taken Plaintiff's work.[1]

15.    It is beyond any real doubt that Smith, Normani, and the other defendants copied Plaintiff's work. The protected expression in both the Infringing Song and Plaintiff's preexisting work is nearly identical and is strikingly similar.

16.    It is a common practice in music production to take a reference track and

---

[1]    When a song or work is referred to the reference includes both the composition and sound recording unless otherwise specified.

2

PLAINTIFF'S COMPLAINT

speed it up or slow it down; this results in a natural pitch shift which places it in a different key more suited to a particular singer. Tellingly, when Plaintiff's song is slowed down from 122 bpm to the 103 bpm used by the Infringing Song, the key of the two songs match. This is a further indication that Plaintiff's song was copied by Defendants and that they are substantially similar.

17.    When the songs are compared, it is apparent that the underlying composition is nearly identical and was copied, as was the sound recording: https://youtu.be/Ibh1yPSCIw8. A copy of the side-by-side comparison video of the sound recordings shall be lodged with the court as **Exhibit 4**.

18.    In addition to the "hook" of the songs being the same musical phrase, arranged with the same title and lyrics, Smith and Normani put out a music video for the song which is very similar to Plaintiff's music video. Compare Plaintiff's Video https://www.youtube.com/watch?v=JGYBUkvT3cU with Defendants' Video, https://www.youtube.com/watch?v=av5JD1dfj_c. A true and correct copy of the Plaintiff's music video shall be lodged with the court as **Exhibit 5**. A true and correct copy of the Defendants' music video shall also be lodged with the court as **Exhibit 6**.

19.    A true and correct copy of Plaintiff's Registered Deposit Copy Sound Recording shall be lodged with the court as **Exhibit 7**.

20.    Both videos consist of a girl performing interpretive dance *alone* in a minimalist studio, interspersed with shots of the male vocalist:

*[left intentionally blank]*

Plaintiff's video:



Defendants' Video:



21.     A girl dancing alone is not an obvious visual theme for a music video titled "Dancing With a Stranger," tending to dispel any notion that this similarity is a coincidence.

22.     When the extraordinary musical similarity between the songs is also factored in, it becomes even more apparent that it is impossible that the infringing composition and sound recording were independently created.

*[left intentionally blank]*

PLAINTIFF'S COMPLAINT

23. Bizarrely, the graphic logo for Defendants' video is practically identical in design to the logo on Vincent's business card:



24. Another suspicious coincidence is that the call sheet for Plaintiff's music video specifically mentioned using the visual concept of mannequins coming to life.

25. Although this concept was not ultimately utilized in Plaintiff's music video, Normani and the director of Defendants' music video gave an interview in 2019 discussing how Defendants wanted to use porcelain statues coming to life for their music video. The odds that such a unique but highly similar idea would have come independently to Defendants are astronomical, especially considering the other shared similarities.

26. Plaintiff is not claiming copyright infringement of the visual content of Plaintiff's video (or infringement of Vincent's logo) but it is evidence to dispel the possibility of independent creation.

///

///

## Alleged Creation of Defendants' Song

27. In late January 2019, after the Infringing Song was released to the public on January 11, 2019, defendant Smith stated in an interview with Beats Radio that he wrote the Infringing Song in one day with Stargate at The Stellar House studio during a break from his 2018 tour: "And she [Normani] was coming in that day to have a meeting with Tim [Blacksmith]. I played her the song. She just jumped on it there and then, and it was perfect."

https://www.youtube.com/watch?v=nRREIlYUv1k&feature=youtu.be&t=138, at minute 2:18.

28. Smith claims that Normani and Smith were introduced that day and that Normani then spontaneously contributed to existing music Smith was working on. The day is believed to be on or around August 7, 2018.

29. Upon information and belief, Normani's presence at the studio and work with Sam Smith were not spontaneous nor coincidental.

30. In May 2020, Normani referenced upcoming collaborations in an interview. https://www.dailymotion.com/video/x6jydyz. Further bolstering this conclusion is the fact that planned social media and press exposure took place in the form of social media postings by Normani's manager on or around August 8, 2018, when the Infringing Song was allegedly written, promoting Smith and Normani working together, and music industry news outlets also reported on a Smith-Normani collaboration in late-summer, early fall 2018.

## Defendants' Had Access to Plaintiff's Song

31. "Access" can and will be proven in several different ways:

32. **First**, the songs are musically strikingly similar, i.e. independent creation is extremely unlikely, especially when factoring in the selection and arrangement of the lyrics, melody, and hook.

33. Attached as **Exhibit 2** is the Report of Dr. Alexander Stewart, opining that the similarities in the music and the selection and arrangement of the music,

1  production, lyrics, and other elements of the works make independent creation
2  extremely unlikely.

3       34.    Furthermore, it is impossible that the combined similarities between the
4  songs outside of the musical elements—same title, same video, same logo, proposed
5  use of mannequins—all occurred coincidentally. These similarities further preclude
6  independent creation.

7       35.    **Second**, Defendants had access to Plaintiff's Song because it was widely
8  distributed. Not only was Plaintiff's Song widely "shopped" around the music
9  industry from 2015 to 2018, but Jordan Vincent released the song publicly on
10 SoundCloud in January 2016 and posted the Song and Video on his YouTube channel
11 and also on Spotify, Apple Music, Tidal, Deezer, and other platforms on or around
12 August 30, 2017. The SoundCloud posting alone accrued over 500,000 listens by mid-
13 2018, and tens of thousands of additional views/listens on YouTube and other
14 platforms. The fact that Plaintiff's song received over half a million views/listens
15 before the Infringing Song was allegedly composed in August 2018 establishes access
16 by Defendants to Plaintiff's work due to its sufficiently widespread distribution.

17 **<u>Defendants' Had Access to Plaintiff's Song through Thrive Records; Thrive</u>**
18 **<u>was Given Plaintiff's Song in 2015 and then, After Defendants' Infringing Song</u>**
19 **<u>was Released, Tried to Buy Plaintiff's Song in 2020</u>**

20      36.    **Third,** in the alternative, Plaintiff alleges that the Song was given to
21 Defendants by and through Thrive Records. In 2015, Thrive Records was extremely
22 interested in using Plaintiff's Song for another artist, but the deal never went through.
23 Thrive is owned by Ricardo Vinas, and the contacts were facilitated by Peter Torres,
24 who was either employed by Thrive at that time or helping Vinas acquire the Song.
25 Thrive was also shown the Video and also given the call sheet for the Video.

26      37.    Thrive showed no further interest in the song in 2015.

27      38.    Then, in May/June 2020, Peter Torres reached out to the trio out of the
28 blue on behalf of Ricardo Vinas, Thrive's owner. Torres was acting as an agent of

Ricardo and Thrive. Thrive stated that it wanted to buy Plaintiff's Song—now five years after Thrive was first interested. Thrive had shown no interest during that intervening time period. This timing is highly unusual.

39.     Thrive now wanted to give Vincent, Miranda, and Banlaoi around $3,000 as an advance and some publishing rights. There, however, was a curious caveat: Thrive and Ricardo wanted all traces of Plaintiff's Song and Video removed from all platforms before the deal was consummated.

40.     All of this was bizarre as Thrive had passed on the Song in 2015, and had now contacted Vincent, Miranda, and Banlaoi out of the blue in May/June 2020 as if with an agenda or goal in mind.

41.     Vincent asked Torres why Thrive was interested given that it was five years later; Torres said only that Ricardo had been listening to old songs.

42.     This is not credible, because half a decade in music industry terms is a huge amount of time, when multitudes of new songs are being pushed by thousands of writers and artists every day to labels. Moreover, not only had Thrive passed on Plaintiff's Song, but it was now stale and had already been released for four years.

43.     Vincent asked Torres if Ricardo was aware of the Infringing Song and the similarities, and Torres admitted that Ricardo was aware of the similar titles, but that he was unaware of whether Ricardo knew about the melodic similarities.

44.     This story does not make sense. Ricardo clearly knew the melodies and lyrics are the same because the Infringing Song was a huge hit with which Ricardo must have been familiar, and by Torres's own admission Ricardo had recently listened to Plaintiff's Song and wanted to buy the rights. Ricardo knew about the pronounced similarities.

45.     If Ricardo and Torres had spoken about the similar titles of the two songs called Dancing With a Stranger, as Torres admits they did, then it is perfectly obvious that Thrive was aware of the other similarities.

PLAINTIFF'S COMPLAINT

46.     That Thrive misled Vincent, Miranda, and Banlaoi about whether Thrive knew about the similarities between the two songs indicates a hidden agenda behind the sudden and otherwise inexplicable decision to buy Plaintiff's Song 5 years later.

47.     Torres also probed whether Vincent, Miranda, and Banlaoi had taken legal action; when they said no, Torres insisted that they should just let Thrive and Ricardo put some money in their pockets and that suing was expensive. This, too, was very suspicious.

48.     Vincent asked for a proposed contract as a demonstration of good faith. Thrive and Ricardo never sent the contract and Plaintiff's Song was never taken down; they heard nothing further from Thrive despite multiple attempts to follow up in June and early July 2020.

49.     As described below, Ricardo /Torres and Normani's team know each other, and the fact that Ricardo attempted to buy Plaintiff's Song after the fact knowing full well about its similarities to a major hit by Normani and Sam Smith, indicate that Defendants were well aware of Plaintiff's Song, and had access to same.

50.     Plaintiff alleges that Thrive and/or its agents gave their Song to Defendants and/or told them where it could be found prior to the Infringing Song's creation, and that Defendants had access in this way.

51.     Following this bizarre exchange and Thrive's subsequent nonresponses, Miranda and Banlaoi were at a party at Avex House studio on July 24, 2020, and randomly saw Peter Torres. Torres was at that point employed by Avex House as head of A&R. Ricardo Vinas also was present and reacted awkwardly when he saw that Miranda and Banlaoi were there. At one point during the party, Torres pointed out to the duo that Normani's manager Brandon Silverstein and his partner Josh Hallbauer were present; Torres was obviously acquainted with Silverstein.

52.     Upon information and belief, Thrive and Ricardo are also acquainted with Silverstein, as well as Tim Blacksmith (Normani's mentor, owner of Stellar

PLAINTIFF'S COMPLAINT

House Studio, and principal member of defendant Tim & Danny) and defendants Eriksen, Hermansen, Napier and Smith.

53.   The foregoing individuals (i.e., Silverstein, Blacksmith, Eriksen, Hermansen, Napier, and Smith) were all intimately involved in the alleged creation of Infringing Song and are alleged to have had access to Plaintiff's Song through Thrive.

54.   **Fifth**, in the alternative, defendant Normani was given the Song by Jared Cotter. Normani used to be in the girl band Fifth Harmony. When the Plaintiff's assignors were shopping the Song in September 2015 to Thrive Records, Jared Cotter was managing the prospective deal for the Plaintiff's assignors and received the Song and Video as part of facilitating the deal (which eventually fell through).

55.   Just two weeks later Cotter posted on social media that he was working with Normani and Fifth Harmony in the studio.

56.   Cotter is reasonably believed to have given Normani the Song during that time.

57.   Cotter, it should be noted, co-manages the artist, Bazzi, along with Normani's manager, Brandon Silverstein.

58.   **Sixth**, in the alternative, access to Plaintiff's Song is demonstrated by Defendants' use and mention of the ideas used and considered in the creation of Plaintiff's music video. Vincent, Miranda, and Banlaoi created the concept of a woman interpretive dancing alone, which was counterintuitive and unique given the title of the music video "Dancing With a Stranger". Nothing about this theme or motif is suggested by the title or lyrics of Plaintiff or Defendants' songs.

59.   Furthermore, during the creative process the Plaintiff's assignors created call sheets which discussed using the idea of portraying lifeless mannequins coming to life. This idea, too, is unique and not suggested by the title or lyrics of the song. In fact, it is a creative and bizarre concept. Moreover, it was not used in the video. Only a limited number of people had access to the call sheet.

60.   The Video released by Defendants for their Infringing Song is thematically and visually similar to Plaintiff's video. It, too, features a lone woman performing interpretative dance, interspersed with shots of a male vocalist. When viewed along with the musical, lyrical, and title similarities, the possibility of independent creation is extremely unlikely.

61.   Further proof of access comes from an interview comment by Normani and the director of Defendants' music video, Vaughan Arnell, that Defendants had considered using porcelain statues coming to life in the music video—just as the trio had wanted to do with mannequins. Plaintiff alleges that it is not possible that these commonalities, especially in combination, are the product of coincidence.

62.   As a result of Defendants' exploitation of Plaintiff's song without permission, they obtained a massive international hit single which generated significant revenue and profits.

63.   Defendants' representatives were contacted in November 2020 about the similarities. Defendants were given every chance to come up with an innocent explanation, but, despite assurances that a response was coming including a musicological analysis and report, the Defendants never issued a response. This suit is being filed as a last resort.

*****

PLAINTIFF'S COMPLAINT

1

## THE PARTIES

2   I.   **Plaintiff**

3        A.   **Sound and Color, LLC ("Sound and Color" or "Plaintiff")**

4        64.   Plaintiff Sound and Color, LLC is a Pennsylvania limited liability

5   company, which owns all rights and interests in Plaintiff's Song, including the music

6   composition copyright and sound recording copyright.

7        65.   In February/March 2015, singer and songwriter Jordan Vincent wrote

8   "Dancing with a Stranger" (also known as "Dancing With Strangers"), along with co-

9   authors Christopher Miranda and Rosco Banlaoi of the production duo known as

10  SKX.

11       66.   In February/March 2015, singer and songwriter Jordan Vincent wrote

12  "Dancing with a Stranger" (also known as "Dancing With Strangers"), along with

13  Christopher Miranda of the production duo known as SKX.

14       67.   Vincent, Miranda, and Banlaoi have transferred all of their ownership

15  and copyright interest in the music composition and sound recording to plaintiff entity

16  Sound and Color, LLC, which is the owner of the song. The assignment is in the

17  process of being recorded with the Copyright Office.

18       68.   Vincent, Miranda, and Banlaoi have transferred all of their ownership

19  and copyright interest in the music composition and sound recording to plaintiff entity

20  Sound and Color, LLC, which is the owner of the song. The assignment is in the

21  process of being recorded with the Copyright Office to update its current ownership.

22  II.  **Defendants**

23       A.   **Samuel Smith ("Smith")**

24       69.   Sam Smith is a recording artist who resides in Los Angeles, CA and

25  London, UK.

26       70.   Defendant Smith co-authored and owns the infringing song "Dancing

27  With a Stranger."

28

71.     Defendant Smith directly infringed Plaintiff's Song by duplicating it, copying it, creating derivative works, publicly performing it, and otherwise reproducing and exploiting it without authorization.

72.     At all points Defendant Smith had the right and ability to control or stop the infringing conduct but failed to do so.

73.     At all points as a co-author and co-owner of the Infringing Song Defendant Smith knew of the infringement and also materially contributed and caused the infringement by, including but not limited to, promoting, distributing, and selling the infringing song "Dancing With a Stranger" and/or permitting its use. This includes by licensing the song's use, or allowing the same, on streaming and digital download services such as Spotify, YouTube, Pandora, Amazon, iTunes, and others.

74.     Defendant has received significant financial benefits as a result of the infringement.

75.     Although Smith has publicly claimed that he wrote the Infringing Song in a day in August 2018, giving the impression he wrote the song from his own creativity, this is not consistent with how he and his team typically create music.

76.     In reality most of the songs he "writes" are collaborative efforts, as indicated by the five credited authors on "Dancing With a Stranger," including defendants Eriksen, Hermansen, and Napier. These collaborative writing efforts typically include using preexisting pieces of music to create songs.

77.     The songwriting process used by Smith and his team is relevant to how the Infringing Song was allegedly created, especially where existing music is typically used by Smith and his co-authors to create new songs.

78.     For instance, Smith and Napier wrote a song in or around 2014 called "Stay With Me." The melody was highly similar to Tom Petty's famous "I Won't Back Down," leading to infringement allegations by Petty against Smith.

79.     Although Smith (dubiously) denied ever hearing the famous song before writing "Stay With Me," there is little doubt that his co-authors and team had heard it and that it influenced the writing of Smith's song.

80.     Restated, Smith does not typically create songs on his own and by himself as he often states and implies, but instead the original musical ideas typically come from other sources.

81.     The significance is that Defendants' songwriting process discredits Smith's public statements implying he wrote "Dancing With a Stranger" in a day, and also indicates that preexisting music (i.e. Plaintiff's Song) was used to create it.

**B.     Normani Kordei Hamilton ("Normani")**

82.     Normani Kordei Hamilton is a singer songwriter who upon information and belief resides in Los Angeles, CA and Texas.

83.     Defendant Normani co-authored and co-owns the infringing song "Dancing With a Stranger."

84.     Defendant Normani directly infringed Plaintiff's Song by duplicating it, copying it, creating derivative works, publicly performing it, and otherwise reproducing and exploiting it without authorization.

85.     At all points Defendant Normani had the right and ability to control or stop the infringing conduct but failed to do so.

86.     At all points as a co-author and co-owner of the Infringing Song Defendant Normani knew of the infringement and also materially contributed and caused the infringement by, including but not limited to, promoting, distributing, and selling the infringing song "Dancing With a Stranger" and/or permitting its use. This includes by licensing the song's use, or allowing the same, on streaming and digital download services such as Spotify, YouTube, Pandora, Amazon, iTunes, and others.

87.     Defendant Normani has received significant financial benefits as a result of the infringement.

**C.    Stargate ("Stargate")**

88.    Stargate is a production duo composed of Mikkel Eriksen and Tor Hermansen.

89.    Upon information and belief it is an entity of unknown form.

90.    Defendant Stargate co-authored and co-owns the Infringing Song "Dancing With a Stranger."

91.    Defendant Stargate, by and through Eriksen and Hermansen, directly infringed Plaintiff's Song by duplicating it, copying it, creating derivative works, publicly performing it, and otherwise reproducing and exploiting it without authorization.

92.    At all points Defendant Stargate had the right and ability to control or stop the infringing conduct but failed to do so.

93.    At all points as a co-author and co-owner of the Infringing Song Defendant Stargate knew of the infringement and also materially contributed and caused the infringement by, including but not limited to, promoting, distributing, and selling the infringing song "Dancing With a Stranger" and/or permitting its use. This includes by licensing the song's use, or allowing the same, on streaming and digital download services such as Spotify, YouTube, Pandora, Amazon, iTunes, and others.

94.    Defendant Stargate has received significant financial benefits as a result of the infringement.

**D.    Mikkel Storleer Eriksen ("Eriksen")**

95.    Mikkel Storleer Eriksen is a songwriter residing, upon information and belief, in Norway and Los Angeles, CA.

96.    Defendant Eriksen co-authored and co-owns the Infringing Song "Dancing With a Stranger."

97.    Defendant Eriksen directly infringed Plaintiff's Song by duplicating it, copying it, creating derivative works, publicly performing it, and otherwise reproducing and exploiting it without authorization.

15

98.    At all points Defendant Eriksen had the right and ability to control or stop the infringing conduct but failed to do so.

99.    At all points as a co-author and co-owner of the infringing song Defendant Eriksen knew of the infringement and also materially contributed and caused the infringement by, including but not limited to, promoting, distributing, and selling the infringing song "Dancing With a Stranger" and/or permitting its use. This includes by licensing the song's use, or allowing the same, on streaming and digital download services such as Spotify, YouTube, Pandora, Amazon, iTunes, and others.

100.    Defendant Eriksen has received significant financial benefits as a result of the infringement.

### E.    Tor Erik Hermansen ("Hermansen")

101.    Tor Erik Hermansen is a songwriter residing, upon information and belief, in Norway and Los Angeles, CA.

102.    Defendant Hermansen co-authored and co-owns the Infringing Song "Dancing With a Stranger."

103.    Defendant Hermansen directly infringed Plaintiff's Song by duplicating it, copying it, creating derivative works, publicly performing it, and otherwise reproducing and exploiting it without authorization.

104.    At all points Defendant Hermansen had the right and ability to control or stop the infringing conduct but failed to do so.

105.    At all points as a co-author and co-owner of the infringing song Defendant Hermansen knew of the infringement and also materially contributed and caused the infringement by, including but not limited to, promoting, distributing, and selling the infringing song "Dancing With a Stranger" and/or permitting its use. This includes by licensing the song's use, or allowing the same, on streaming and digital download services such as Spotify, YouTube, Pandora, Amazon, iTunes, and others.

106.    As an owner of the infringing copyright Defendant has received significant financial benefits as a result of the infringement.

**F.      James John Napier aka Jimmy Napes ("Napier")**

107.   James John Napier is a British songwriter residing upon information and belief in the United Kingdom and Los Angeles, CA.

108.   Defendant Napier co-authored and co-owns the Infringing Song "Dancing With a Stranger."

109.   Defendant Napier directly infringed Plaintiff's Song by duplicating it, copying it, creating derivative works, publicly performing it, and otherwise reproducing and exploiting it without authorization.

110.   At all points Defendant Napier had the right and ability to control or stop the infringing conduct but failed to do so.

111.   At all points as a co-author and co-owner of the infringing song Defendant Napier knew of the infringement and also materially contributed and caused the infringement by, including but not limited to, promoting, distributing, and selling the infringing song "Dancing With a Stranger" and/or permitting its use. This includes by licensing the song's use, or allowing the same, on streaming and digital download services such as Spotify, YouTube, Pandora, Amazon, iTunes, and others.

112.   As an owner of the infringing copyright Defendant has received significant financial benefits as a result of the infringement.

**G.      EMI Music Publishing LTD ("EMI Music Publishing")**

113.   EMI Music Publishing is owned by Sony/ATV which is doing business as Sony Music Publishing. It is unclear if it is extant entity.

114.   Defendant co-owns and/or publishes and/or administers the Infringing Song "Dancing With a Stranger," at least in part.

115.    Defendant EMI Music Publishing directly infringed Plaintiff's Song by duplicating it, copying it, creating derivative works, publicly performing it, and otherwise reproducing and exploiting it without authorization.

116.   At all points Defendant EMI Music Publishing had the right and ability to control or stop the infringing conduct but failed to do so.

17

117.   At all points as a co-owner and co-administrator of the infringing song Defendant EMI Music Publishing knew of the infringement and also materially contributed and caused the infringement by, including but not limited to, promoting, distributing, and selling the infringing song "Dancing With a Stranger" and/or permitting its use. This includes by licensing the song's use, or allowing the same, on streaming and digital download services such as Spotify, YouTube, Pandora, Amazon, iTunes, and others.

118.   As an owner of the infringing copyright Defendant has received significant financial benefits as a result of the infringement

### H.   EMI April Music Inc. ("April Music")

119.   Defendant owns and/or publishes and/or administers the infringing song "Dancing With a Stranger," at least in part.

120.   Defendant April Music directly infringed Plaintiff's Song by duplicating it, copying it, creating derivative works, publicly performing it, and otherwise reproducing and exploiting it without authorization.

121.   At all points Defendant April Music had the right and ability to control or stop the infringing conduct but failed to do so.

122.   At all points as a co-owner and co-administrator of the Infringing Song Defendant April Music knew of the infringement and also materially contributed and caused the infringement by, including but not limited to, promoting, distributing, and selling the infringing song "Dancing With a Stranger" and/or permitting its use. This includes by licensing the song's use, or allowing the same, on streaming and digital download services such as Spotify, YouTube, Pandora, Amazon, iTunes, and others.

123.   Defendant has received significant financial benefits as a result of the infringement

### I.   EMI Blackwood Music Inc. ("EMI Blackwood")

124.   Defendant owns and/or publishes and/or administers the infringing song "Dancing With a Stranger," at least in part.

125.   Defendant EMI Blackwood directly infringed Plaintiff's Song by duplicating it, copying it, creating derivative works, publicly performing it, and otherwise reproducing and exploiting it without authorization.

126.   At all points Defendant EMI Blackwood had the right and ability to control or stop the infringing conduct but failed to do so.

127.   At all points as a co-owner and co-administrator of the Infringing Song Defendant EMI Blackwood knew of the infringement and also materially contributed and caused the infringement by, including but not limited to, promoting, distributing, and selling the infringing song "Dancing With a Stranger" and/or permitting its use. This includes by licensing the song's use, or allowing the same, on streaming and digital download services such as Spotify, YouTube, Pandora, Amazon, iTunes, and others.

128.   Defendant has received significant financial benefits as a result of the infringement

**J.    Salli Isaak Songs LTD ("Salli")**

129.   This is a publishing entity owned by defendant Napier.

130.   Defendant Salli owns and/or publishes and/or administers the infringing song "Dancing With a Stranger," at least in part.

131.    Defendant Salli directly infringed Plaintiff's Song by duplicating it, copying it, creating derivative works, publicly performing it, and otherwise reproducing and exploiting it without authorization.

132.   At all points Defendant Salli had the right and ability to control or stop the infringing conduct but failed to do so.

133.   At all points as a co-owner and co-administrator of the Infringing Song Defendant Salli knew of the infringement and also materially contributed and caused the infringement by, including but not limited to, promoting, distributing, and selling the infringing song "Dancing With a Stranger" and/or permitting its use. This includes by licensing the song's use, or allowing the same, on streaming and digital download

19

1   services such as Spotify, YouTube, Pandora, Amazon, iTunes, and others.

2   134.   Defendant has received significant financial benefits as a result of the
3   infringement.

4   **K.   Downtown Music Publishing LLC ("Downtown")**

5   135.   Defendant owns and/or publishes and/or administers the infringing song
6   "Dancing With a Stranger," at least in part.

7   136.   Defendant Downtown directly infringed Plaintiff's Song by duplicating
8   it, copying it, creating derivative works, publicly performing it, and otherwise
9   reproducing and exploiting it without authorization.

10   137.   At all points Defendant Downtown had the right and ability to control or
11   stop the infringing conduct but failed to do so.

12   138.   At all points as a co-owner and co-administrator of the Infringing Song
13   Defendant Downtown knew of the infringement and also materially contributed and
14   caused the infringement by, including but not limited to, promoting, distributing, and
15   selling the infringing song "Dancing With a Stranger" and/or permitting its use. This
16   includes by licensing the song's use, or allowing the same, on streaming and digital
17   download services such as Spotify, YouTube, Pandora, Amazon, iTunes, and others.

18   139.   Defendant has received significant financial benefits as a result of the
19   infringement.

20   **L.   Universal Music Operations Limited ("Universal Music**
21        **Operations")**

22   140.   This is the official name of Universal Music UK, which owns the
23   phonographic copy of the infringing song "Dancing With a Stranger."

24   141.   Defendant Universal Music Operations owns and/or publishes and/or
25   administers the infringing song "Dancing With a Stranger," at least in part.

26   142.   Defendant Universal Music Operations directly infringed Plaintiff's
27   Song by duplicating it, copying it, creating derivative works, publicly performing it,
28   and otherwise reproducing and exploiting it without authorization.

143.   At all points Defendant Universal Music Operations had the right and ability to control or stop the infringing conduct but failed to do so.

144.   At all points as a co-owner and co-administrator of the Infringing Song Defendant Universal Music Operations knew of the infringement and also materially contributed and caused the infringement by, including but not limited to, promoting, distributing, and selling the infringing song "Dancing With a Stranger" and/or permitting its use. This includes by licensing the song's use, or allowing the same, on streaming and digital download services such as Spotify, YouTube, Pandora, Amazon, iTunes, and others.

145.   As an owner of the infringing copyright Defendant has received significant financial benefits as a result of the infringement.

**M.     Universal Music Group ("Universal Music")**

146.   Defendant Universal Music owns and/or publishes and/or administers the infringing song "Dancing With a Stranger," at least in part.

147.    Defendant Universal Music directly infringed Plaintiff's Song by duplicating it, copying it, creating derivative works, publicly performing it, and otherwise reproducing and exploiting it without authorization.

148.   At all points Defendant Universal Music had the right and ability to control or stop the infringing conduct but failed to do so.

149.   At all points as a co-owner and co-administrator of the Infringing Song Defendant Universal Music knew of the infringement and also materially contributed and caused the infringement by, including but not limited to, promoting, distributing, and selling the infringing song "Dancing With a Stranger" and/or permitting its use. This includes by licensing the song's use, or allowing the same, on streaming and digital download services such as Spotify, YouTube, Pandora, Amazon, iTunes, and others.

150.   Defendant has received significant financial benefits as a result of the infringement

21

**N.   Naughty Words Limited ("Naughty Words")**

151.   This is Sam Smith's publishing entity.

152.   Defendant Naughty Words owns and/or publishes and/or administers the infringing song "Dancing With a Stranger," at least in part.

153.   Defendant Naughty Words directly infringed Plaintiff's Song by duplicating it, copying it, creating derivative works, publicly performing it, and otherwise reproducing and exploiting it without authorization.

154.   At all points Defendant Naughty Words had the right and ability to control or stop the infringing conduct but failed to do so.

155.   At all points as a co-owner and co-administrator of the Infringing Song Defendant Naughty Words knew of the infringement and also materially contributed and caused the infringement by, including but not limited to, promoting, distributing, and selling the infringing song "Dancing With a Stranger" and/or permitting its use. This includes by licensing the song's use, or allowing the same, on streaming and digital download services such as Spotify, YouTube, Pandora, Amazon, iTunes, and others..

156.   Defendant has received significant financial benefits as a result of the infringement

**O.   Songs of NKH ("NKH")**

157.   This is a publishing entity owned by defendant Normani.

158.   Defendant owns and/or publishes and/or administers the infringing song "Dancing With a Stranger," at least in part.

159.   Defendant NKH directly infringed Plaintiff's Song by duplicating it, copying it, creating derivative works, publicly performing it, and otherwise reproducing and exploiting it without authorization.

160.   At all points Defendant NKH had the right and ability to control or stop the infringing conduct but failed to do so.

161.   At all points as a co-owner and co-administrator of the Infringing Song Defendant NKH knew of the infringement and also materially contributed and caused the infringement by, including but not limited to, promoting, distributing, and selling the infringing song "Dancing With a Stranger" and/or permitting its use. This includes by licensing the song's use, or allowing the same, on streaming and digital download services such as Spotify, YouTube, Pandora, Amazon, iTunes, and others.

162.   Defendant has received significant financial benefits as a result of the infringement.

**P.   Stellar Songs Limited ("Stellar Limited")**

163.   Upon information and belief this is a publishing entity for Stargate, Eriken, and Hermansen

164.   Defendant Stellar Limited owns and/or publishes and/or administers the infringing song "Dancing With a Stranger," at least in part.

165.   Defendant Stellar Limited directly infringed Plaintiff's Song by duplicating it, copying it, creating derivative works, publicly performing it, and otherwise reproducing and exploiting it without authorization.

166.   At all points Defendant Stellar Limited had the right and ability to control or stop the infringing conduct but failed to do so.

167.   At all points as a co-owner and co-administrator of the Infringing Song Defendant Stellar Limited knew of the infringement and also materially contributed and caused the infringement by, including but not limited to, promoting, distributing, and selling the infringing song "Dancing With a Stranger" and/or permitting its use. This includes by licensing the song's use, or allowing the same, on streaming and digital download services such as Spotify, YouTube, Pandora, Amazon, iTunes, and others.

168.   Defendant has received significant financial benefits as a result of the infringement.

**Q.     Stellar Songs ("Stellar")**

169.    Upon information and belief this is a publishing entity for Stargate, Eriken, and Hermansen

170.   Defendant Stellar owns and/or publishes and/or administers "Dancing With a Stranger," at least in part.

171.    Defendant Stellar directly infringed Plaintiff's Song by duplicating it, copying it, creating derivative works, publicly performing it, and otherwise reproducing and exploiting it without authorization.

172.   At all points Defendant Stellar had the right and ability to control or stop the infringing conduct but failed to do so.

173.   At all points as a co-owner and co-administrator of the Infringing Song Defendant Stellar knew of the infringement and also materially contributed and caused the infringement by, including but not limited to, promoting, distributing, and selling the infringing song "Dancing With a Stranger" and/or permitting its use. This includes by licensing the song's use, or allowing the same, on streaming and digital download services such as Spotify, YouTube, Pandora, Amazon, iTunes, and others.

174.   Defendant has received significant financial benefits as a result of the infringement.

**R.     Sony/ATV Music Publishing LLC ("Sony/ATV Music Publishing")**

175.    Defendant owns and/or publishes and/or administers the Infringing Song "Dancing With a Stranger," at least in part.

176.    Defendant Sony/ATV Music Publishing directly infringed Plaintiff's Song by duplicating it, copying it, creating derivative works, publicly performing it, and otherwise reproducing and exploiting it without authorization.

177.   At all points Defendant Sony/ATV Music Publishing had the right and ability to control or stop the infringing conduct but failed to do so.

178.   At all points as a co-owner and co-administrator of the Infringing Song Defendant Sony/ATV Music Publishing knew of the infringement and also materially

contributed and caused the infringement by, including but not limited to, promoting, distributing, and selling the infringing song "Dancing With a Stranger" and/or permitting its use. This includes by licensing the song's use, or allowing the same, on streaming and digital download services such as Spotify, YouTube, Pandora, Amazon, iTunes, and others.

179.   Defendant has received significant financial benefits as a result of the infringement

**S.     Sony/ATV Music Publishing Ltd. ("Sony/ATV Music Ltd.")**

180.    Defendant owns and/or publishes and/or administers the infringing song "Dancing With a Stranger," at least in part.

181.    Defendant Sony/ATV Music Ltd. directly infringed Plaintiff's Song by duplicating it, copying it, creating derivative works, publicly performing it, and otherwise reproducing and exploiting it without authorization.

182.   At all points Defendant Sony/ATV Music Ltd. had the right and ability to control or stop the infringing conduct but failed to do so.

183.   At all points as a co-owner and co-administrator of the Infringing Song Defendant Sony/ATV Music Ltd. knew of the infringement and also materially contributed and caused the infringement by, including but not limited to, promoting, distributing, and selling the infringing song "Dancing With a Stranger" and/or permitting its use. This includes by licensing the song's use, or allowing the same, on streaming and digital download services such as Spotify, YouTube, Pandora, Amazon, iTunes, and others.

184.   Defendant has received significant financial benefits as a result of the infringement.

**T.     Sony/ATV Songs LLC ("Sony/ATV Songs")**

185.    Defendant owns and/or publishes and/or administers the Infringing Song "Dancing With a Stranger," at least in part.

186.    Defendant Sony/ATV Songs directly infringed Plaintiff's Song by

duplicating it, copying it, creating derivative works, publicly performing it, and otherwise reproducing and exploiting it without authorization.

187.   At all points Defendant Sony/ATV Songs had the right and ability to control or stop the infringing conduct but failed to do so.

188.   At all points as a co-owner and co-administrator of the Infringing Song Defendant Sony/ATV Songs knew of the infringement and also materially contributed and caused the infringement by, including but not limited to, promoting, distributing, and selling the infringing song "Dancing With a Stranger" and/or permitting its use. This includes by licensing the song's use, or allowing the same, on streaming and digital download services such as Spotify, YouTube, Pandora, Amazon, iTunes, and others.

189.   Defendant has received significant financial benefits as a result of the infringement.

## U.   Sony Music Group; Sony Corporation of America (the "Sony Defendants")

190.   The Sony Defendants own and/or publish and/or administer the Infringing Song "Dancing With a Stranger," at least in part.

191.   The Sony Defendants directly infringed Plaintiff's Song by duplicating it, copying it, creating derivative works, publicly performing it, and otherwise reproducing and exploiting it without authorization.

192.   At all points the Sony Defendants had the right and ability to control or stop the infringing conduct but failed to do so.

193.   At all points as a co-owner and co-administrator of the Infringing Song The Sony Defendants knew of the infringement and also materially contributed and caused the infringement by, including but not limited to, promoting, distributing, and selling the infringing song "Dancing With a Stranger" and/or permitting its use. This includes by licensing the song's use, or allowing the same, on streaming and digital download services such as Spotify, YouTube, Pandora, Amazon, iTunes, and others.

194.   Defendants have received significant financial benefits as a result of the infringement.

V.   **UMG Recordings, Inc. ("UMG Recordings")**

195.   Defendant owns and/or publishes and/or administers the Infringing Song "Dancing With a Stranger," at least in part.

196.   Defendant UMG Recordings directly infringed Plaintiff's Song by duplicating it, copying it, creating derivative works, publicly performing it, and otherwise reproducing and exploiting it without authorization.

197.   At all points Defendant UMG Recordings had the right and ability to control or stop the infringing conduct but failed to do so.

198.   At all points as a co-owner and co-administrator of the infringing song Defendant UMG Recordings knew of the infringement and also materially contributed and caused the infringement by, including but not limited to, promoting, distributing, and selling the infringing song "Dancing With a Stranger" and/or permitting its use. This includes by licensing the song's use, or allowing the same, on streaming and digital download services such as Spotify, YouTube, Pandora, Amazon, iTunes, and others.

199.   Defendant has received significant financial benefits as a result of the infringement

W.   **Tim & Danny Music LLC ("Tim & Danny")**

200.   Defendant Tim and Danny executive produced and is alleged to own and/or publish and/or administer the infringing song "Dancing With a Stranger," at least in part.

201.   Defendant Tim & Danny directly infringed Plaintiff's Song by duplicating it, copying it, creating derivative works, publicly performing it, and otherwise reproducing and exploiting it without authorization.

202.   At all points Defendant Tim & Danny had the right and ability to control or stop the infringing conduct but failed to do so.

203.   At all points as a co-owner and co-administrator of the Infringing Song Defendant Tim & Danny knew of the infringement and also materially contributed and caused the infringement by, including but not limited to, promoting, distributing, and selling the infringing song "Dancing With a Stranger" and/or permitting its use. This includes by licensing the song's use, or allowing the same, on streaming and digital download services such as Spotify, YouTube, Pandora, Amazon, iTunes, and others.

204.   Defendant has received significant financial benefits as a result of the infringement.

## X.    45th & 3rd Music LLC ("45th & 3rd")

205.   Defendant 45th & 3rd produced the infringing song "Dancing With a Stranger."

206.   Defendant 45th & 3rd owns and/or publishes and/or administers the infringing song "Dancing With a Stranger," at least in part.

207.    Defendant 45th & 3rd directly infringed Plaintiff's Song by duplicating it, copying it, creating derivative works, publicly performing it, and otherwise reproducing and exploiting it without authorization.

208.   At all points Defendant 45th & 3rd had the right and ability to control or stop the infringing conduct but failed to do so.

209.   At all points as a co-owner and co-administrator of the Infringing Song Defendant 45th & 3rd knew of the infringement and also materially contributed and caused the infringement by, including but not limited to, promoting, distributing, and selling the infringing song "Dancing With a Stranger" and/or permitting its use. This includes by licensing the song's use, or allowing the same, on streaming and digital download services such as Spotify, YouTube, Pandora, Amazon, iTunes, and others.

210.   Defendant has received significant financial benefits as a result of the infringement.

211. On information and belief, each and every Defendant was an agent, partner, representative, affiliate, employee, alter ego, or co-conspirator of each and every other Defendant, and in doing the things alleged herein, each and every Defendant was acting pursuant to such conspiracy and/or within the course and scope of such agency, representation, affiliation, control or employment and was acting with the consent, permission and authorization of the other Defendants. Moreover, on information and belief, each Defendant who joined the conspiracy after its formation ratified, adopted and is liable for all acts committed in furtherance of the conspiracy including those committed before such Defendant joined the conspiracy.

212. Whenever the Complaint refers to any act or acts of a Defendant, the reference shall also be deemed to mean that the directors, officers, employees, affiliates, controlling companies or agents of the responsible Defendants authorized such act while actively engaged in the management, direction or control of the affairs of Defendant, and each of them, and/or by persons who are the alter ego of Defendants, or while acting within the scope of their agency, affiliation, control, or employment. Whenever the Complaint refers to any act of Defendants, the references shall be deemed to be the act of each Defendant, jointly and severally.

## JURISDICTION AND VENUE

213. Plaintiff hereby incorporates by reference the preceding paragraphs and repeats and realleges each of the allegations as if fully set forth here.

214. This action is brought as a copyright infringement case and related claims; and therefore, subject matter jurisdiction lies within this Court, pursuant to 28 U.S.C. §§ 1331 and 1338.

215. The Central District of California has personal jurisdiction over each and every Defendant by virtue of (1) their specific contacts with this district, and (2) their general, systematic, and continuous business and music contacts with this district.

216. Furthermore, the defendants, as elaborated in the above section and incorporated here by reference, reside in the Central District of California, and/or do

1   substantial business with those businesses which reside in this district related to the

2   allegations in this complaint.

3       217.  Venue lies within this Court pursuant to 28 U.S.C. Sections 1391(b)(1) –

4   (3), 1391(c), 1391(d), and 1400(a) in that one or more defendants reside in this district

5   or have agents that reside in the district and/or are found in the district.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S COMPLAINT

# CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### Direct Copyright Infringement

(Against All Defendants)

218.   Plaintiff hereby incorporates by reference the preceding paragraphs and repeats and realleges each of the allegations as if fully set forth here.

219.   Plaintiff own all rights in the musical composition and sound recording "Dancing with a Stranger" also known as "Dancing with Strangers" which is an original and novel copyrightable composition and sound recording.

220.   To be liable for direct copyright infringement a defendant must have had access to the work allegedly copied, and there must be substantial similarity between the infringing work and the infringed work.

221.   Access can be established by showing with direct or circumstantial evidence that the work in question was actually copied. Access can also be established by demonstrating that the two works are strikingly similar.

222.   Here, access is proven as alleged above.

223.   As noted above, the compositions and sound recordings of the songs are substantially similar both in the lyrics and musical notes, especially in the hook of the song. See Attached Report of Dr. Alexander Stewart.

224.   The songs' similarity is especially apparent in the selection and arrangement of the musical composition and sound recording elements, particularly the identical lyrics "Dancing With a Stranger" overlaying the nearly identical melodies, in both songs' hooks. This selection and arrangement of the musical elements in Plaintiff's song was copied in Defendants' song.

225.   Without authorization or permission, Defendants have exploited Plaintiff's composition and sound recording, reaping tremendous financial rewards and other pecuniary benefits to the detriment of Plaintiff's.

226.   Defendants violated Plaintiff's exclusive rights by, including but not limited to, doing the following:

    a.    copying and reproducing Plaintiff's music composition and sound recording copyrights without permission,

    b.    preparing derivative works based upon Plaintiff's music composition and sound recording copyrights which are substantially similar to Plaintiff's works,

    c.    distributing copies of the copyrighted works to the public,

    d.    performing the works publicly.

227.   Defendants have also encouraged and otherwise induced third parties to infringe on Plaintiff's composition and sound recording copyrights on a widespread basis.

228.   The initial and predicate acts of copying of "Dancing With a Stranger" occurred in the United States in Los Angeles, CA at The Stellar House studio on or around August 7, 2018.

229.   As a result of Defendants' conduct, acts, and/or omissions Plaintiff is entitled to relief, including but not limited to actual damages, direct profits, and indirect profits. This includes but is not limited to licensing fees, mechanical royalties, advertising revenue, streaming revenue, and concert revenue—and any other revenue derived from the exploitation of the infringing son "Dancing With a Stranger."

## SECOND CAUSE OF ACTION

### Contributory Copyright Infringement

#### (Against All Defendants)

230.   Plaintiff hereby incorporates by reference the preceding paragraphs and repeats and realleges each of the allegations as if fully set forth here.

231.   To state a claim for contributory copyright infringement a plaintiff must show that the defendants induced, caused, materially contributed to, and participated in the infringement of Plaintiff's copyrighted song, "Dancing With a Stranger."

232.   Defendants had and have knowledge of the ongoing infringing activity that is the subject of this lawsuit—the use of "Dancing With A Stranger" in "Dancing With A Stranger"—and have induced and materially contributed to the infringing conduct of the direct infringers of Plaintiff's copyrighted song.

233.   Without authorization or permission, Defendants continue to exploit Plaintiff's Song reaping tremendous financial rewards and other pecuniary benefits, to the detriment of Plaintiff.

234.   As a result of Defendants' conduct, acts, and/or omissions Plaintiff is entitled to relief, including but not limited to actual damages, direct profits, and indirect profits. This includes but is not limited to licensing fees, mechanical royalties, advertising revenue, streaming revenue, and concert revenue—and any other revenue derived from the exploitation of the infringing son "Dancing With A Stranger."

### THIRD CAUSE OF ACTION

### Vicarious Copyright Infringement

(Against All Defendants)

235.   Plaintiff hereby incorporates by reference the preceding paragraphs and repeats and realleges each of the allegations as if fully set forth here.

236.   To state a claim for vicarious copyright infringement the defendants must vicariously profit from the direct infringement while declining to exercise a right to stop or limit the direct infringement.

237.   Here, all Defendants profit from the dissemination, sale, distribution, and licensing of the infringing song "Dancing With A Stranger."

238.   Furthermore, Defendants, as producers, publishers, songwriters, and copyright holders, all have control over the dissemination, sale, distribution, and licensing of the infringing song "Dancing With A Stranger."

239. Without authorization or permission, Defendants continue to exploit Plaintiff's song "Dancing With A Stranger" as "Dancing With A Stranger," reaping

tremendous financial rewards and other pecuniary benefits, to the detriment of Plaintiff.

240. As a result of Defendants' conduct, acts, and/or omissions Plaintiff is entitled to relief, including but not limited to actual damages, direct profits, and indirect profits. This includes but is not limited to licensing fees, mechanical royalties, advertising revenue, streaming revenue, and concert revenue—and any other revenue derived from the exploitation of the infringing song "Dancing With A Stranger."

## CLAIMS FOR RELIEF

Wherefore, Plaintiff demands judgment in their favor on all Counts and against all Defendants for an amount well in excess of the jurisdictional amount required to guarantee a jury trial. Plaintiff requests that this Court determine and declare that Plaintiff is additionally awarded and afforded on all Counts from Defendants, jointly and severally:

(a) Compensatory damages, together with interest, costs, and delay damages;

(b) Actual damages, direct profits, and/or indirect profits

    a. Including but not limited to licensing fees, mechanical royalties, advertising revenue, streaming revenue, concert revenue.

(c) Statutory damages of $150,000 per infringement pursuant to 17 U.S. Code § 504 given the willfulness of Defendants' conduct;

(d) Declarations of authorship and ownership;

(e) Accounting and constructive trust;

(f) Equitable relief pursuant to 17 U.S. Code § 502 and § 503;

(g) Punitive and exemplary damages;

(h) Injunctive and other equitable relief inclusive of but not limited to impoundment, destruction, and halting of sales of the infringing material.

34

(i)    Costs and attorney's fees; and

(j)    Such other and further relief as the Court deems just, necessary, and appropriate under the circumstances or allowed by statute.

*Respectfully submitted,*

Lowe & Associates

_____

Steven T. Lowe, Esq.
8383 Wilshire Boulevard, Suite 1038
Beverly Hills, CA 90211
E: steven@lowelaw.com

Francis Alexander, LLC

Alfred J. Fluehr, Esquire
Attorney ID No.:  316503
280 N. Providence Road | Suite 1
Media, PA 19063
T:  (215) 341-1063
T:  (215) 500-1000
E: aj@francisalexander.com
*Law Firm / Lawyer for Plaintiff*
*Moving for Admission Pro Hac Vice*

*/d/ March 4, 2022*

PLAINTIFF'S COMPLAINT

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims and issues so triable.

*Respectfully submitted,*

Lowe & Associates

_____

Steven T. Lowe, Esq.
8383 Wilshire Boulevard, Suite 1038
Beverly Hills, CA 90211
E: steven@lowelaw.com

Francis Alexander, LLC

Alfred J. Fluehr, Esquire
Attorney ID No.:  316503
280 N. Providence Road | Suite 1
Media, PA 19063
T:  (215) 341-1063
T:  (215) 500-1000
E: aj@francisalexander.com
*Law Firm / Lawyer for Plaintiff*
*Moving for Admission Pro Hac Vice*

*/d/ March 4, 2022*

PLAINTIFF'S COMPLAINT

## **SPOLIATION CLAUSE**

Plaintiff demands that Defendants take necessary actions to ensure the preservation of all documents and things related to the case—in any format—hardcopy, electronic, audio, and visual, inclusive of but not limited to: the Master recording of the allegedly infringing song "Dancing with a Stranger", prior recordings of "Dancing with a Stranger," the individual audio tracks (both from prior recordings and initial/early takes), and any and all session audio, tracks, and takes (whether or not used in the final Master). Defendants should also preserve all ProTools files related to "Dancing with a Stranger." All material Defendants have related to Plaintiff's song "Dancing with a Stranger" should also be preserved. Defendants should also preserve any and all video, takes, scripting, notes, cards, or anything else relating to the "Dancing with a Stranger" music video. Defendants should also preserve anything related to Plaintiff's "Dancing with a Stranger" music video.

Defendants are also put on notice to preserve all things including but not limited to information, materials, communications, or other content/data related to the averments in this case.

**\*\*\*\***

PLAINTIFF'S COMPLAINT

# EXHIBIT 1

**Copyright**
United States Copyright Office

| Help | Search | History | Titles | Start Over |

**Public Catalog**

Copyright Catalog (1978 to present)
Search Request: Left Anchored Name = vincent jordan
Search Results: Displaying 1 of 1 entries

◄ previous   next ►

Labeled View

*Dancing With Strangers.*

| | |
|---|---|
| **Type of Work:** | Sound Recording and Music |
| **Registration Number / Date:** | SR0000847699 / 2019-05-27 |
| **Application Title:** | Dancing With Strangers. |
| **Title:** | Dancing With Strangers. |
| **Description:** | Electronic file (eService) |
| **Copyright Claimant:** | Jordan Vincent, 1984- . Address: 1051 n. gardner st., #9, West Hollywood, CA, 90046. |
| | Christopher Miranda, 1983- . Address: 1051 n gardner st, #9, West Hollywood, CA, 90046. |
| **Date of Creation:** | 2015 |
| **Date of Publication:** | 2015-06-10 |
| **Nation of First Publication:** | United States |
| **Alternative Title on Application:** | Dancing With A Stranger |
| **Authorship on Application:** | Jordan Vincent, 1984- ; Domicile: United States; Citizenship: United States. Authorship: sound recording, lyrics and music. |
| | Christopher Miranda, 1983- ; Domicile: United States; Citizenship: United States. Authorship: sound recording, lyrics and music. |
| **Rights and Permissions:** | Jordan Vincent, Sound and Color, LLC, 1051 n gardner st, #9, #9, West hollywood, CA, 90046, United States, (302) 388-9646, soundandcolorav@gmail.com |
| **Names:** | Vincent, Jordan, 1984- |
| | Miranda, Christopher, 1983- |

◄ previous   next ►

| Save, Print and Email (Help Page) |
|---|
| Select Download Format  Full Record ▼   Format for Print/Save |
| Enter your email address:              Email |

Help   Search   History   Titles   Start Over

Contact Us  |  Request Copies  |  Get a Search Estimate  |  Frequently Asked Questions (FAQs) about Copyright  |  Copyright Office Home Page  |  Library of Congress Home Page

EXHIBIT 2

Alexander Stewart, Ph.D. LLC
**Preliminary Musicology Report**
**January 3, 2022**

**Re: "Dancing with a Stranger" and "Dancing with Strangers"**

## 1.      Background

I am Professor of Music, the founder and coordinator of the Jazz Studies Program, and former Director of Latin American and Caribbean Studies at the University of Vermont. I collaborated in the design and implementation of our successful Music Technology and Business Program. I have contributed to numerous peer-reviewed journals and other publications, and I am author of a book, *Making the Scene: Contemporary New York City Big Band Jazz*, published by University of California Press (2007). My article on drumming and rhythms, "Funky Drummer," first published in the British journal *Popular Music* in 2000, has been reprinted in several anthologies and has been widely cited. My scholarly work encompasses extensive music transcriptions, musicological analysis, historical research, and other activities, particularly in popular music. I earned a Ph.D. in Music (Ethnomusicology Concentration) from the Graduate Center of the City University of New York (CUNY) and a Master of Music in Jazz and Commercial Music from Manhattan School of Music. During 2006-7 I was a Fulbright scholar researching traditional and popular music in Mexico. As an active professional musician for more than forty years I have performed and recorded with leading musicians in jazz and popular music such as Lionel Hampton, Wynton Marsalis, and Ray Charles. I have provided expert opinions and analysis and lectured widely on music copyright matters for nearly twenty years. A C.V. attached to this report lists my professional activities in more detail.

## 2.      Assignment

I have been asked to examine, compare and research two songs: "Dancing with a Stranger" by Sam Smith ((henceforth "SS") and "Dancing with a Stranger" (aka "Dancing with Strangers") by Jordan Vincent (henceforth "JV").[1] I was provided media and links to the recordings by Francis

---

[1] My understanding is that Jordan Vincent's original title was "Dancing with a Stranger" and that, after the release of the Smith song, he altered the title in order to distinguish his work from the later song.

Malofiy, Esq. The media included two versions of JV (the deposit copy audio and a YouTube video – henceforth "JVvid"). These two versions are the same composition – they differ only in certain structural elements discussed below. While this report provides analysis of both versions, its primary focus is the deposit copy version and, unless otherwise noted, all references are to this version.  Additionally, I downloaded the sheet music to SS from Musicnotes.com. I was also asked to perform a preliminary search for other songs containing similar expression ("prior art"). Finally, I was charged with providing a preliminary assessment of the importance of any similar expression to each composition.

### 3.      Methodology

I begin with close listening to each song in its entirety. I take note of the general characteristics of each composition. I then transcribe (put into music notation) similar passages and compare this expression. While primary emphasis is on melodic content, other expression and details (lyrics, underlying harmony, accompaniment patterns, etc.) are also taken into consideration. If important similarities are found, I then conduct a prior art search to look for any other songs containing similar expression. I then assess the quantitative importance as well as the qualitative significance of this expression to each song.

### 4.      Summary of Findings

My investigation and analysis have found that the compositions SS and JV are substantially similar in the lyrics, melodic content (including rhythmic and metric placement), and structural setting and supportive harmonies of their main themes and choruses. The creative selection and arrangement of the melody, lyrics and other elements in JV as discussed below are distinctive and original and this expression forms the musical core of SS. A prior art search turned up no compositions with anywhere near the degree of similarity as contained in these songs.

### 5.      Analysis

a) General
Although SS is slightly slower than JV, both songs are very similar in style and production. Other than the acoustic piano sound during the intro and percussion interlude of of JVvid, both works rely heavily on synthesized instrumental sounds common in contemporary popular dance music. Harmonically, SS and JV are built on four-chord cycles of major and minor chords resulting in some ambiguity[2] as to key center (particularly in SS). As discussed further below,

---

[2] Tonal ambiguity has become fairly common in contemporary popular music, especially in songs based on repeating four-chord cycles such as heard in these songs. Current scholarship in music theory has taken note of this trend as evidenced in articles and books by Christopher Doll (2017 *Hearing Harmony: Toward a Tonal Theory for the Rock Era*. University of Michigan Press); Asaf Peres, (2016 "(Dys)Functional Harmony: How Sound Production in Twenty-First-Century Pop Music Liberates Harmony from Its Functional Role," paper presented at the annual

these four-chord cycles repeat throughout much of each song. Overall, I hear the third minor chord as the "tonic" or key center in SS. My reasons are provided below in the discussion of the chord progressions.

|    | Key              | Tempo   |
|----|------------------|---------|
| SS | F minor (Aeolian) | 109 bpm |
| JV | G minor (Aeolian) | 120 bpm |

The Aeolian mode or natural minor is a minor scale with a flattened sixth.  On the piano keyboard an example would be the seven white keys beginning with A.

b) Harmony[3]
Basic chord sequences

| SS (transposed) | Eb |    | F   | G-  | Bb |
|-----------------|----|----|-----|-----|----|
| JV              | G- | D- | Eb  | F   |    |

| SS | Eb |    | D- | G-  | Bb |
|----|----|----|----|-----|----|
| JV | G- | D- | Eb | F   |    |

As will be seen in example 2 below, a simple rotation of the chords yields an almost identical cycle over eight bars.

| SS (transposed) | Eb |    | F  | G-  | Bb | Eb |    | D- | G-  | Bb |
|-----------------|----|----|----|-----|----|----|----|----|-----|----|
| JV              | Eb | F  | G- | D-  | Eb | F  | G- | D- |     |    |

It should be noted that the only different chords here are closely related: D- and F and D- and Bb share two of the three pitches that make up their triads. The progression D- to G- (v-i) in SS reinforces the sense of a G minor tonality. Moreover, the bVI-bVII-i (Eb F G-) with the borrowed IV V chords from the relative major (Bb) is a common cadence in rock and popular music. Finally, the melodic movement to the pitch G, especially in the opening phrases establishes a strong sense of G minor at the beginning of the song.

c) Basic Structure and occurrences of choruses

The basic structure of each song is similar. Each begins with several iterations of the chord cycle before the drums and rhythm section kicks in. Each contains three choruses although in the video the second and third choruses of JV are separated by a brief percussion interlude.

---

meeting of the Society for Music Theory, Vancouver, BC); Mark Spicer (2017 "Fragile, Emergent, and Absent Tonics in Pop and Rock Songs." *Music Theory Online* [*MTO*] 23 (2)); and Mark Richards (2017 "Tonal Ambiguity in Popular Music's Axis Progressions" [*MTO*] 23 (3)). *Music Theory Online* is described as "one of the flagship journals of the Society for Music Theory. It is a peer-reviewed open-access electronic journal of research and scholarship in music theory, music analysis, and related disciplines." https://www.mtosmt.org/index.php

[3] In this and all subsequent analysis, examples have been transposed to the same key signature as explained in 5d.

SS
0:00    intro (out of time)
0:23    intro (time and vocalizations)
0:30    verse
1:09    chorus
1:35    verse
1:55    chorus
2:32    chorus (variation)

JV
0:00    intro (vocalizations)
0:30    verse
1:03    chorus
1:34    verse
2:05    chorus
2:39    intro/interlude
3:56    chorus

JVvid
0:00    intro (piano, out of time)
0:21    intro (time and vocalizations)
0:51    verse
1:23    chorus
1:56    verse
2:26    chorus
[3:00   interlude – video only]
3:40    chorus

d) Melodies, signature themes, and structure
Following standard musicological procedure when comparing two or more works, I have
transcribed or put into music notation the relevant passages. In order to facilitate this comparison
I have transposed JV up a whole step in order to place each song in the same key signature.
Interestingly, this same alteration occurs when JV is slowed to the same tempo as SS (without
using software to maintain a constant pitch level) – the melodic and harmonic content converge
as in my transcriptions below.  In the melodies at issue in this case, the lyrics reference the titles
of the songs and they can be considered the title or signature themes in each song. They clearly
form the "hooks"[4] in the choruses of each composition. As can be seen below, these phrases
appear thirteen times in SS and twelve times in JV.
Occurrences of signature phrase:

---

[4] In popular music, a "hook" is the most catchy and memorable part of a song. In the music
industry, it is widely believed that, in order to be successful, a song must have at least one
"hook."

| SS | JV | JVvid |
|---|---|---|
| 1:15 | 1:04 | 1:26 |
| 1:25 | 1:12 | 1:34 |
| 1:30 | 1:20 | 1:41 |
| 2:02 | 1:28 | 1:49 |
| 2:12 | 2:07 | 2:29 |
| 2:16 | 2:15 | 2:37 |
| 2:21 | 2:23 | 2:44 |
| 2:26 (partial) | 2:30 | 2:52 |
| 2:39 | 3:27 | 3:43 |
| 2:49 | 3:35 | 3:51 |
| 2:59 | 3:43 | 3:59 |
| 3:04 | 3:51 | 4:07 |
| 3:09 | 3:59 | |
| | 4:07 | |
| | 4:15 | |
| | 4:23 | |

As discussed in greater detail below, the phrase "dancing with a stranger" is heard four times in each chorus except for the first chorus of SS (where it is heard 3 times) and in the second (where there is a partial fifth iteration) and third chorus of SS and the last chorus, where the signature phrase is repeated to end the song. The phrase is heard four times during the interlude of JV (but not during the JVvid percussion interlude).

e) Melodic analysis
As can be seen in Example 1, these passages are nearly identical in melodic contour, rhythm, and metric placement and the pitch sequences are very similar.[5]

Example 1        signature phrases



<hr />

[5] The most authoritative reference work on music in the English language, the *New Grove*, defines melody as "pitched sounds in musical time" and the *Oxford Companion to Music* describes it as the "interaction of rhythm and pitch." The *Harvard* and *Oxford* dictionaries of music further explain that, along with pitch, duration (rhythm) is an essential element in the formation and recognition of melodies.

While the pitch sequences are not identical, the identity of these passages is also defined by their identical lyrics, rhythmic durations, metric placement and structural significance. Both phrases begin with an anticipation of beat one with the syllable "dan-" and descend by regular eighth notes to the syllable "stran-" which is held for a full beat before resolving on a chord tone on the final syllable ("-ger"). One slight difference is that this resolution occurs a half beat later in JV.

f) Structural importance in chorus
Example 2 provides transcriptions of the choruses of both songs. The signature phrases and common chord changes are depicted in red. As can be seen, both choruses are based on a four-chord cycle. In both choruses the signature phrase appears four times in each within each four bars chorus (except for the first chorus of SS where it appears three times).

Example 2. Signature phrases in the choruses
Smith  1:55
JV      0:58
JVvid  1:20



## 6.      Prior Art

A search for other songs containing the words "dancing with a stranger" unearthed only a dozen songs that predate the songs at issue in this case. Most are obscure and written in entirely different styles and genres. In none of these songs is the phrase even remotely similar in melodic contour, pitch content and rhythm as these phrases in SS and JV are to each other. In many, the phrase occurs in isolation. The lyric figures importantly as a repeated structural motive (motif) in only three. As can be seen in example 3, in each of these three earlier songs the phrases are completely different from the phrases at issue in this case.

Example 3.  Prior art



## 7.      Quantitative Analysis

The signature phrase of the choruses provides the main theme of the choruses and appears thirteen times in SS, sixteen times in JV and twelve times in JVvid. In SS the choruses comprise a total of 1:45 of the 3:15 song (105 of 195 seconds) or 54%. In JV the phrase at issue provides the main theme of the choruses which, along with the four iterations in the interlude, account for 2:15 or approximately 56% of the four-minute song. In the video version of JV the choruses comprise 1:43 or approximately 40% of the total length of the song (4:16). The proportion of the song in which the choruses and other iterations appear in the deposit copy of JV (without the 40 second percussion interlude) is nearly the same as in SS. While the choruses are constructed around the signature phrases, these phrases are not present throughout the entire choruses, so the quantitative percentages could arguably be somewhat lower. The words "dancing with a stranger" also comprise a significant proportion of the lyrics in both songs (see Attachment 1).

Since these lyrics occupy the same musical space as the melodic themes, the percentages of the lyrical similarities can be considered equal to those found in the melodic analysis.

## 8.    Qualitative Analysis

Calculating the amount of time that musical expression is present in a composition is at best a crude measurement of the value of that expression to the overall song. Qualitative analysis measures the importance of this musical expression to the larger work. In forensic musicology the quantitative value is adjusted upward or downward according to its overall significance to the composition. Qualitatively, these themes are the most important expression in each composition. The lyrics reference the titles of both songs. In the popular music industry, it is an article of faith that, to become successful, a song must have at least one "hook" or memorable passage. As the title or signature phrases of each song, these distinctive phrases must be considered the "hooks" or most valuable parts of the song. In both songs the phrases are the last music the listener hears. In this case, because this expression is the most important in each song, the quantitative value must be adjusted upward significantly. In fact, it is difficult to imagine either song existing without these signature phrases.

## 9.    Conclusions

The musical expression at issue in this case is substantially similar and is significant both quantitatively and qualitatively to each song. These signature phrases are distinctive and a prior art search has uncovered no other songs as similar to these songs as they are to each other. None of the earlier works exhibit the creative selection and arrangement of elements as originally heard in JV and later appearing in SS.  Indeed, none of this prior art is even remotely similar to these two songs. As discussed above, the phrases occur repeatedly in both JV and SS in important places and contain the lyrics referencing the titles. Clearly, they form the most valuable expression in these compositions.  Given the degree of similarity in these distinctive passages and other details, I consider it extremely unlikely that SS was created independently from JV.

As a preliminary inquiry, this report is not intended to be exhaustive, and I retain the right to amend or supplement it should further information become available.

Respectfully submitted,

Alexander Stewart, Ph.D. LLC

Attachments
1)    Lyric comparison
2)    Alexander Stewart, Ph.D. Curriculum Vitae

**Attachment 1 Lyrics**

Dancing with a Stranger
Jordan Vincent

Verse I
That girl was on fire from the get go
Never had to let go
She said time passes so slow
Everything in slow mo
Over and over again
Over and over
Over and over
Over and over

Chorus
She said I'm gonna die
Dancing with a stranger
She said I'm gonna die
Dancing with a stranger
She said I'm gonna die
Dancing with a stranger
She said I'm gonna die
Dancing with a stranger

Verse II
Just one more time before I go home
Baby move me go go
It's a feeling that's how I know
Someday I'm gonna fly baby, Ooh

Chorus
She said I'm gonna die
Dancing with a stranger
She said I'm gonna die
Dancing with a stranger
She said I'm gonna die
Dancing with a stranger
She said I'm gonna die
Dancing with a stranger

Interlude
Dancing with a stranger
Dancing with a stranger
Dancing with a stranger
Dancing with a stranger

Dancing with a Stranger
Sam Smith

Verse I
I don't want to be alone tonight
It's pretty clear that I'm not over you
I'm still thinking 'bout the things you do
So I don't want to be alone tonight
Can you light the fire
I need somebody who can take control
I know exactly what I need to do
'Cause I don't want to be alone tonight,
alone tonight, alone tonight

Chorus
Look what you made me do
I'm with somebody new
Ooh, baby, baby I'm dancing with a stranger
Look what you made me do
I'm with somebody new
Ooh, baby, baby I'm dancing with a stranger
Dancing with a stranger

Verse II
I wasn't even going out tonight
But boy I need to get you off my mind
I know exactly what I have to do
I don't want to be alone tonight, alone
tonight, alone tonight

Chorus
Look what you made me do
I'm with somebody new
Ooh, baby, baby I'm
Dancing with a stranger
Look what you made me do
I'm with somebody new
Ooh, baby, baby I'm
Dancing with a stranger

Dancing with a stranger
Dancing with a stranger
Dancing, yeah, ooh

**Attachment 1 Lyrics**

Chorus
She said I'm gonna die
<mark>Dancing with a stranger</mark>
She said I'm gonna die
<mark>Dancing with a stranger</mark>
She said I'm gonna die
<mark>Dancing with a stranger</mark>
She said I'm gonna die
<mark>Dancing with a stranger</mark>

Chorus
Look what you made me do
I'm with somebody new
Ooh, baby, baby I'm
<mark>Dancing with a stranger</mark>
Look what you made me do
I'm with somebody new
Ooh, baby, baby I'm
<mark>Dancing with a stranger</mark>
<mark>Dancing with a stranger</mark>
<mark>Dancing with a stranger</mark>

# *Alexander Stewart*

Department of Music                                                    E-mail: astewart@uvm.edu
University of Vermont                                                        Office: (802) 656-7766
Burlington, VT 05405                                                      Mobile: (802) 310-2009

## EDUCATION

GRADUATE CENTER: THE CITY UNIVERSITY OF NEW YORK
   Ph.D. in Music (Ethnomusicology Concentration), 2000
   Dissertation: *Composition and Performance in Contemporary New York City Big Bands (1989-1999)* Advisor: Stephen Blum

MANHATTAN SCHOOL OF MUSIC
   Master of Music, Jazz and Commercial, 1991

LONG ISLAND UNIVERSITY, C.W. POST
   B.F.A., *summa cum laude,* in Music Education, 1988

## TEACHING EXPERIENCE

UNIVERSITY OF VERMONT
   Professor, 2012-present
   Associate Professor, 2005-2012
   Assistant Professor, 1999-2005
   Jazz Studies Coordinator, 2003-present
   Director, Integrated Fine Arts Program, 2008-2012
   Director, Latin American Studies Program, Spring 2006; 2011-16

LONG ISLAND UNIVERSITY, C.W. POST
   Instructor in Music, 1988-1999
   Director of Jazz Studies

Additional courses at:
   The New School (Jazz and American Culture), 1995-1997
   John Jay College of CUNY (History of Jazz and Rock)**,** 1995

## COURSES TAUGHT

Jazz History
Jazz Improvisation I & II
World Music Cultures
Seminar in Ethnomusicology

Alex Stewart

Music Business & Copyright
Music Theory
Musical Avant-Gardes
Music of Cuba, Puerto Rico, and the Dominican Republic
Duke Ellington
Jazz Ensembles (Big Band and Combos)
Seminar in World Music (Honors College)
Music of Latin America and the Caribbean
Latin Jazz Summer Immersion
Culture and Politics of Latin American Protest Music (team taught with professors from Political
    Science, Romance Languages, and Global Studies)

## PUBLICATIONS

### Books

*Making the Scene: Contemporary New York City Big Band Jazz,* Berkeley: University of
California Press, 2007.

Spanish translation from the French and German: Hans Bodenmann, *El ABC de la Flauta Dulce*.
Zurich: Anton Peterer Music & Books, 2003 (Recorder method book).

### Forthcoming

 "Music, Media, and Anarchism in the 'Oaxaca Commune,'" In *Oxford Handbook of Protest
Music,* edited by Noriko Manabe and Eric Drott, New York: Oxford University Press [2021].

### Articles, Book Chapters, Reviews, Entries

"Been Caught Stealing": A Musicologist's Perspective on Unlicensed Sampling Disputes"
*University of Missouri Kansas City Law Review* 83(2): 340-61 (Winter 2014).

"Make It Funky: Fela Kuti, James Brown and the Invention of Afrobeat." *American Studies*
52(4) (2013): 99-118.

"*La chilena mexicana es peruana*: Multiculturalism, Regionalism, and Transnational Musical
Currents in the Hispanic Pacific." *Latin American Music Review/Revista de Música
Latinoamericana* 34(1) (Spring 2013) Austin: University of Texas Press.

"'Funky Drummer': New Orleans, James Brown and the Rhythmic Transformation of American
Popular Music." Reprinted in *Roots Music,* edited by Mark F. DeWitt. London: Ashgate, 2011
(originally published in *Popular Music* 19(3) October 2000 Cambridge University Press).

Review of Ben Ratliff, *Coltrane: The Story of a Sound*. *Jazz Perspectives* 2(1):103-109 (2008).

"Contemporary New York City Big Bands: Composition, Arranging, and Individuality in
Orchestral Jazz," *Ethnomusicology* 48(2) (Spring/Summer 2004): 169-202.

Alex Stewart

Review of *The New Grove Dictionary of Jazz* in *Ethnomusicology* 47(3) (Fall 2003):376-80.

"Second Line," *Encyclopedia of Popular Music of the World*. London: Cassell 2003.

Essay review of Lewis Porter, *John Coltrane: His Life and Music*. *Annual Review of Jazz Studies 11*, 2000-1 [2002]: 237-52.

"'Funky Drummer': New Orleans, James Brown and the Rhythmic Transformation of American Popular Music," *Popular Music* 19(3) (Winter 2000): 293-318.

Review of Scott DeVeaux, *The Birth of Bebop*. *Yearbook of Traditional Music* 30 (1998): 135-7.

## LECTURES, COLLOQUIA, CONFERENCE PAPERS

"Blurred Lines IV: Legal Considerations When Writing." Canadian Film Centre Slaight Music Residency Panel Talk. Toronto, Canada. May 27, 2021

"Melody, 'Beats,' and Minimalism: Copyright in Contemporary Popular Music." *Substantial Similarity and the Role of Forensic Musicology in Music Copyright Litigation*. American Musicological Society/Society for Music Theory Annual Meeting, Virtual Conference, Minneapolis, MN. November 15, 2020.

Silicon Flatirons Conference: *The Future of Copyright Infringement Analysis in Music*. Invited panelist and Speaker. March 5, 2020, Colorado Law, University of Colorado, Boulder, CO.

Composition, Jazz Improvisation, and Copyright," Jazz Educators Network (JEN) annual conference, New Orleans, January 8, 2020

"Blurred Lines III: Legal Considerations When Writing." Canadian Film Centre Slaight Music Residency Panel Talk. Toronto, Canada. August 7, 2019

"Blurred Lines II: Legal Considerations When Writing." Canadian Film Centre Slaight Music Residency Panel Talk. Toronto, Canada. August 13, 2018

"The Future of Sampling: Transformative Art or Copyright Infringement?" Alexander von Humboldt Institute for Internet and Society, Berlin, Germany. February 28, 2018.

"Blurred Lines: Legal Considerations When Writing." Canadian Film Centre Slaight Music Residency Panel Talk. Toronto, Canada. August 2, 2017

"Creativity and Copyright," Champlain College, November 11, 2015

Invited Keynote Speaker: Symposium on Hip Hop, Technology, and Copyright. Utah State University. (March 28, 2015).

"Make It Funky: Fela Kuti, James Brown and the Invention of Afrobeat." Annual Conference of the American Studies Association. Washington DC, November 23, 2013.

3

Alex Stewart

"Creativity and Copyright," Champlain College, October 25, 2013

"Lila Downs: Music, Culture, and Politics in Oaxaca, Mexico." Pre-Concert Lecture. Flynn Center for the Performing Arts. Burlington, VT. April 26, 2013.

"Music, Media, and Anarchism in the Oaxaca Commune" Paper presented at Music and War Panel. AMS/SEM/SMT Annual Conference. New Orleans. Nov. 2, 2012.

"*Pasos cromáticos en la improvisación del jazz* (Chromatic Passing Tones in Jazz Improvisation)." Lecture/workshop (in Spanish) at Instituto Projazz, Santiago, Chile. May 31, 2012.

 "Musicology CSI: Sampling, Interpolation, and Copyright." Thursdays at One Performance/Lecture Series, UVM Music Department.

"Music, Media, and Anarchism in the 'Oaxaca Commune,'" Presentation to University of Vermont Global Village, 15 February 2011.

"*Son de las barricadas*: Protest song and revolution on Oaxaca's Radio APPO." Paper read at the annual conference of Society for Ethnomusicology (SEM) in Los Angeles, CA, Nov. 2010.

"*Son mexicano*" OLLI (Osher Life Long Learning Institute). Pre-Concert Lecture Sones de México, Lane Series 8 October 2010.

"*Música popular* and the Ideology of *mestizaje* in Postrevolutionary Mexico." 1 October 2010, UVM Hispanic Forum.

Musicology CSI: Sampling, Interpolation, and Copyright." Invited lecture, State University of New York (SUNY) Albany, 28 April 2010.

"La Chilena Mexicana: Transnational Musical Currents in the Hispanic Pacific" Global and Regional Studies Lecture, 17 March 2010 Billings Marsh Lounge.

"Copyrights and Copywrongs: Introduction to Forensic Musicology" Invited lecture, State University of New York (SUNY) Plattsburgh, 11 March 2010.

FLYNNsights: Lecture on Charles Mingus opening the residency of the Mingus Repertory Ensembles (Mingus Dynasty, Mingus Orchestra, and Mingus Big Band along with dance troupe choreographed by Danny Buraczeski at the Flynn Center for the Performing Arts. 17 October 2010.

"Supergenre, genre, subgenre: Mexican *son* and the *chilena* complex." Paper presented at the annual conference of the Society for Ethnomusicology (SEM) in Mexico City, November 2009.

"*Socialismo con pachanga*: Music in Revolutionary Cuba." Hispanic Forum, University of Vermont, 22 October 2009.

Alex Stewart

"Performing Race: Afro-Mexicans and Multiculturalism in Oaxaca's Guelaguetza." Paper presented at the Latin American Studies Association (LASA) XXVIII International Congress, "Rethinking Inequalities" Rio de Janeiro, Brazil, 12 June 2009.

*La chilena oaxaqueña: "El gusto de mi region*." Paper presented at the annual conference of the Sonneck Society for American Music (SAM), Denver, CO, 19-22 March 2009.

Insights FlynnArts. Pre-concert lecture on Maria Schneider and her Orchestra. 22 January 2009. Amy E. Tarrant Gallery at the Flynn Center for the Performing Arts.

"Performing Race: Afro-Mexicans and Multiculturalism in Oaxaca's Guelaguetza Festival." Paper presented at the annual meeting of the Society for Ethnomusicology (SEM), Wesleyan University, Middletown, CT, 28 October 2008.

"*La Danza de las Diablas*"? Race, Gender, and Local Identity in Afro-mestizo communities of Mexico's Costa Chica. Paper presented at the annual meeting of the Society for Ethnomusicology (SEM), Columbus, OH, 28 October 2007.

"*Son de las Barricadas*": Songs of Protest from the Spanish Civil War to the Present on Oaxaca's Radio APPO." Hispanic Forum, University of Vermont, 10 October 2007.

"Cross-Cultural Learning through Music and Dance: A UVM Class in Guantánamo, Cuba." Presentation to the UVM College of Arts and Sciences Advisory Board, April 2004.

"Beauty and the Beast: Maria Schneider's *Wyrgly*." Paper presented at special session of the joint meetings of Society for Music Theory (SMT) and the American Musicological Society (AMS), "Women in Jazz: Voices and Roles," Columbus, OH, 1 November 2002.

"On the Edge: Sue Mingus and the Mingus Big Band." Colloquium at the University of Illinois (Urbana and Champaign), 6 March 2002.

"*Blood on the Fields:* Wynton Marsalis and the Transformation of the Lincoln Center Jazz Orchestra."  Paper read at the 2001 annual meeting of the Society for Ethnomusicology (SEM), Detroit, October 2001.

"The Jazz Concerto as Collaborative Work: Jim McNeely's 'Sticks.'" Paper read at the joint meeting of the Society for Music Theory (SMT) and other major music societies in Toronto, 4 November 2000.

"New York City Big Bands and the Professional Jazz Musician."  Paper read at the annual meeting of the Society for Ethnomusicology (SEM) in Bloomington, IN, 24 October 1998.

"From Mardi Gras to Funk: Professor Longhair, James Brown and the Transformation of Rhythm and Blues." Paper read at joint meeting of the Society for Ethnomusicology (SEM) and the International Association for the Study of Popular Music (IASPM) in Pittsburgh, PA, October 1997.

Alex Stewart

## GRANTS AND AWARDS
Coor Collaborative Fellowship, Rethinking African Art. 2020-2021.

UVM Humanities Center Public Humanities Fellowship for sabbatical travel to Uganda. 2019.

International Travel Funds Award. College of Arts and Sciences. Travel to and residency in Uganda. Jazz Performance and Workshops; Research in Traditional Music. October and November 2019.

Interdisciplinary Experiential Engagement Award for course proposal, *Culture and Politics of Latin American Protest Music*, to be taught in collaboration with Political Science, Romance Languages, Global Studies, and Music Departments. January 2013.

Lattie F. Coor Award for International Travel to present paper and chair panel at the Society for Ethnomusicology conference (SEM) Mexico City. November 2009.

Joan Smith Faculty Research Support Award *Performing Race: Afro-Mexicans, Multiculturalism, and the "Black Pacific."*

Lattie F. Coor Award for International Travel to present paper at the Latin American  Studies Association (LASA) Congress in Rio de Janeiro, Brazil. June 2009.

Fulbright Research Fellowship to Mexico, Afro-Mexican music, 2006-7.

Award for Contribution to Vermont Jazz Education, presented by Wynton Marsalis and the Flynn Center for the Performing Arts, October 2005.

UVM Arts and Sciences Dean's Fund for Faculty Development (to initiate fieldwork in the Costa Chica of Mexico), Fall 2005.

UVM Humanities Center Research Grant, Spring 2004.

UVM Global Outreach Committee Grant, March 2003.

UVM Arts and Sciences Faculty Development Grant for study in Cuba, May 2002.

2001 Barry S. Brook Award for best dissertation in music CUNY.

CUNY Dissertation Year Fellowship 1998-1999.


## MUSIC COPYRIGHT & RELATED

Expert Report in Bridgeport Music, Inc. v. Dimension Films, 410 F.3d 792 (6th Cir. 2005). Case recognized as setting new "bright line" standard for use of samples of copyrighted recordings.

Alex Stewart

Testimony in trial in Federal District Court, Nashville TN, Case No. 3:01-780, Bridgeport Music v. Universal Music. February 2007. "Atomic Dog" and "D.O.G. in Me." Affirmed by US Sixth Circuit Court of Appeals, No. 07-5596, November 4 2009. Case examined issues concerning fragmented literal similarity, originality, and fair use.

Testimony in Federal District Court, Nashville, TN Case No. 3:01-0155 involving rap artist, the Notorious B.I.G and the Ohio Players. (March 2006). Affirmed by US Sixth Circuit Court of Appeals, No. 06-6294, October 17 2007.

Testimony by Deposition (for the Plaintiff), Case No. 1:09-cv-21597-DLG (Florida Southern District Court) Kernel Records Oy v. Timothy Z. Mosley p/k/a Timbaland, UMG Recordings, Inc, et al. New York City, May 27, 2010.

Testimony by Deposition (for the Defense), Case No. 37-2008-00098508-CU-BT CTL (California Southern District Court) Sixuvus v. Victor Willis, New York City, July 7, 2010.

Testimony by Deposition (Los Angeles, September 2011). Case No. 10-CV-08123 Phoenix Phenom v. William Adams, Jr. Stacy Ferguson, et. al.

Testimony by Deposition (New York City, January 2012). Case No. SACV10-1656JST(RZx) Pringle v. William Adams, Jr. Stacy Ferguson, et. al.

Testimony by Deposition (New York City, June 3, 21, 2013). Case No. CV12-5967 VMG Salsoul, LLC v. Madonna Ciccone, Shep Pettibone, et al.

Testimony by Deposition (New York City, September 11, 2013). 11-cv-6811. Marino v. Usher.

Testimony by Deposition (Burlington, VT, May 20, 2015). RALEIGH, NC #301280 Absent Element v. Daughtry.

Testimony by Deposition (Burlington, VT, May 17, 2016) and in Trial (June 17, 2016) Federal District Court, Los Angeles Case No. 15-cv-03462 RGK (AGRx). Skidmore v. Led Zeppelin, et al.

Testimony by Deposition (New York, NY, November 3, 2017) Supreme Court of the State of New York, Index No. 650427/2016. Pai v Blue Man Group Publishing, LLC, et al.

Testimony by Deposition (New York, NY, May 30, 2018) Griffin v. Sheeran. 1:17-cv-05221 New York Southern District Court

Testimony by Deposition (Burlington, VT, January 2, 2020). Beatbox Music Pty, Ltd. v. Labrador Entertainment, et al. Case No. 2:17-cv-6108. Central District of California.

Testimony by Deposition (Burlington, VT, May 27, 2020). Smith v. Tesfaye. Case No. 2:19-cv-02507-PA-MRWx Central District of California.

Alex Stewart

**Los Angeles**: Warner Bros. Entertainment Inc.; Hiscox Insurance Co.; Clair G. Burrill P.C.; Sheppard Mullin Richter & Hampton LLP; Doniger Burroughs, APC; Pen Music Group; Microhits; Robert S. Besser Law Offices; etc.

**New York**: BMG Group; Schwartz Ponterio & Levenson, PLLC; Grubman Shire & Meiselas, P.C.; Eisenberg Tanchum & Levy; Sample Clearance Limited; Lastrada Entertainment Company; etc.

**Nashville**: King and Ballow; Riser House Entertainment, LLC; DeSalvo Law Firm, PLLC; Beckett Law Office; etc.

**Elsewhere**: K & L Gates (London); Schwartz Cooper (Chicago); Brooks Pierce (Raleigh NC); Frank & Rice (Florida); Francis Alexander, LLC (Philadelphia); Rawson Merrigan & Litner (Boston); Koepple Traylor (New Orleans); JPMC (Burlington VT); Kile Goekjian McManus (Washington DC); Arent Fox LLP (Washington DC) Gould Law Group (Chicago); Richardson Patrick Westbrook & Brickman, LLC (Mt. Pleasant SC); Hall Booth Smith & Slover (Atlanta); Miller Canfield Paddock & Stone (Detroit); King Mesdag Music Publishing Limited (United Kingdom); as well as clients in Canada, Australia, Indonesia, Hong Kong, India, United Arab Emirates, Latin America and Europe.

Classes and seminars in Music Business and Copyright (see above for details)

Symposium on Music Copyright. University of Vermont, January 2003.

## SELECTED RECORDINGS

*Early Heroes, Dan Silverman*. Section playing and solo on Chares Mingus' *The Shoes of the Fisherman's Wife*…Around the Slide Recordings 02 (2018).

Rick Davies *Thugtet* – Tenor saxophone Emlyn Music EM 1003 (2017)

Rick Davies and Jazzismo, *Salsa Norteña*, - Tenor saxophone (Recorded in Montreal 2011 (2012).

New York Jazz Repertory Orchestra, *Le Jazz Hot*, featuring Dave Liebman and Vic Juris. Planet Arts 310976 - Baritone saxophone, bass clarinet (2009).

Rick Davies and Jazzismo, *Siempre Salsa*, featuring Wayne Gorbea. Emlyn Music EM1001 - Tenor saxophone (2006).

Anne Hampton Callaway, *To Ella with Love*, featuring Wynton Marsalis, Christian McBride, Lewis Nash, Cyrus Chestnut. Touchwood Records TWCD 2006 - Tenor saxophone and clarinet (1998).

Peter Herborn, *Large*, featuring Gene Jackson, Greg Osby, Robin Eubanks, and others. Jazzline JL1154-2 – Baritone saxophone and bass clarinet (1998).

Billy Stritch, *Waters of March: The Brazilian Album*. Sin Drome SD8950 - Tenor saxophone and flute (1998).

Dave Stryker, *Nomad*, featuring Randy Brecker and Steve Slagle. Steeplechase Records SCCD31371 - Baritone saxophone and bass clarinet  (1997).

Frankie Lane: *Wheels of a Dream*. Touchwood Records TWCD 2020 - Tenor saxophone, flute, and alto flute (1997).

The Bill Warfield Band, *The City Never Sleeps*.  Seabreeze Records CDSB 2048 - Baritone saxophone and bass clarinet (1996).


## SELECTED PERFORMANCES: JAZZ AND LATIN

***Burlington Discover Jazz Festival Big Band*** (Music Director, Contractor, Performer)

*Birth of the Cool: Music by the Miles Davis Nonet*. Featuring Ray Vega, trumpet. Performances in June 2012 (BDJF), and in September 2012 (UVM), and  May 2013 (SUNY Plattsburgh).

*Textures: Jim Hall with Brass featuring the Jim Hall Trio (Jim* Hall, guitar, Scott Colley, bass and Joey Baron, drums) with brass ensemble, Alex Stewart, conductor.  Flynn MainStage, 2010 Burlington Discover Jazz Festival.

*Paquito D'Rivera Funk Tango*. Produced, co-directed, and played saxophone in concert on Flynn MainStage with 17-piece orchestra with guests: Paquito D'Rivera, alto saxophone; Diego Urcola, trumpet; Alex Brown, piano; Massimo Biocalti, bass; Mark Walker, drums; and special guest Ray Vega, trumpet. Burlington Discover Jazz Festival (1 June 2008). Reviews in *Free Press*, AllAboutJazz, and other media.

*Mary Lou Williams Resurgence* with Cecilia Smith, vibraphone and Amina Claudine, piano, 2007 Burlington Discover Jazz Festival, Flynn Center.

*Music of Jim McNeely* with special guest Jim McNeely, piano 2006 Burlington Discover Jazz Festival, Flynn Center.

*Sketches of Spain: Celebrating the Miles Davis/Gil Evans Collaboration* with trumpeter Randy Brecker and guest conductor, Joe Muccioli 2005 Burlington Discover Jazz  Festival, Flynn Center.

*The Grand Wazoo: Music of Frank Zappa*, with Ernie Watts, Napoleon Murphy Brock, Ike Willis, and Ed Palermo 2004 Burlington Discover Jazz  Festival, Flynn Center.

*Duke Ellington Sacred Concert*, with David Berger, Priscilla Baskerville, Paul Broadnax, and 100-voice Choir, 2003 Burlington Discover Jazz Festival, Flynn Center

Alex Stewart

*Jazz and Latin*

Solo Recital: Chasin' the 'Trane: Music of John Coltrane. UVM Southwick Recital Hall, Septenber 27, 2018.

Concert: Ray Vega & the Burlington Latin Jazz Orchestra, FlynnSpace, August 9, 2018.

Recital: Ray Vega & the Burlington Latin Jazz Orchestra, UVM Southwick Recital Hall, October 21, 2018.

Chasin' the Trane: Homage to John Coltrane, with Ray Vega, trumpet. Juniper, Hotel Vermont, 2018 Burlington Discover Jazz Festival June 7 and July 18, 2018.

Chasin' the Trane: Homage to John Coltrane, with Ray Vega, trumpet. Light Club Lamp Shop, Burlington VT, July 26, 2018

Performances of Alex Stewart Quartet on Jazz Wednesdays at Juniper (Hotel Vermont), Lamp Shop Light Club (some performances featured special guest Ray Vega, trumpet), 2018.

Featured soloist – SUNY Plattsburgh Jazz Festival December 2013.

James Harvey and Garuda – opening act for Randy Weston in Discover Jazz Festival (2004); numerous other performances around region.

Beboparaka (featuring poetry of Amiri Baraka) andJazzLit.com – jazz and poetry collaborations with UVM professors Major Jackson, Tina Escaja, John Gennari  and UVM students. Performances at the Discover Jazz Festival and local venues. Coverage in the *Burlington Free Press* and *Vermont Quarterly* (2005, 2006).

Grupo Sabor (Salsa and Merengue) – Performances in UVM's Grand Maple Ballroom and Brennan's Pub for Alianza Latina (2010), Higher Ground, Burlington; Red Square; Eclipse Theater, Waitsfield; Onteora Club, New York; Burlington Latino Festival (2001-present).

Performances with UVM jazz faculty (Jeff Salisbury, Joe Capps, Paul Asbell, Patricia Julien, Ray Vega, John Rivers, Tom Cleary, Rick Davies, Steve Ferraris) at recitals, concerts, and other events (1999-present).

The Lionel Hampton Orchestra; featured artists: Dizzy Gillespie, Dee Dee Bridgewater, and others. Extensive tours of Europe and North America and appearances at major jazz festivals including: North Sea, Nice, Montreal, Newport (NY and Saratoga), Biarritz (1989-1991).
The Bill Warfield Band, The Dorsey Brothers Orchestra, David Berger, Paquito D'Rivera, Clem DeRosa, Bobby Shew, David Liebman, Andy Farber, Stan Rubin, Lew Anderson, Billy Mitchell, Roland Hanna, Lew Soloff, Randy Brecker and many more (1985-1999).

The Lehigh Valley Repertory Jazz Orchestra: *Sketches of Spain* featuring Randy Brecker, *An Evening with David Liebman*, *A Tribute to Benny Goodman* featuring Buddy DeFranco, and *Celebrating Louis Armstrong* featuring Jon Faddis (1997-2000).

Alex Stewart

*Rick Davies  & Jazzismo*

Burlington Latin Jazz Orchestra, directed by Ray Vega, FlynnSpace, August 9, 2018

Featured Performer: Jazz Education Network Conference, San Diego, CA January 2015.

Workshops and concerts, Colectivo Central, Oaxaca, Mexico. June, July 2011.

With guest pianist/composer Arturo O'Farrill (and sons, Zachary, percussion and
Adam, trumpet), FlynnSpace. 2010, 2011, 2012, 2013, 2014, 2015, 2017, 2017. With Jonathan
Maldonado, drums, and Papo Ross, vocals and alto saxophone, 2009.

With guest artist Ray Vega, FlynnSpace (July 2003, 2004, 2005, 2006, 2007, 2008).

Appearances at SUNY Plattsburgh Jazz Festival (with Harvie S., 2002; with Chocolate
Armenteros 2003; with Ray Vega 2008, 2011; with Curtis Fowlkes 2010 ); Red Square and other
venues.

Oaxaca, Mexico: Colegio Teizcali, Colectivo Central, Spring 2007.


## SELECTED PERFORMANCES: POPULAR AND BLUES

Frankie Valli, Ray Charles (Sweden 1999), Mary Wells, Frankie Avalon (Atlantic City), The
Drifters, Funk Filharmonik, The Funk Collection, Nick Apollo Forte, Little Wilson, Sandra
Wright Band, Jimmy Branca and the Red Hot Instant Combo, Dave Grippo Funk Band, and
others (1985-present).

Contractor, musical director. *Joan Rivers*. Flynn Center for the Performing Arts. April 26, 2012.

Orchestra contractor with Bernadette Peters at the Flynn Center of the Arts October 2011.


## CLINICS AND GUEST CONDUCTING

Guest Conductor, Connecticut Valley District Jazz Festival, January 30-31, 2015.

Guest Conductor, Winooski Valley Jazz Festival, February 4-5, 2010.

Adjudicator/Clinician, Vermont All-State Festival, International Association of Jazz Educators
(IAJE): 2000-2003.

Guest Conductor, Nassau County (Long Island) All-County Jazz Festival, 1997.

Alex Stewart

## MEMBERSHIPS

American Musicological Society (AMS)

Society for Ethnomusicology (SEM)

Society for American Music (Sonneck)

Latin American Studies Association (LASA)

Friends of Indian Music and Dance (FIMD), Burlington VT

Burlington Discover Jazz Festival Advisory Board

EXHIBIT 3



United States Copyright Office

The Library has opened access to the reading rooms by appointment only. **More**. The Jefferson Building has reopened to visitors via timed, ticketed entry. **More**.

| Help | Search | History | Titles | Start Over |

## Public Catalog

Copyright Catalog (1978 to present)
Search Request: Left Anchored Title = dancing with a stranger
Search Results: Displaying 4 of 39 entries

◀ previous    next ▶

Labeled View

*Dancing With A Stranger.*

| | |
|---|---|
| **Type of Work:** | Music |
| **Registration Number / Date:** | PA0002260139 / 2020-08-21 |
| **Application Title:** | Dancing With A Stranger. |
| **Title:** | Dancing With A Stranger. |
| **Description:** | Electronic file (eService) |
| **Copyright Claimant:** | Jimmy Napes, Transfer: By written agreement. Address: street Unknown, city Unknown. |
| | EMI Music Publishing LTD, Transfer: By written agreement. Address: c/o Sony/ATV Music Publishing LLC, 424 Church Street, Suite 1200, Nashville, TN, 37219, United States. |
| | EMI Blackwood Music Inc., Transfer: By written agreement. Address: c/o Sony/ATV Music Publishing LLC, 424 Church Street, Suite 1200, Nashville, TN, 37219, United States. |
| | Songs Of NKH, Transfer: By written agreement. Address: c/o Sony/ATV Music Publishing LLC, 424 Church Street, Suite 1200, Nashville, TN, 37219, United States. |
| | Stellar Songs Limited, Transfer: By written agreement. Address: c/o Sony/ATV Music Publishing LLC, 424 Church Street, Suite 1200, Nashville, TN, 37219, United States. |
| | Naughty Words Limited, Transfer: By written agreement. Address: c/o Sony/ATV Music Publishing LLC, 424 Church Street, Suite 1200, Nashville, TN, 37219, United States. |
| **Date of Creation:** | 2019 |
| **Date of Publication:** | 2019-01-11 |
| **Nation of First Publication:** | United States |
| **Authorship on Application:** | Tor Hermansen; Domicile: United States; Citizenship: Norway. Authorship: music, lyrics. |
| | Mikkel Eriksen; Domicile: United States; Citizenship: Norway. Authorship: music, lyrics. |
| | Normani Kordei Hamilton; Domicile: United States; Citizenship: United States. Authorship: music, lyrics. |
| | Sam Smith; Domicile: United Kingdom; Citizenship: United Kingdom. Authorship: music, lyrics. |
| | Jimmy Napes; Domicile: United Kingdom; Citizenship: United Kingdom. Authorship: music, lyrics. |
| **Rights and Permissions:** | Zachary Culp, Sony/ATV Music Publishing LLC, Sony/ATV Music Publishing LLC, 424 Church Street, Suite 1200, Nashville, TN, 37219, United States, zachary.culp@sonyatv.com |
| **Names:** | Hermansen, Tor |
| | Eriksen, Mikkel |
| | Hamilton, Normani Kordei |
| | Smith, Sam |
| | Napes, Jimmy |
| | EMI Music Publishing LTD |
| | EMI Blackwood Music Inc. |
| | Songs Of NKH |
| | Stellar Songs Limited |
| | Naughty Words Limited |

◀ previous    next ▶

**Save, Print and Email (Help Page)**
Select Download Format [ Full Record ▾ ]  [ Format for Print/Save ]
Enter your email address: [ ]  [ Email ]

| Help | Search | History | Titles | Start Over |

Contact Us | Request Copies | Get a Search Estimate | Frequently Asked Questions (FAQs) about Copyright | Copyright Office Home Page | Library of Congress Home Page



| Help | Search | History | Titles | Start Over |

---

**Public Catalog**

Copyright Catalog (1978 to present)
Search Request: Left Anchored Title = dancing with a stranger
Search Results: Displaying 2 of 32 entries

previous   next

Labeled View

*DANCING WITH A STRANGER.*

|  |  |
|---|---|
| **Type of Work:** | Music |
| **Registration Number / Date:** | PA0002185007 / 2019-05-13 |
| **Application Title:** | DANCING WITH A STRANGER. |
| **Title:** | DANCING WITH A STRANGER. |
| **ISRC:** | GB-UM7-18-07386 |
| **Description:** | Electronic file (eService) |
| **Copyright Claimant:** | MIKKEL STORLEER ERIKSEN. Address: street UNKNOWN, city UNKNOWN |
|  | NORMANI HAMILTON. Address: street UNKNOWN, city UNKNOWN |
|  | TOR ERIK HERMANSEN. Address: street UNKNOWN, city UNKNOWN. |
|  | SAMUEL FREDERICK SMITH. Address: street UNKNOWN, city UNKNOWN. |
|  | SALLI ISAAK SONGS LTD.. Transfer: By written agreement. Address: C/O DOWNTOWN MUSIC PUBLISHING LLC, 485 BROADWAY FL 3, NEW YORK, NY, 10013, United States. |
| **Date of Creation:** | 2018 |
| **Date of Publication:** | 2019-01-11 |
| **Nation of First Publication:** | United States |
| **Authorship on Application:** | MIKKEL STORLEER ERIKSEN; Domicile: not known; Citizenship: not known. Authorship: music, lyrics. |
|  | NORMANI HAMILTON; Citizenship: not known. Authorship: music, lyrics. |
|  | TOR ERIK HERMANSEN; Citizenship: not known. Authorship: music, lyrics. |
|  | JAMES JOHN NAPIER; Citizenship: not known. Authorship: music, lyrics. |
|  | SAMUEL FREDERICK SMITH; Citizenship: not known. Authorship: music, lyrics. |
| **Rights and Permissions:** | jbarnes@dmgroup.com |
| **Names:** | ERIKSEN, MIKKEL STORLEER |
|  | HAMILTON, NORMANI |
|  | HERMANSEN, TOR ERIK |
|  | NAPIER, JAMES JOHN |
|  | SMITH, SAMUEL FREDERICK |
|  | SALLI ISAAK SONGS LTD. |

previous   next



| **Save, Print and Email (Help Page)** |
|---|
| Select Download Format  Full Record ▼   Format for Print/Save |
| Enter your email address:  _____  Email |

---

Help | Search | History | Titles | Start Over

---

Contact Us | Request Copies | Get a Search Estimate | Frequently Asked Questions (FAQs) about Copyright | Copyright Office Home Page | Library of Congress Home Page



**Public Catalog**

Copyright Catalog (1978 to present)
Search Request: Left Anchored Title = dancing with a stranger
Search Results: Displaying 3 of 32 entries

*Dancing With A Stranger.*

| | |
|---|---|
| **Type of Work:** | Motion Picture |
| **Registration Number / Date:** | PA0002182851 / 2019-04-02 |
| **Application Title:** | Dancing With A Stranger, Artist: Sam Smith / Normani, GBUV71801970 (eSingle Video) |
| **Title:** | Dancing With A Stranger. |
| **Description:** | Electronic file (eService) |
| **Copyright Claimant:** | Universal Music Operations Limited. Address: c/o Capitol Records / UMG Recordings, Inc., 2220 Colorado Ave., Santa Monica, CA, 90404, United States. |
| **Date of Creation:** | 2018 |
| **Date of Publication:** | 2019-01-27 |
| **Nation of First Publication:** | United States |
| **Authorship on Application:** | Universal Music Operations Limited, employer for hire; Domicile: United Kingdom. Authorship: entire motion picture. |
| **Pre-existing Material:** | Sound Recording: "Dancing With A Stranger" (00602577394140) |
| **Basis of Claim:** | Motion Picture. |
| **Rights and Permissions:** | Universal Music Group |
| **Names:** | Universal Music Operations Limited |

| | Save, Print and Email (Help Page) | |
|---|---|---|
| Select Download Format | Full Record | Format for Print/Save |
| Enter your email address: | | Email |

Help    Search    History    Titles    Start Over

Contact Us  |  Request Copies  |  Get a Search Estimate  |  Frequently Asked Questions (FAQs) about Copyright  |  Copyright Office Home Page  |  Library of Congress Home Page

## DANCING WITH A STRANGER

Total Current ASCAP Share: 49.5%

ISWC: T9273291320
Work ID: 896612215

### Writers

| ASCAP controls 24.75% | PRO | IPI |
|---|---|---|
| ERIKSEN MIKKEL STORLEER | ASCAP | 233491970 |
| HAMILTON NORMANI KORDEI | BMI | 739089995 |
| HERMANSEN TOR ERIK | ASCAP | 258732246 |
| NAPIER JAMES JOHN | PRS | 567090532 |
| SMITH SAMUEL | PRS | 686735297 |

### Publishers

| ASCAP controls 24.75% | PRO | IPI |
|---|---|---|
| EMI MUSIC PUBLISHING LTD<br>Contact Info ⌄ | PRS | 87019563 |

Additional Non-ASCAP Publishers

### Performers

| | |
|---|---|
| JONAS DOORM | NORMANI SAM SMITH |
| RICK JAYSON FEAT. HOLLY LUTZ | SAM SMITH |
| SAM SMITH NORMANI | SAM SMITH-NORMANI |

### Alternate Titles

| | |
|---|---|
| DANCING WITH A STRANGER (ACOUSTIC) | DANCING WITH A STRANGER (FEAT. HOLLY LUTZ) [S |
| DANCING WITH A STRANGER (WITH NORMANI) | DANCING WITH A STRANGER (WITH NORMANI) - ACOU |
| DANCING WITH A STRANGER (WITH NORMANI) - CHEA | DANCING WITH A STRANGER - DANCE REMIX |



**BMI**

ABOUT   CREATORS   MUSIC USERS   NEWS   VIDEO   ADVOCACY

**SONGVIEW** ✔

A combined view of ASCAP and BMI musical works.

| Title ∨ | dancing with a stranger |
| Please ... ∨ | Enter part or all of a name (optional) |

SEARCH IN...   What is this?
○ Songview
◉ BMI Repertoire
○ 100% BMI Works

**Search**

NOW VIEWING...
**BMI Repertoire**                                          23 results found

All 100% BMI works are considered reconciled, though some will not show a green check mark at this time as we continue to process our full repertoire through the Songview platform.

**Help**   **Print All**   **Expand All**

⭐ **DANCING WITH A STRANGER**                                              ⊗

◈ Reconciled  (?)   TOTAL % CONTROLLED  WORK ID        ISWC
                    ASCAP   49.50%    896612215       T9273291320
                    BMI     25.75%    29351750
                    Other   24.75%

**Writers / Composers**

% CONTROLLED   BMI: 12.87%   ASCAP: 24.75%   OTHER: 12.38%

| WRITERS / COMPOSERS | CURRENT AFFILIATION | IPI # |
|---|---|---|
| ERIKSEN MIKKEL STORLEER | ASCAP | 00233491970 |
| HAMILTON NORMANI KORDEI | BMI | 00739089995 |
| HERMANSEN TOR ERIK | ASCAP | 00258732246 |
| NAPIER JAMES JOHN | PRS | 00567090532 |
| SMITH SAMUEL FREDERICK | PRS | 00686735199 |

**Performers**

ALI BRUSTOFSKI

DSHARP

JONAS DOORM

NOAH JACOB

NORMANI

NORMANI SAM SMITH

PAGENTRI

RICK JAYSON FEAT HOLLY LUTZ

SAM SMITH

SAM SMITH AND NORMANI

SAM SMITH NORMANI

SAM SMITH WITH NORMANI

SAM SMITH-NORMANI

**Publishers**

% CONTROLLED   BMI: 12.88%   ASCAP: 24.75%   OTHER: 12.37%

| PUBLISHERS | CURRENT AFFILIATION | IPI # |
|---|---|---|
| ▶ EMI BLACKWOOD MUSIC INC | BMI | 00223437493 |
| EMI MUSIC PUBLISHING LTD | PRS | 00087019563 |
| EMI APRIL MUSIC INC | ASCAP | 00128633767 |
| ▶ NAUGHTY WORDS LIMITED | NS | 00636398806 |
| ▼ SONY ATV SONGS LLC | BMI | 00187095633 |

SONY/ATV SONGS LLC
8 MUSIC SQUARE W
NASHVILLE, TN 37203-3204
(615) 726-8300
INFO@SONYATV.COM
HTTP://WWW.SONYATV.COM

View Catalog

| ▼ SONGS OF NKH | BMI | 00863691500 |
|---|---|---|

C/O EMI BLACKWOOD MUSIC INC
8 MUSIC SQ W
NASHVILLE, TN 37203-3204 INFO@SONYATV.COM
HTTP://WWW.EMIMUSICPUB.COM

View Catalog

| ▼ STELLAR SONGS LIMITED | BMI | 00633304676 |
|---|---|---|

C/O EMI BLACKWOOD MUSIC INC
8 MUSIC SQ W
NASHVILLE, TN 37203-3204 INFO@SONYATV.COM
HTTP://WWW.EMIMUSICPUB.COM

View Catalog

*Other Non-ASCAP and Non-BMI Publishers*

## Alternate Titles

*No Data Available*

⭐ BMI Award Winning Song            Print

### DANCING WITH A STRANGER ⊕

WRITER / COMPOSER
FULKERSON RONDEL GREGG

### DANCING WITH A STRANGER ⊕

WRITER / COMPOSER
KOSLOFF IRA
MYSELS GEORGE

### DANCING WITH A STRANGER ⊕

WRITER / COMPOSER
WALKER CINDY

### DANCING WITH A STRANGER ⊕

WRITER / COMPOSER
HILAL GEORGE ANTOINE

### DANCING WITH A STRANGER ⊕

WRITER / COMPOSER
DE LUCA THOMAS GENNARO
NILE WILLIE

▼ **Digital Media 1**

| # | Title | Artist | Rating | Length |
|---|-------|--------|--------|--------|
| 1 | Dancing With a Stranger | Sam Smith & Normani | ★★★☆☆ | 2:51 |

recording engineer: 👤 Mikkel S. Eriksen and 👤 Thomas Warren
programming: 👤 Mikkel S. Eriksen and 👤 Tor Hermansen
executive producer: 👤 Tim Blacksmith (of Tim & Danny Music) and 👤 Danny D (of Tim & Danny Music)
producer: 👤 Jimmy Napes and 👤 Stargate (Norwegian production/songwriting duo)
mixer: 👤 Kevin "KD" Davis (US producer/engineer "KD" Davis)
guitar [guitar overdubbing]: 👤 Ben Jones (UK session multi-instrumentalist)
instruments: 👤 Mikkel S. Eriksen and 👤 Tor Hermansen
vocals: 👤 Normani Hamilton (Normani Kordei Hamilton, of Fifth Harmony) and 👤 Sam Smith (English singer and songwriter)
phonographic copyright by: 💿 Universal Music Operations Limited (not for release label use! UK&IE subsidiary of UMG, legal name of Universal Music UK) (in 2019)
executive produced for: 💿 Tim & Danny Music LLC
produced for: 💿 45th & 3rd Music LLC
recorded at: 📍 The Stellar House in 🌐 Venice, Los Angeles, California, 🇺🇸 United States
mixed at: 📍 Pacifique Studios in 🌐 North Hollywood, Los Angeles, California, 🇺🇸 United States
part of: ☰ Mediabase CHR/Top 40 Year-End 2019 (number: 5) and ☰ Billboard Year-End Hot 100 singles of 2019 (number: 14)
recording of: 🎵 Dancing With a Stranger
   writer: 👤 James Napier, 👤 Mikkel S. Eriksen, 👤 Normani Hamilton (Normani Kordei Hamilton, of Fifth Harmony), 👤 Sam Smith (English singer and songwriter) and 👤 Tor Hermansen
   publisher: 💿 Downtown Music Publishing, 💿 EMI April Music Inc., 💿 Sony/ATV Music Publishing Ltd and 💿 Stellar Songs

# EXHIBIT 4

# Comparison Video Between Plaintiff and Defendants' Music Videos

# TO BE LODGED WITH THE COURT

EXHIBIT 5

# Music Video for Plaintiff's Song

# TO BE LODGED WITH THE COURT

EXHIBIT 6

# Music Video for Defendants' Song

# TO BE LODGED WITH THE COURT

EXHIBIT 7

# Plaintiff's Registered Deposit Copy Sound Recording

# TO BE LODGED WITH THE COURT