1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                   CENTRAL DISTRICT OF CALIFORNIA
10
11    SOUND AND COLOR, LLC,              Case No.  2:22-cv-01508-WLH-AS

12                    Plaintiff,          **ORDER REGARDING**
                                          **DEFENDANTS' MOTION FOR**
13    v.                                  **SUMMARY JUDGMENT [98]**

14    SAMUEL SMITH, *et al.*,
15                    Defendants.
16
17
18
19          Before the Court is Defendants' Motion for Summary Judgment ("Motion" or

20    "Mot.") (Docket No. 98).  The Court heard oral argument from all parties on July 14,

21    2023.  For the following reasons, the Court **GRANTS** the Motion.

22    **I.    BACKGROUND**

23          **A.    Procedural History**

24          Plaintiff Sound and Color, LLC filed a Complaint against Defendants, alleging

25    that Defendants infringed Plaintiff's sound recording and musical composition

26    copyrights.  (Compl., Docket No. 1).  Plaintiff included claims for vicarious and

27    contributory infringement as well.  (*Id.*).  Plaintiff later voluntarily dismissed its claim

28

1     that Defendants infringed the sound recording copyright, leaving only the musical

2     composition copyright. (Notice of Dismissal, Docket No. 97).

3          Defendants moved to dismiss the Complaint, and Plaintiff filed a First

4     Amended Complaint. ("FAC," Docket No. 45). Some of Defendants moved to

5     dismiss the FAC. (Mots. to Dismiss, Docket Nos. 50, 51, 74). While those motions

6     were pending, Defendants moved for summary judgment. (Mot. for Summ. J.

7     ("Mot."), Docket No. 98). The Defendants moved only on the issue of substantial

8     similarity, pursuant to the Court's bifurcation order, (Docket No. 55), which required

9     an initial phase of expert discovery into whether Plaintiff satisfied the extrinsic test, a

10    prerequisite to proving infringement in this circuit. Under the bifurcation order, the

11    parties completed expert discovery, exchanged initial and rebuttal expert reports, and

12    deposed each other's experts prior to the filing of the summary judgment motion.

13    (Mot., Docket No. 98-1 at 3).

14         After the Defendants moved for summary judgment, the Court granted the

15    motions to dismiss it had taken under submission. (Order, Docket No. 102).

16    Plaintiffs filed a Second Amended Complaint, which removed Plaintiff's contributory

17    infringement claim and added new allegations related to personal jurisdiction, venue,

18    and its vicarious infringement claim. ("SAC," Docket No. 114).[1] Defendants have

19    moved to dismiss the SAC. (Dockets No. 120 and 122).

20

---

[1] The filing of the SAC does not moot the Motion. Pursuant to the bifurcation order, (Docket No. 55), the Motion is directed at the sole question of whether Plaintiff satisfied the extrinsic test, and specifically whether Plaintiff has created a genuine dispute of material fact regarding whether Defendants' song is substantially similar to Plaintiff's song. (Mot., Docket No. 98-1 at 1). Because Plaintiff's allegations related to similarities in the FAC and SAC are identical, it would "waste both the [C]ourt's and the parties' resources to deny the motion and require defendants to file an identical motion directed to the [second] amended complaint." *See Shame on You Prods. v. Banks*, 120 F. Supp. 3d 1123, 1140 (C.D. Cal. 2015); *see also McQuiston v. City of L.A.*, 564 Fed. App'x 303, 305–06 (9th Cir. 2014) (holding that a district court did not err by considering a party's motion for judgment on the pleadings that was directed at a prior complaint because the party's "claims, factual allegations, and legal arguments did not change in any material way from the second to the third amended complaints" and the party "did not identif[y] any [resulting] prejudice."). Here,

1       **B.**    <u>**Factual Background**</u>

2        The Court views the facts in the light most favorable to Plaintiff, the non-

3 moving party. To the extent any of these facts are disputed, they are either (or both)

4 immaterial to the disposition of the Motion or unsupported by the record. In addition,

5 to the extent that the Court has relied on evidence to which the parties have objected,

6 the Court has considered and overruled those objections. As to the remaining

7 objections, the Court finds that it is unnecessary to rule on them because the disputed

8 evidence was not relied upon in this order.

9        Jordan Vincent and Christopher Miranda wrote and released song *Dancing with*

10 *Strangers*, also known as *Dancing with a Stranger*, in 2015. (Statement of

11 Undisputed Facts ("SUF"), Docket No. 118-1,[2] Facts 1, 2). Four years later, a song

12 called *Dancing with a Stranger*, written by Samuel Smith, Normani, and others, was

13 released. (*Id.*, Facts 5, 6). For purposes of this order, the Court refers to the Jordan

14 Vincent song as "JV" and the Samuel Smith and Normani song as "SS."

15        Both JV and SS have a hook that contains the lyrics "dancing with a stranger."

16 A hook is a repeating short riff or phrase in a song, which can "be either vocal or

17

---

18 Plaintiff has not identified any prejudice that would result from deciding the Motion

19 even though the SAC has been filed. Moreover, neither party has argued that the
Motion is moot in light of the SAC. *C.f. Ramirez v. Cnty. of San Bernadino*, 806 F.3d

20 1002, 1008 (9th Cir. 2015) (holding that an amended complaint mooted a motion to
dismiss directed at a prior complaint). In these circumstances, where the Plaintiff's

21 "claims, factual allegations, and legal arguments did not change in any material way

22 from" the FAC to the SAC with regards to substantial similarity, and the Plaintiff has
not identified any prejudice, it is permissible for the Court to decide Defendants'

23 Motion. *See McQuiston*, 564 Fed. App'x at 305–06 (holding that a district court did
not err in considering a motion for judgment on the pleadings directed at a prior

24 complaint).

25 [2] Docket No. 118-1 contains the parties' combined statement of undisputed facts, as
well as each parties' responses and objections to those facts. Docket No. 118-1

26 contains not only those facts that Defendant filed in support of its Motion, (*see*
Defendants' Original SUF, Docket No. 98-18), but also facts that Plaintiff added.

27 (*See* Pl. Statement of Undisputed Facts, Docket No. 106-3). The Court refers to
Defendant's facts as Fact 1, 2, etc. The Court refers to the facts Plaintiff added as

28 Plaintiff Fact ("Pl. Fact") 1, 2, etc.

purely instrumental." *Landry v. Atl. Recording Corp.*, No. 04-2793, 2007 WL 4302074, at *5 (E.D. La. Dec. 4, 2007); *see also Armour v. Knowles*, 512 F.3d 147, 151 (5th Cir. 2007) (explaining that a hook is "pop parlance for 'chorus'"). The gravamen of Plaintiff's musical composition infringement claim is that the music and lyrics "dancing with a stranger" in SS that appear at approximately 0:51 and elsewhere in SS (the "SS Melodic Phrase"), (SUF, Fact 47), infringe the composition of the music and lyrics "dancing with a stranger" that appear at approximately 1:13 and elsewhere in the JV deposit copy (the "JV Melodic Phrase"). (*Id.*, Fact 45). The SS and JV Melodic Phrases are depicted in Figure 1. (*Id.*, Facts 44, 46).

**Figure 1**



To understand the portions of each song that Plaintiff claims are similar—the JV and SS Melodic Phrases shown in Figure 1—it is helpful to distinguish the portions of the songs over which Plaintiff does not claim infringement. The hook in each song contains other lyrics and music beyond just the brief Melodic Phrases depicted in Figure 1. The lyrics of the hook in JV, in full, are: "She said I'm gonna die / Dancing with a stranger." (*Id.*, Fact 15). The lyrics of the hook in SS, in full, are: "Look what you made me do / I'm with somebody new / Ooh, baby, baby, I'm dancing with a stranger." (*Id.*, Fact 16). Plaintiff does not claim infringement over the entire musical and lyrical arrangement in the hook in full—only the melody that accompanies the lyrics "dancing with a stranger."

Moreover, the melody that plays behind the lyrics "dancing with a stranger" is not the same each time that phrase is repeated. The JV Melodic Phrase "is one of two

interchanging melodies or melodic variations to which the lyrics 'dancing with a stranger' are sung" in JV. (*Id.*, Fact 82).[3]  The Court refers to the second melodic variation to which the lyrics "dancing with a stranger" are sung in JV as the "JV Melodic Variation."  In the JV deposit copy, the lyrics dancing with a stranger "occur sixteen times total in two melodic settings (*i.e.*, eight times with the [JV Melodic Variation] and eight times with the JV Melodic Phrase)." (*Id.*, Fact 177).  As a result, Plaintiff claims infringement over these sixteen appearances of the phrase "dancing with a stranger" and the accompanying melodies, though Plaintiff concedes that the JV Melodic Variation is less similar to the SS Melodic Phrase than the JV Melodic Phrase, (*Id.*, Fact 84).  Because of Plaintiff's concession, to the extent the SS Melodic Phrase is not substantially similar to the JV Melodic Phrase, then it is necessarily not substantially similar to the JV Melodic Variation.  As a result, the Court focuses this order on a discussion of similarities solely between the JV Melodic Phrase and the SS Melodic Phrase.  This approach makes sense, in particular, because Plaintiff's experts discussed the JV Melodic Variation only once in their various expert reports. (*Id.*, Fact 86).

The SS Melodic Phrase plays twelve times throughout the song SS.[4]  Defendants dispute this fact, arguing that there are in fact seven different melodic

---

[3] Plaintiff denies this fact "as stated" but admits in the same breath that there are two different melodies to which the lyrics at issue are sung in JV (SUF, Fact 82 (Plaintiff's Response: "It is correct to say that there is the JV hook melody that appears almost exactly the same in SS, and then a derivative variation that is not as similar to the hook in SS."); *see also id.*, Fact 83 (Plaintiff admitting without objection that, aside from the JV Melodic Phrase that appears at 1:13 in the deposit copy, "[t]he other melody or melodic variation to which the lyrics 'dancing with a stranger are sung occurs at approximately 1:05 and elsewhere in the JV deposit copy (the 'JV 1:05 Melodic Phrase')")).  Because Plaintiff actually admits this fact, the Court finds there is no genuine dispute as to the fact that JV contains two different melodies to which the lyrics "dancing with a stranger" are sung.

[4] Plaintiff's expert claims that a "partial" SS Melodic Phrase appears in SS, bringing his count up to thirteen, not twelve. (*See* Stewart Rep., Docket No. 108,Exh. 1 ¶ 7; *see also id.* at 5 (containing a table noting the purported partial appearance of the SS Melodic Phrase)).  The undisputed evidence demonstrates, however, that the lyrics

variations to which the lyrics "dancing with a stranger" are sung in SS, and that the "most memorable" melodic phrase only appears five times.  (Mot., Docket No. 98-1 at 8 ("[I]n SS the words 'dancing with a stranger' appear in seven different melodic settings throughout SS.") (citing SUF, Facts 178−81); *see also* Ferrara Rep., Docket No. 98-3 ¶ 71 (arguing that the "most frequently heard and memorable melodic setting" of the lyrics "dancing with a stranger" appears only five times in SS)).  The Court views the facts in the light most favorable to the Plaintiff, however.  (*See, e.g.*, Pl. Response to Fact 178 ("It is absurd to suggest that Defendants' song has seven compositionally different hooks and was composed that way.  These so-called variations are merely variations in the performance of the song.") (citing Stewart Decl., Docket No. 108 ¶ 33)).  As a result, for purposes of this motion, the Court finds that the SS Melodic Phrase appears twelve times in SS.

Now that the Court has identified the Melodic Phrases at issue, the Court briefly summarizes each expert's qualifications and opinions before enumerating the alleged similarities between the musical elements of each Melodic Phrase.

   *i.* *The Experts*

In support of its arguments that SS infringes JV because the songs' hooks are substantially similar,[5] Plaintiff offers the expert opinion of Dr. Alexander Stewart, a professor of music at the University of Vermont.  (Stewart Decl., Docket No. 108 ¶ 4).[6]  In short, Dr. Stewart opines that "SS and JV are substantially similar in the

---

sung to the so-called partial iteration of the SS Melodic Phrase are not "dancing with a stranger" but rather "dancing yeah ooo," (Ferrara Rebuttal Rep., Docket No. 98-4 ¶ 83 (citing Ferrara Rep., Visual Exh. C)).  The Court finds that this so-called "partial iteration" does not constitute an appearance of the SS Melodic Phrase at issue since it does not include the lyrics "dancing with a stranger."  In any event, it is immaterial whether there are twelve or thirteen appearances of the SS Melodic Phrase.

[5] Because this Motion concerns only the issue of substantial similarity, expert opinions on other issues, such as the likelihood of actual copying, are omitted from this summary.

[6] Dr. Stewart is the same expert who testified on behalf of the plaintiff in *Skidmore v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020) (en banc).

lyrics, melodic content (including rhythmic and metric placement), and structural
setting and supportive harmonies of their main themes and choruses." (*Id.* ¶ 7). He
argues that the "creative selection and arrangement of the melody, lyrics and other
elements in JV … are distinctive and original" and that "this expression forms the
musical core of SS." (*Id.*). He also offered a rebuttal opinion to Defendants' experts.
(*Id.* ¶ 8 ("Nothing in the 283 pages of the defendants' reports changes my earlier
conclusions that the selection and arrangement of musical elements in the hooks of SS
and JV are highly similar in important lyrical and melodic expression (including
rhythmic and metric placement), and structural setting and supportive harmonies of
their main themes and choruses.")).[7]

Plaintiff also has a rebuttal expert, Professor Brian Bricklin, a member of the
faculty at Drexel University's Music Industry Program and a former singer and

---

[7] Defendants object to the opinions of Dr. Stewart, *inter alia*, because they claim his
analysis "did not '*filter out*' elements from prior art." (Mot. at 18). The Court
overrules this objection. In the Ninth Circuit, if a party claims that an individual
musical element has been infringed, the court must first determine if that element is
protected by copyright. If not, the element is "filtered" out for purposes of the
analysis, and no substantial similarity can be based upon similarities in the filtered-
out-element. *See Apple Comput., Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1446 (9th
Cir. 1994) ("[T]he unprotectable elements have to be identified, or filtered, before the
works can be considered as a whole."); *Smith v. Weeknd*, No. CV 19-2507 PA
(MRW), 2020 WL 4932074, at *6−7 (C.D. Cal. July 22, 2020) (excluding the expert
opinions of Dr. Stewart for failing to filter out prior art or "otherwise assist the Court
in performing the 'analytic dissection' required of the extrinsic test" because he found
similarities based on unprotectable common musical elements). In this case, however,
Plaintiff brings only a selection and arrangement claim based on a combination of
concededly unprotectable individual musical elements. *C.f. Weeknd*, 2020 WL
4932074, at *6 (plaintiff asserting similarities between allegedly protectable
individual elements in addition to putting forth a selection and arrangement claim). In
such circumstances, the court must examine whether the particular arrangement of
unprotectable elements in the copyrighted work is substantially similar to the
arrangement of the same in defendant's work. That inquiry would be impossible if the
court disposed of the unprotectable elements being arranged as a preliminary matter.
*See, e.g.*, *Metcalf v. Boncho*, 294 F.3d 1069, 1074 (9th Cir. 2002) (examining a
selection and arrangement of unprotectable ideas to assess substantial similarity under
the extrinsic test, without performing a filtration analysis, in a case where all of the
alleged similarities were admittedly unprotectable), *overruled on other grounds by
Skidmore*, 952 F.3d 1051.

songwriter.  (Bricklin Decl., Docket No. 109 ¶ 15).  Professor Bricklin was retained to "give an expert opinion on the production, songwriting, and engineering" of JV and SS, and to opine about the "similarities between the two songs …" (*Id.* ¶ 16). Professor Bricklin analyzed a series of audio files[8] comparing the two songs, *inter alia*, and determined that "[w]hen comparing the melody lines of the two 'hooks,' with the exception of the length of the last note (JV extends longer than SS), *they are strikingly similar*.  There are two passing notes that differ, but it is inconsequential, as they are part of the descending melody line." (*Id.* ¶ 20).  He also opines that "when the songs are tempo matched, they have a nearly identical feel.  The percussive elements in both songs, and how the song is produced, are found in commercial pop music." (*Id.* ¶ 25).  In his report, for instance, Professor Bricklin "tempo and pitch matched" the JV Melodic Phrase audio to the SS Melodic Phrase audio and "panned" the music in two different directions to reach the conclusion that the works were similar. (*Id.* ¶ 20).

Defendants, in support of their arguments that there are no substantial similarities between JV and SS as a matter of law, offer three experts of their own. Dr. Lawrence Ferrara, a musicologist and Professor of Music at New York University's Steinhardt school, was asked to "perform a comparative musicological analysis of the musical composition and sound recording" of JV and SS.  (Ferrara Decl., Docket No. 98-2 ¶ 3).  In short, Dr. Ferrara opines that, among other things, "there are no musicologically significant similarities between JV and SS, but there are

---

[8] Even though Plaintiff dismissed its claim that Defendants infringed Plaintiff's sound recording "by using a portion of that sound recording in their own sound recording (often known as sampling)," (Notice of Voluntary Dismissal, Docket No. 97 at 1), the JV and SS sound recordings and expert testimony about them remain relevant. Plaintiff claims infringement in the musical composition "including [as it is] embodied in the registered sound recording of Plaintiff's work." ( *Id.* at 2).  Under the 1976 Copyright Act, which applies here, copyright protection to a musical work can extend not only to the composition as transcribed in musical notation, but also the composition as it is fixed in any tangible medium of expression, including a recording. 1 NIMMER ON COPYRIGHT § 2.05 (2023).

1   many musicologically significant differences," including that "JV is recorded in the

2   key of G minor.  SS is recorded in the key of Ab major," that "[t]he songs' use of the

3   four-word phrase 'dancing with a stranger' is not a musicologically significant

4   similarity because… research indicates that this phrase is commonplace in song

5   lyrics," that "[t]he melodic phrases to which the words 'dancing with a stranger' are

6   sung in JV and in SS do not have musicologically significant similarities," and that

7   "the songs' harmonies…do not share any musicologically significant similarities."

8   (*Id.* ¶ 7).  Dr. Ferrara also offered rebuttal opinions regarding Dr. Stewart's initial

9   expert report.  (*Id.*).

10      Defendants also put forth expert witness Paul Geluso, who is an Assistant

11   Music Professor and the Program Director of the Music Technology Department at

12   New York University.  (Geluso Decl., Docket No. 98-6 ¶ 2).  Defendants asked

13   Assistant Professor Geluso to "determine whether significant similarities in style and

14   instrumentation exist between" the sound recordings of JV and SS.  (*Id.* ¶ 3).  He

15   opined, among other things, that the "style, instrumentation, and production

16   techniques in SS are significantly different from those in JV" and that "[a]ny

17   similarities in style or instrumentation between the SS sound recording and the JV

18   sound recording are commonplace and not significant."  (*Id.* ¶ 6).

19      Finally, Defendants engaged Dr. Ronald Sadoff,[9] an Associate Professor of

20   Music at the Steinhardt School at New York University.  (Sadoff Decl., Docket No.

21

---

22   [9] The Court overrules Plaintiff's objection to Dr. Sadoff's opinions as "cumulative and
duplicative" of Dr. Ferrara's report.  (Docket No. 107).  Plaintiff argues that courts
23   can exercise their discretion to limit the party to a single expert on that opinion
pursuant to Fed. R. Civ. P. 403.  (*Id.*).  While such an objection may have merit at the
24   trial stage, *see, e.g.*, *Aetna Cas. & Sur. Co. v. Guynes*, 713 F.2d 1187, 1193 (5th Cir.
1983) (affirming the exclusion of expert on grounds of cumulativeness during trial),
25   the Court overrules this objection at the summary judgment phase.  *Id.*; *see also*
*Munoz v. PHH Morg. Corp.*, 478 F. Supp. 3d 945, 965 (E.D. Cal. 2020) (explaining
26   that an objection that the probative value of evidence is outweighed by its "needlessly
27   cumulative" nature is "premature and serves no purpose at summary judgment")
(cleaned up).
28

98-9 ¶ 2).  Defendants asked Dr. Sadoff to review the preliminary reports of Dr. Stewart and Dr. Ferrara to "determine whether musicologically significant similarities exist in the musical compositions" of JV and SS.  (*Id.* ¶ 3).  In short, he opines that "[t]here are no significant similarities in JV and SS," that "Dr. Stewart incorrectly calculates the tempo of" SS and JV, that Dr. Stewart "incorrectly defines SS as in the key of F minor," that "Dr. Stewart identifies only generic structural similarities, and fails to identify notable structural distinctions" between JV and SS, that "Dr. Stewart's transcription of the purported 'hook' melodies … reveals many differences and no significant similarities," and that "[t]here is no musicological basis to find that the chord progressions in JV and SS have significant musicological similarities."  (*Id.* ¶ 5).

     ii. *The Melodic Phrases*

   The Court focuses on the musical elements of JV's and SS's Melodic Phrases that Plaintiff claims are similar: the lyrics, the key, the pitch sequence, the melodic contour, the rhythm and metric placement, the chord progressions, and other musical elements.

     a. Lyrics

   The four-word phrase "dancing with a stranger" make up the only lyrics that are common to both SS and JV.  (SUF, Facts 15−17).  Though the phrase "dancing with a stranger" means what it means, the narrative context of the lyrics in each Melodic Phrase differs.  (*Id.*, Fact 18).  In SS, the phrase "dancing with a stranger" is part and parcel of the song's narrative about "heartbreak in the aftermath of a relationship." (*Id.* (citing Ferrara Rep., Docket No. 98-3 ¶ 23) ("In [SS], the singer expresses continued feelings for their former love interest: the lyrics in Verse 1 start with "I don't wanna be alone tonight, It's pretty clear that I'm not over you …")).  The lyrics of JV do not touch on the theme of heartbreak.  (*Id.* (citing Stewart Dep. Tr., Docket No. 98-14 at 127:10−13) ("I certainly never had tried to claim that the narrative is the same in both of these songs…"); *see also id.*, Fact 15 (listing the JV lyrics in full,

1    including verses like "That girl was on fire from the get go / Never had to let go / She

2    said time passes so slow … / She said I'm gonna die / Dancing with a stranger")).

3         The record contains nearly twenty songs that predate JV and that contain the

4    phrase "dancing with a stranger," (*Id.*, Facts 19−33, 37−40), including songs titled

5    "Dancing with a Stranger" by The Risk (2010), Cyndi Lauper (1989), Kitty Wells

6    (1957), Annie Gallup (1996) and David Lyle Morris (1993). (*Id.*, Facts 24, 27, 32,

7    40).

8                                    b.  Key

9         The parties agree that JV is in the key of G minor. (*Id.*, Fact 4). The parties

10   disagree regarding whether SS is in the key of Ab major or F minor. (*See, e.g.*, Mot.

11   at 19 ("Defendants' experts claim it is Ab major while Plaintiff's experts claim it is in

12   F minor.")). Because the Court resolves factual disputes in favor of Plaintiff, the non-

13   moving party, the Court finds for purposes of summary judgment that SS is in the key

14   of F minor. (SUF, Pl. Fact 24). This is so because a finding that SS is in the key of F

15   minor facilitates additional similarities between the songs than if SS were in the key of

16   Ab major. (*See, e.g.*, Mot. at 17 (explaining that, "when SS is in the … key of Ab

17   major there are no similarities at all in the pitch sequences [between the JV and SS

18   Melodic Phrases]," but that there are some similarities in the pitch sequences if SS is

19   assumed to be in the key of F minor)). Bearing that assumption in mind, both songs

20   share a minor key, albeit different[10] minor keys. (SUF, Fact 193).

21   _____

22   [10] The Plaintiff argues that "differences or dissimilarities are generally disregarded"
     when assessing substantial similarity. (Pl. Opp'n, Docket No. 106 at 6 (citing *Sheldon*

23   *v. Metro-Goldwyn Pictures Corp.*, 81 F.2d 49, 56 (2d Cir. 1936) and *Esplanade*
     *Prods. v. Walt Disney Co.*, 768 Fed. App'x 732, 733 (9th Cir. 2019)). To say that

24   differences in two works are disregarded is an incorrect statement of law, however.
     What is true is that, if substantial similarity is found, the defendant will not be

25   immunized from liability by reason of some dissimilar elements between the works.
     *See, e.g.*, *Sheldon*, 81 F.2d at 59 (holding that where "substantial parts" of a work are

26   similar, "no plagiarist can excuse the wrong by showing how much of his work he did
     not pirate"); *Esplanade Prods.*, 768 Fed. App'x at 733 (quoting *Sheldon*, 81 F.2d at

27   56). It is also true that the extrinsic test focuses on alleged similarities. *Skidmore*, 952

28   F.3d at 1064 ("[T]he extrinsic test… compares the objective similarities of specific

                                    11

c.  Pitch Sequence

Pitch is the "specific high or low placement of a sound, often identified within a musical scale." (*Id.*, Fact 42).  Pitch is one component of a melody.  (*Id.*, Fact 43 (citing Stewart Rebuttal Rep., Docket No. 98-13 at 8) ("Melody is defined as pitched sounds in musical time or the interaction of rhythm and pitch.) (cleaned up)).  Assuming that SS is in the key of F minor, the pitch sequence of each Melodic Phrase is as follows:

SS:  7555<u>5</u>4433

JV:  76654<u>4</u>3

(SUF, Pl. Facts 34–35).

Both pitch sequences start with 7, end with 3, and also contain the pitch sequence 5443, similarities that are underlined here.  (Pl. Opp'n at 15).  Additionally, there are similarities in the pitch sequences that written notation cannot capture due to the presence of "passing notes."  Passing notes are brief, "non-chord tones that usually act as a bridge between two consonant pitches, in stepwise motion, and normally occur[] in a metrically weak position (not a beat) …."  (SUF, Pl. Fact 37).  Dr. Ferrara testified that, "depending on how you are reducing a melody, [passing notes] would be notes that are embellishing and not part of the … fundamental sequence."  (*Id.*, Pl. Fact 38).  Even though the written notation shows that SS's pitch sequence goes from 7 to 5, and JV's goes from 7 to 6, Dr. Stewart opines that "the overall pitch sequence is very close to being the same," in each Melodic Phrase (Stewart Dep. Tr., Docket No. 110-1,Exh. 7 at 98:23–99:8).  That is so because the two 6s in the JV Melodic

_____

expressive elements…").  Evidence of differences between the two works is still admissible and relevant, however, because "'if the points of dissimilarity not only exceed the points of similarity, but indicate that the remaining points of similarity are… of minimal importance either quantitatively or qualitatively, then no infringement results….'"  *Durham Indus. v. Tomy Corp.*, 630 F.2d 905, 913 n.11 (2d Cir. 1980) (quoting 3 NIMMER ON COPYRIGHT § 13.03(B) (2023)).  As a result, while the Court focuses on the similarities that Plaintiff alleges, it also considers undisputed differences in assessing whether there are actually "substantial parts" that are similar between the two works to justify liability in the first place.  *Sheldon*, 81 F.2d at 56.

1    Phrase are brief, non-chord tones that are "passing tones." (SUF, Pl. Facts 39−42).  It

2    is sometimes difficult for the average, non-expert listener hear passing notes.  (*Id.*, Pl.

3    Fact 37 (citing Bricklin Decl., Docket No. 109 ¶ 21)).  Plaintiffs also argue that the SS

4    Melodic Phrase pitch sequence similarly "very quickly passes through 6[,]" (SUF, Pl.

5    Fact 43), such that both sequences start with a pitch 7, quickly pass through 6, and

6    land on 5.[11]

7         There are undisputed differences in the pitch sequences, though.  JV contains 7

8    pitches to SS's 8.  (SUF, Facts 68, 69).  JV includes scale degree 6, which is absent in

9    the written notation of SS.  (*Id.*).  The melodies repeat different pitches a different

10   number of times.  (*Id.*).

11                            d.  Melodic Contour

12        A melody is a single line of music that consists of "a succession (*i.e.*, a

13   sequence or order) of pitches and the rhythmic durations of those pitches within a

14   melodic phrase structure."  (SUF, Fact 41).  Melodic contour is "the direction in

15   which a melody moves."  (*Id.*, Pl. Fact 44).  Dr. Stewart says about the melodic

16   contour depicted in Figure 1, "[T]hese passages near nearly identical in melodic

17   contour."  (Stewart Decl., Exh. 1 at 32).  Both the JV and SS Melodic Phrases have a

18   downward contour, from pitch 7 down to pitch 3.  (SUF, Pl. Fact 45).  Defendants'

19   expert, Dr. Ferrara, also conceded in his report that the JV and SS Melodic Phrases

20   share a "simple and commonplace downward contour."  (Stewart Decl., Docket No.

21   110-1,Exh. 2 ¶ 67).

22

23   [11] Defendants object to Plaintiff Facts 37, 39, 42, and 43 as not timely disclosed and
     unsupported by the evidence, among other things, since Dr. Stewart's own report does
24   not notate a six in the pitch sequence of SS, and his testimony confirms that the SS
     Melodic Phrase pitch sequence never lands on six.  (*See* Docket No. 118-5 at
25   108:14−19) ("Q: And you did not identify a pitch six in the [SS] pitch sequence in
     your report, correct?  A: I did not and neither did Dr. Ferrara because it doesn't really
26   land on six.").  Even assuming that these facts are timely disclosed and supported by
     the evidence, however, they are not material for the reasons stated in Section III.B.
27   The Court therefore need not comment on the merits of Defendants' objections to
     these facts.
28

                                        13

The JV Melodic Phrase "descends stepwise with some notes repeated (*i.e.*, scale degree 7 descends stepwise to scale degree 6, which repeats before descending stepwise to scale degree 5, which descends stepwise to scale degree 4, which repeats before descending stepwise to 3)." (SUF, Fact 74). By contrast, the SS Melodic Phrase descends from the first pitch on scale degree 7 to the second pitch on scale degree 5. (*Id.*, Fact 76–78). There is no such leap in the stepwise JV Melodic Phrase. (*Id.*, Fact 79).

### e. Rhythm and Metric Placement

Rhythm and metric placement refer to "the pattern and organization of the time values of sounds and silences as well as the overall rhythmic flow and feel in musical time." (*Id.*, Fact 148). The metric placement of the beginning of each syllable of the lyrics aligns in Figure 1. (*Id.*, Pl. Fact 48; *see also* Ferrara Dep. Tr., Docket No. 110-1, Exh. 9 at 246:13–25 ("[T]he metric placements of the beginning of each syllable is the same.")).

For instance, in Figure 1, the metric placement of the beginning of the syllable "danc-" in both Melodic Phrases is the same—on the second half of beat four (and on scale degree 7). (SUF, Pl. Fact 50). The first syllable—"danc"—is held for the same duration in both Melodic Phrases. (*Id.*, Pl. Fact 51). The syllable "stran-" lasts a full beat in each Melodic Phrase. (*Id.*, Pl. Fact 52). The lyric "a" in both Melodic Phrases occurs on the second half of beat two. (*Id.*, Pl. Fact 54). The JV and SS Melodic Phrases each begin with an anticipation of beat one with the syllable "dan-" and end on a chord tone while singing the final syllable "-ger." (*Id.*, Pl. Fact 55). The syllables "-ing," "with," and "a" are each set to eighth notes. (*Id.*, Pl. Fact 53).

That said, there are undisputed differences in metric placement of the syllables in each Melodic Phrase. The allegedly similar melodic phrases to which the lyrics "dancing with a stranger" are sung in JV and SS share only two non-consecutive notes with the same pitch (assuming SS is in a minor key) and metric placement, and those

1    notes have different durations.  (*Id.*, Fact 184).[12]  "In JV, the first syllable of the lyrics

2    'dancing with a stranger,' *i.e.*, 'dan-,' is sung to the first note in the JV Melodic

3    Phrase, which is on scale degree 7, begins on the second half of beat 4, and is a 'tied'

4    note that is held for a quarter note (one beat in duration)."  (*Id.*, Fact 194).  In SS, by

5    contrast, the first syllable of the lyrics "dancing with a stranger," *i.e.*, "dan-", is sung

6    to two notes in the SS Melodic Phrase, both eighth notes (one half beat in duration).

7    (*Id.*, Fact 195;[13] *see also* Pl. Fact 52 ("'danc-' in JV is sung to the first note in the JV

8    Melodic Phrase, but the syllable 'danc-' in SS is sung to the first and second notes in

9    the SS Melodic Phrase.")).  The "stran-" is set to one full-beat note in JV, (*id.*, Fact

10   48), while the "stran-" is set to two half-beat notes in SS.  (*Id.*, Facts 55, 57).  The

11   final pitch in the JV Melodic Phrase occurs half a beat later than the final pitch in the

12   SS melodic phrase, (*id.*, Pl. Fact 56), as can be seen in Figure 1.

13                         f.   Chord Progressions

14        A chord is a collection of three or more pitches sounded simultaneously.  (Mot.

15   at 3).  A sequence of chords is referred to as a chord progression.  (SUF, Fact 90).

16   The JV chord progression contains a repeating sequence of four rotating chords, (*id.*,

17   Fact 93): G-, D-, Eb, and F.  The SS chord progression contains a repeating sequence

18   of eight rotating chords,[14] of which the last four chords are a variation of the first four

19   chords, (*id.*, Fact 98): Eb, F, G-, Bb, Eb, D-, G-, Bb.  (*Id.*, Facts 99−106).  Plaintiffs

20

21

22   [12] Plaintiff purports to deny this fact as stated, but Plaintiff admitted Fact 64—that
     "[a]ssuming SS is in a minor key [as the Court does here], only two notes in the JV

23   Melodic Phrase and the SS Melodic Phrase share pitch and metric placement."  The
     Court therefore holds there is not genuine dispute as to this fact.

24   [13] The Court finds there is no genuine dispute as to this fact because Plaintiff's cited

25   evidence does not speak to the differences cited in Fact 195, but instead point to other
     similarities in the metric placement.  Other similarities do not establish that the

26   differences are not present.
     [14] Plaintiff purports to dispute this fact, but its own expert's rebuttal report depicted

27   the SS chord progression as containing eight different chords, the last four a variation
     on the first.  (Stewart Decl., Docket No. 108 at 56).  The Court therefore finds the

28   dispute is not genuine, and in any event is immaterial.

1   claim these chord progressions are similar in that they both contain three of the same

2   chords, albeit in different positions (G-, Eb and F).  (*Id.*, Pl. Fact 31).

3          Moreover, Dr. Stewart opines that "a simple rotation of the chords" reveals

4   even more similarities.  (Stewart Decl., Docket No. 108 ¶ 11).  Figure 2, transcribed

5   by Dr. Stewart, contains the original basic chord sequences in the SS and JV Melodic

6   Phrases respectively.  (*Id.*).  Figure 2 depicts SS's Melodic Phrase's chord sequence,

7   listed in order across the top and bottom SS rows: Eb F G- Bb Eb D- G- Bb.  (*See*

8   Figure 2).  JV contains the chord sequence G- D- Eb F, repeated twice across the two

9   rows marked JV.  (*Id.*).  The chord progression for JV and SS both include the chords

10  Eb, F, and G-.  (*Id.*, Pl. Fact 66).

11                                    **Figure 2**

12
13
14
15

16         Figure 3 shows Dr. Stewart's "rotation" of the JV chord sequence, so it starts on

17  Eb instead of G, just as SS starts on Eb.

18                                    **Figure 3**

19
20

21         Once JV's chord progression is rotated to start on Eb, all the chords between the

22  two progressions align except for in two instances—the first D- in the rotated JV

23  aligns with a Bb in SS, not another D-, and the second F in the rotated JV aligns with

24  a D- in SS, not another F.  (*See* SUF, Pl. Fact 32; Stewart Rebuttal Rep., Docket No.

25  108 at 7 (noting that "a simple rotation of the chords yields an almost identical cycle

26  over eight bars")).  And Dr. Stewart opines that those differing chords in the Figure 3

27  chord progressions are similar in that they share two out of three pitches with each

28

1  other.  (SUF, Pl. Fact 33).  However, "[t]he chord progression in JV never rotates such

2  that it begins on an Eb major or VI chord (the chord on which the SS chord

3  progression begins)." (*Id.*, Fact 118).[15]

4         There are also undisputed differences.  The chord progression in SS is an

5  example of the "hopscotch schema" chord progression; the JV chord progression is

6  *not* an example of the "hopscotch schema." (*Id.*, Facts 109, 110).  The chord

7  progression in JV does not follow the hopscotch schema's pattern of root movement.

8  (*Id.*, Fact 111 (citing Stewart Dep. Tr. at 77:17−78:1) ("Well, the name 'hopscotch' is

9  sort of a cute play on the fact of the root movement of the chords.  In S.S. as an

10  example, the root movement of the chords is step, step, skip, and J.V. doesn't follow

11  that pattern.")).  SS does not contain the G- D- Eb F chord progression that JV has,

12  rotation notwithstanding.  (*Id.*, Facts 107, 108).[16]  The harmonic rhythm of the JV

13  chord progression is one chord per bar, played on the first beat of each bar.  (*Id.*, Fact

14  115).  In the SS chord progression by contrast, the general harmonic rhythm is as

15  follows: the first chord is six beats, the second chord is two beats, the third chord is 4

16  beats or 3 and 1/2 beats, and the fourth chord is 4 beats or 4 and 1/2 beats, which

17  repeats for the fifth through eighth chords.  (*Id.*, Fact 116).  Only one chord in the

18  chord progressions depicted in Figure 2 occur in the same sequence: the sixth chord in

19  SS, D-, occurs in the same position as the second chord in the JV progression, D-, but

20  the harmonic rhythm of that chord is different.  (*Id.*, Fact 117).

21  _____

22  [15] Plaintiff purports to deny this fact, but Dr. Stewart plainly testified that at no point
in the JV musical composition does a sequence of chords actually rotate to begin on E

23  flat instead of G minor.  (Stewart Dep. Tr., Fluehr Decl. at Exh. 7, 64:6−66:1 (Q: At
any point in the J.V. musical composition, does the sequence of chords actually rotate

24  so that it begins on E flat instead of G minor?  A: Of course not.  As I state here, this
is an operation that I performed on the harmonies in order to show the similarities.").

25  The Court therefore finds there is no genuine dispute of material fact as to Fact 118.

26  [16] The Defendants' facts related to chords have been re-phrased from the Roman
numeral versions of the chords so as to compare them more easily to the Plaintiff's

27  facts concerning chords, which are transcribed in letters.  The Stewart rebuttal report
contains a key depicting the letter equivalents of the Roman numeral chords.  (*See*

28  Stewart Rebuttal Rep., Docket No. 108 at 6).

1          g.  Other Musical Elements

2          Finally, there are some similarities between other musical elements in JV and

3  SS.  In both SS and JV, the hook of the song appears in the chorus, and there are three

4  choruses in each song.  (*Id.*, Pl. Fact 59).  In both SS and JV, the Melodic Phrases

5  appear four times in each chorus, except the first chorus in SS where it appears three

6  times.  (*Id.*, Pl. Fact 60).  Both songs represent commercial pop music.  (*Id.*, Pl. Fact

7  61).  Both songs use a four-on-the-floor bass drum pattern with syncopated hi-hats.

8  (*Id.*, Pl. Fact 64).  Both songs have a degree of tonal ambiguity, although the tonal

9  ambiguity in SS is more pronounced than in JV.  (*Id.*, Pl. Fact 67).  The "feel and

10 groove" of the songs is similar.  (*Id.*, Pl. Fact 63).  "When JV's hook is tempo and

11 pitched matched, and played over SS's hook, the two compositions sound virtually

12 identical."  (*Id.*, Pl. Fact 71).

13 **II.   LEGAL STANDARD**

14     **A.   <u>Summary Judgment</u>**

15         A motion for summary judgment must be granted when the pleadings, the

16 discovery and disclosure materials on file, and any affidavits "show that there is no

17 genuine issue as to any material fact and that the movant is entitled to judgment as a

18 matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247−48 (1986)

19 (cleaned up).  The moving party bears the initial burden of identifying the elements of

20 the claim or defense and evidence that it believes demonstrates the absence of an issue

21 of material fact.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322−23 (1986).

22         Where the nonmoving party will have the burden of proof at trial, as here, the

23 movant can prevail merely by pointing out that there is an absence of evidence to

24 support the nonmoving party's case.  *Id.*  The nonmoving party then "must set forth

25 specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at

26 248.  Where the record "taken as a whole could not lead a rational trier of fact to find

27 for the nonmoving party, there is no genuine issue for trial."  *Matsushita Elec. Indus.*

28 *Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (cleaned up).  The Court

1    must draw all reasonable inferences in the nonmoving party's favor.  *In re Oracle*

2    *Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Anderson,* 477 U.S. at

3    252).  Nevertheless, it is the nonmoving party's obligation to produce factual

4    predicates from which an inference may be drawn.  *Richards v. Nielsen Freight Lines,*

5    602 F. Supp. 1224, 1244−45 (E.D. Cal. 1985), *aff'd,* 810 F.2d 898 (9th Cir. 1987).

6    "[M]ere disagreement or the bald assertion that a genuine issue of material fact exists"

7    does not preclude summary judgment.  *Harper v. Wallingford*, 877 F.2d 728, 731 (9th

8    Cir. 1989); *see also Frederick S. Wyle Prof. Corp. v. Texaco, Inc.*, 764 F.2d 604, 612

9    (9th Cir. 1985) (holding that "bald assertions, absent any evidentiary base, are

10    insufficient" to preclude summary judgment).

11         **B.    Unlawful Appropriation of Copyright**

12         To prove copyright infringement, a plaintiff must establish "(1) ownership of a

13    valid copyright, and (2) copying of constituent elements of the work that are original."

14    *Feist Pubs., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).  The second

15    element has two distinct components—copying and unlawful appropriation.

16    *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1117 (9th Cir. 2018), *overruled on other*

17    *grounds by Skidmore*, 952 F.3d 1051.  Only the latter component—whether

18    Defendants engaged in unlawful appropriation of the JV musical composition—is at

19    issue for purposes of this Motion.  (Mot., Docket No. 98-1 at 4) (Defendants

20    explaining that "pursuant to the Court's Bifurcation Order, this Motion addresses only

21    unlawful appropriation," not proof of actual copying).  As a result, the Court does not

22    analyze ownership of a valid copyright or whether copying occurred; where no

23    unlawful appropriation exists, as here, there can be no copyright infringement.

24         The "hallmark of 'unlawful appropriation' is that the works share *substantial*

25    similarities."  *Skidmore*, 952 F.3d at 1074 (citing *Newton v. Diamond*, 388 F.3d 1189,

26    1193 (9th Cir. 2004)) (emphasis in original).  The Ninth Circuit uses a two-part test to

27    determine whether the defendant's work is substantially similar to the plaintiff's

28    copyrighted work.  *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir.

1    2002).  First, under the extrinsic test, the trier of fact must use "analytic dissection,

2    and, if necessary, expert testimony … [to] determine whether any of the allegedly

3    similar features are protected by copyright." *Apple Comput., Inc. v. Microsoft Corp.*,

4    35 F.3d 1435, 1443 (9th Cir. 1994).  This is because "[a] finding of substantial

5    similarity between two works cannot be based on similarities in unprotectable

6    elements." *Mattel, Inc. v. MGA Entm't, Inc.,* 616 F.3d 904, 916 (9th Cir. 2010), *as*

7    *amended on denial of reh'g* (Oct. 21, 2010).  Second, under the intrinsic test, the trier

8    of fact examines the two works for "similarity of expression from the standpoint of the

9    ordinary reasonable observer with no expert assistance." *Skidmore*, 952 F.3d at 1064

10   (cleaned up).  "Both tests must be satisfied for works to be deemed substantially

11   similar." *Id.* (citing *Funky Films, Inc. v. Time Warner Entm't Co.*, 462 F.3d 1072,

12   1077 (9th Cir. 2006)).  At the summary judgment phase, however, a court may only

13   decide whether the extrinsic test is met; "whether works are intrinsically similar must

14   be left for the jury." *Swirksy v. Carey*, 376 F.3d 841, 845 (9th Cir. 2004).

15        Though substantial similarity cannot be found based on individual,

16   unprotectable elements under the extrinsic test, the Ninth Circuit has extended

17   copyright protection to an original selection and arrangement of unprotectable

18   elements.  A selection and arrangement copyright is only available, however, "'if

19   those [otherwise unprotectable] elements are numerous enough and their selection and

20   arrangement original enough that their combination constitutes an original work of

21   authorship.'" *Skidmore*, 952 F.3d at 1074 (quoting *Satava v. Lowry*, 323 F.3d 805,

22   811 (9th Cir. 2003)).  A selection and arrangement claim cannot be based on

23   unprotectable elements that constitute "random similarities scattered throughout [the

24   relevant portions of] the works." *Skidmore*, 952 F.3d at 1075 (internal quotations

25   omitted).  To support a selection and arrangement theory, there must be evidence that

26   the various features of the selection and arrangement "cohere to form a holistic

27   musical design." *Id.*

28

Even if the selection and arrangement of the allegedly infringed work is original and protectable, however, unlawful appropriation of that selection and arrangement copyright only occurs if "the works share, in substantial amounts, the 'particular,' *i.e.*, the 'same,' combination of unprotectable elements." *Skidmore*, 952 F.3d at 1075 (quoting *Feist*, 499 U.S. at 349).[17]   In other words, "what a selection and arrangement copyright protects is the particular way in which the artistic elements form a coherent pattern, synthesis, or design." *Weeknd*, 2020 WL 4932074, at *7 (quoting *Satava*, 323 F.3d at 811)).  A plaintiff thus "cannot establish substantial similarity by reconstituting the copyrighted work as a combination of unprotectable elements and then claiming that those same elements also appear in the defendant's work, in a different aesthetic context." *Skidmore*, 952 F.3d at 1075; *see also Johnson v. Gordon*, 409 F.3d 12, 21 (1st Cir. 2005) (explaining that, if it takes a "herculean effort to

---

[17] In *Skidmore*, the Ninth Circuit declined to hold that selection and arrangement claims *per se* require a heightened standard of substantial similarity. *Skidmore*, 952 F.3d at 1076 n.13 ("[T]o be clear, we do not recognize a separate, heightened standard to prove actionable copying [under a selection and arrangement theory].  The standard is always substantial similarity.").  To determine what degree of similarity is required to find infringement under a selection and arrangement theory, the court must decide whether the range of protectable expression in the medium at issue is narrow or broad. *Id.*; *see also Weeknd*, 2020 WL 4932074, at *4 ("If there's a wide range of expression (for example, there are gazillions of ways to make an aliens-attack movie), then copyright protection is 'broad' and a work will infringe if it's 'substantially similar' to the copyrighted work.  If there's only a narrow range of expression (for example, there are only so many ways to paint a red bouncy ball on blank canvas), then copyright protection is 'thin' and a work must be 'virtually identical' to infringe.") (quoting *Mattel*, 616 F.3d at 913–14).  "More similarities are required to infringe if the range of protectable expression is narrow, because the similarities between the two works are likely to cover public domain or otherwise unprotectable elements." *Skidmore*, 952 F.3d at 1076 n.13 (quoting *Mattel*, 616 F.3d at 913–14).  The Ninth Circuit has left open the possibility that a selection and arrangement of even a brief musical phrase can have broad protection, however.  *Id.*  ("A selection and arrangement copyright is not always thin.").  The Court here need not decide whether the JV Melodic Phrase is subject only to thin copyright.  *C.f. Gray v. Hudson*, 28 F.4th 87, 95 (9th Cir. 2022) (noting that the district court concluded that an eight-note ostinato "merited no more than a 'thin' copyright").  Even if the JV Melodic Phrase were entitled to a broad copyright, there still is not substantial similarity for the reasons articulated *infra*, Section III.B.

assimilate the two melodies" then there is an "absence of any meaningful degree of similarity"); *Morrill v. Stefani*, 338 F. Supp. 3d 1051, 1061 (C.D. Cal. 2018) (rejecting a selection and arrangement theory where the constituent elements of a song were used "in a different manner" in the allegedly infringing work; although the words "light-ah" and "fi-ah" overlapped on beats 3 and 4 in one song, those words appeared only on beat 4 in the other); *Lane v. Knowles-Carter*, No. 14 Civ. 6798(PAE), 2015 WL 6395940, at *7 (S.D.N.Y. Oct. 21, 2015) (holding that there was no substantial similarity in two songs that used lyrics involving the term "XO" where "the two songs deploy[ed] the letters 'X' and 'O' differently").

## III.   DISCUSSION

In this case, Plaintiff does not claim that any of the individual musical elements of the JV Melodic Phrase are protected by copyright. (Pl. Opp'n at 2 ("Plaintiff … is not claiming that each individual, discrete musical element in its song is protectable.")). Instead, Plaintiff claims that the selection and arrangement of the lyrics, pitch sequence, melodic contour, metric placement of syllables, rhythm, feel and structure in the JV Melodic Phrase are sufficiently original to be protectable, and that the SS Melodic Phrase's combination of musical elements is substantially similar to the JV Melodic Phrase. (*Id.*).

The Court need not decide whether the selection and arrangement of the musical elements in the JV Melodic Phrase is sufficiently original to be protectable.[18] Even assuming that it is, the selection and arrangement of the SS Melodic Phrase does not share "in substantial amounts, the 'particular,' *i.e.*, the 'same,' combination of unprotectable elements" as the JV Melodic Phrase. *Skidmore*, 952 F.3d at 1075 (quoting *Feist*, 499 U.S. at 349). Because the SS Melodic Phrase and the JV Melodic

---

[18] The record demonstrates that "[n]o song in the prior art contains a hook with the same lyrics 'dancing with a stranger,' pitch sequence, metric placement of the syllables, melodic contour from seven to three, melody, chord progression, rhythm, genre, drums/percussion, and structural placement as in JV." (SUF, Pl. Fact 72).

1   Phrase are not substantially similar, Defendants cannot be said to have engaged in

2   unlawful appropriation of Plaintiff's copyright, an essential element of Plaintiff's

3   causes of action for infringement and vicarious infringement.  Accordingly,

4   Defendants' Motion for Summary Judgment is **GRANTED**.

5           **A.    Individual Musical Elements**

6           As a preliminary matter, the Court agrees that the individual elements of the JV

7   Melodic Phrase are not protectable individually by copyright.  Plaintiff argues that the

8   "lyrics, pitch sequence, melodic contour, metric placement of the syllables, rhythm,

9   feel, and structure" represent the musical elements that Defendants appropriated.  (Pl.

10  Opp'n at 2).  None of these elements are protectable individually, nor does Plaintiff

11  claim they are.  (*Id.*  ("Plaintiff … is not claiming that each individual, discrete

12  musical element in its song is protectable.")).  A finding of substantial similarity

13  cannot be based upon similarities between unprotectable musical "building blocks

14  [that] belong in the public domain and cannot be exclusively appropriated by any

15  particular author."  *Skidmore*, 952 F.3d at 1069.

16          Here, the four-word phrase "dancing with a stranger" is unprotectable.  Prior art

17  contains nearly twenty references to the term "dancing with a stranger," including in

18  the chorus in some instances, as here.  (SUF, Facts 19–33, 37–40).  "[C]opyright [does

19  not] extend to 'common or trite' musical elements, or 'commonplace elements that are

20  firmly rooted in the genre's tradition.'"  *Skidmore*, 952 F.3d at 1069 (citations

21  omitted); *Johnson*, 409 F.3d at  24 (holding that the lyric "You're the One for Me"

22  was unprotectable expression); *see also Jean v. Bug Music, Inc.*, No. 00 CIV

23  4022(DC), 2002 WL 287786, at *6 (S.D.N.Y. Feb. 27, 2002) ("[A] reasonable jury

24  could only conclude that the lyrical excerpt 'clap your hands' is not afforded

25  copyright protection because the excerpt is a common phrase.  The lyrics appear often

26  in church anthems and secular music …"); *Cortes v. Universal Music Latino*, 477 F.

27  Supp. 3d 1290, 1299−1300, 1300 n.12 (S.D. Fl. 2020) (reasoning that because

28

23

1  "[s]imilar lines have appeared in the lyrics of other popular songs" those lyrics

2  evidence a "lack of requisite originality to qualify for copyright protection").

3         A pitch sequence is also not protectable.  *See, e.g.*, *Gray*, 28 F.4th at 100.

4  "While an eight-note *melody* may be copyrightable, the abstract eight-note *pitch*

5  *sequence* that is a component of a melody is not."  *Id.* (emphasis in original) (citing

6  U.S. Copyright Office, *Compendium of U.S. Copyright Office Practices* § 313.4(C)

7  (3d ed. 2021) (advising that "short musical phrases consisting of only a few musical

8  notes standing alone are not copyrightable," and giving an eight-note pitch sequence

9  as an example)); *see also Skidmore*, 952 F.3d at 1069 ("These building blocks belong

10  in the public domain and cannot be exclusively appropriated by any particular

11  author.").

12        The Ninth Circuit has also suggested in dicta that the "shape" of a melody, or

13  the melodic contour, is "nothing more than an abstraction outside the protection of

14  copyright law."  *Gray*, 28 F.4th at 100; *but see Swirsky*, 376 F.3d at 849 (citing *Ellis v.*

15  *Diffie*, 177 F.3d 503, 506 (6th Cir. 1999) for the proposition that musical contour

16  could potentially be a protectable musical element).  Because Plaintiff here does not

17  argue that the melodic contour of JV is individually protectable, (Pl. Opp'n at 2), the

18  Court declines to decide here whether melodic contour is protectable under copyright

19  law.  The Court similarly declines to decide whether elements like groove, feel, and

20  structure are protectable.

21        Rhythm, another one of Plaintiff's claimed areas of similarities, is not

22  protectable.  *See Morrill*, 338 F. Supp. 3d at 1060 ("[T]he use of a long-short-long

23  rhythm is too general to be protectable.") (citing *Smith v. Jackson*, 84 F.3d 1213, 1216

24  n.3 (9th Cir. 1996)).  Nor are chord progressions protectable.  *Gray*, 28 F.4th 87 at

25  100 ("'[C]hord progressions may not be individually protected' because they are basic

26  musical building blocks.") (quoting *Swirsky*, 376 F.3d at 848).

27        Because of the apparent lack of protectability for most if not all of the

28  Plaintiff's claimed similarities, Plaintiff relies on a selection and arrangement theory

24

1  alone.  (Pl. Opp'n at 2).  For the following reasons, Plaintiff's selection and

2  arrangement theory fails because there is no substantial similarity between the JV and

3  SS Melodic Phrases as a matter of law.

4    **B.    Selection and Arrangement Theory**

5    The SS Melodic Phrase's selection and arrangement is not the 'particular,' *i.e.*,

6  the 'same,' combination of unprotectable elements" as in the JV Melodic Phrase.

7  *Skidmore*, 952 F.3d at 1075.  The Court considers the combination of the Melodic

8  Phrases' music and lyrics together when assessing substantial similarity.  *See Swirsky*,

9  376 F.3d at 848 (explaining that courts must look at musical elements "in

10  combination"). Starting with the lyrics, it is true that both Melodic Phrases contain the

11  identical phrase "dancing with a stranger." (SUF, Facts 15−17).  Plaintiff admits,

12  though, that the narrative context of those terms is distinct.  The phrase "dancing with

13  a stranger" arises in the context of heartbreak in the SS Melodic Phrase; the JV

14  Melodic Phrase contains no such themes.  (*Id.*, Fact 18).  Thus, though the four-word-

15  phrase "dancing with a stranger" appears in both Melodic Phrases, those words appear

16  in a "different aesthetic context" in JV.  *See Skidmore*, 952 F.3d at 1075; *Cortes*, 477

17  F. Supp. 3d at 1299 (holding that there is no substantial similarity where, "[p]utting

18  aside the fact that these common words are featured in both songs, there is no

19  similarity in how the lyrics are used in the works"); *Knowles-Carter*, 2015 WL

20  6395940, at *7 ("[T]he two song deploy the letters 'X' and 'O' differently ….").

21    With respect to the song's key, assuming as the Court does here that SS is in the

22  key of F minor, both songs are in a minor key.  (SUF, Fact 4 (providing that JV is in

23  the key of G minor); *id.*, Pl. Fact 24 (providing that SS is in the key of F minor)).  The

24  key is not "the 'same'" in both songs, though.  (SUF, Fact 193); *see Skidmore*, 952

25  F.3d at 1075 (explaining that unlawful appropriation only occurs if "the works share,

26  in substantial amounts, the 'particular,' *i.e.*, the 'same,' combination of unprotectable

27  elements")).  JV is in the key of G minor, and for purposes of this summary judgment

28  motion, SS is in the key of F minor.  "A plaintiff … cannot establish substantial

similarity by … claiming that" an element of a copyrighted work appears in the defendant's work but in a "different aesthetic context"—or here, in a different key. *Skidmore*, 952 F.3d at 1075.

The pitch sequences in each Melodic Phrase share similarities; Plaintiff's expert Dr. Stewart concludes that the pitch sequences are "very close to being the same," in each Melodic Phrase (Stewart Dep. Tr., Docket No 110-1,Exh. 7 at 98:23−99:8).  The SS pitch sequence is 75554433 and the JV pitch sequence is 7665443 (SUF, Pl. Facts 34−35).  Both pitch sequences start with 7, end with 3, and also contain the pitch sequence 5443.  (Pl. Opp'n at 15).  Even if the Court assumes that SS "very quickly passes through 6," the pitch sequence in SS still does not represent the "'particular,' *i.e.*, the 'same,' combination of unprotectable" pitches.  *See Skidmore*, 952 F.3d at 1075.  The SS Melodic Phrase has just one passing note through 6; the JV Melodic Phrase has two passing notes through 6.  (SUF, Pl. Facts 39−42); *see Schultz v. Homes*, 264 F.2d 942, 944 n.2 (9th Cir. 1959) (affirming a district court's finding that two songs were not similar in part because they used "a different passing tone …").  Furthermore, it is undisputed that JV contains 7 pitches to SS's 8, (SUF, Facts 68, 69), and that the Melodic Phrases repeat the pitches a different number of times, *e.g.*, the SS pitch sequence contains 3 consecutive pitches of 5 in the sequence, to JV's single pitch of 5.  (*Id.*).  As a result, despite Dr. Stewart's bald assertion that the pitch sequences in the Melodic Phrases are "very close to being the same," the Court finds that the pitch sequences "are not identical twins or even sisters under the skin" but rather "something more akin to that of second cousins, twice removed."  *Johnson*, 409 F.3d at 22 (finding that the pitch sequences 5, 5, 4, 3, 7, 1 and 5, 5, 4, 3, 2, 1 and their accompanying notes contained "differences" including that some notes in the sequences "do not coincide").  Professor Bricklin's conclusion that the pitch sequences are similar in part because it is "difficult for the average, non-expert listener to discern" the two passing 6 notes in the JV phrase does not alter that conclusion.  (SUF, Pl. Fact 37 (citing  Bricklin Decl., Docket No. 109 ¶ 21)).  Just because a

26

1    reasonable juror might not be able to hear the passing 6 notes in the JV Melodic

2    Phrase does not mean they are not present.  The purpose of the extrinsic test is to

3    examine the objective similarities and differences between the two songs *before*

4    assessing the subjective similarities as heard by the non-expert ear.  *Skidmore*, 952

5    F.3d at 1064 (explaining that the extrinsic test "compares the objective similarities of

6    specific expressive elements in two works"); Professor Bricklin cannot erase the

7    objective fact that the JV Melodic Phrase has two passing 6 notes while the SS

8    Melodic Phrase, at most, contains one passing 6 note by simply noting that a jury

9    performing the intrinsic test might not notice the 6s in JV.  *Skidmore*, 952 F.3d at

10   1075.

11           In regard to the melodic contour, despite Dr. Stewart's conclusion that the JV

12   and SS Melodic Phrases are "nearly identical in melodic contour," (Stewart Decl.,

13   Docket No. 110-1 at Exh. 1 at 32), there are objective differences in the shape of the

14   melody in each song.  The two Melodic Phrases do share a "downward contour."  (*Id.*

15   at Exh. 2 ¶ 67).  The JV Melodic Phrase "descends stepwise," however, from scale

16   degree 7 down to 6 down to 5 down to 4 down to 3.  (SUF, Fact 74).  By contrast, the

17   SS Melodic Phrase descends by leaping from scale degree 7 to scale degree 5, a leap

18   not present in the JV Melodic Phrase.  (*Id.*, Facts 76–79).  Dr. Stewart's unsupported

19   assertion that the melodic contour of the two Melodic Phrases are "nearly identical" is

20   insufficient to preclude summary judgment.  *See Frederick S. Wyle Prof. Corp. v.*

21   *Texaco, Inc.*, 764 F.2d 604, 612 (9th Cir. 1985) (holding that "bald assertions, absent

22   any evidentiary base, are insufficient" to preclude summary judgment).

23           With respect to metric placement of the syllables in each Melodic Phrase, there

24   are a good deal of similarities, as can be seen in Figure 1.  The metric placement of the

25   beginning of the syllable "danc-" in both Melodic Phrases is the same—on the second

26   half of beat four (and on scale degree 7).  (SUF, Pl. Fact 50).  The first syllable—

27   "danc"—is held for the same duration in both Melodic Phrases.  (*Id.*, Pl. Fact 51).

28   The syllable "stran-" lasts a full beat in each Melodic Phrase.  (*Id.*, Pl. Fact 52).  The

27

1    lyric "a" in both Melodic Phrases occurs on the second half of beat two. (*Id.*, Pl. Fact

2    54). The JV and SS Melodic Phrases each begin with an anticipation of beat one with

3    the syllable "dan-" and end on a chord tone while singing the final syllable "-ger."

4    (*Id.*, Pl. Fact 55). The syllables "-ing," "with," and "a" are each set to eighth notes.

5    (*Id.*, Pl. Fact 53).

6         Still, though, the SS Melodic Phrase does not appropriate the "'particular,' *i.e.*,

7    the 'same,'" metric placement of syllables in the phrase dancing with a stranger. *See*

8    *Skidmore*, 952 F.3d at 1075 (quoting *Feist*, 499 U.S. at 349). Plaintiff concedes that

9    there are a number of differences in metric placement in the SS Melodic Phrase as

10   compared to the JV Melodic Phrase. The "stran-" is set to one full-beat note in JV,

11   (SUF, Fact 48), while the "stran-" is set to two half-beat notes in SS. (*Id.*, Facts 55,

12   57). The syllable "danc-" in JV is sung to the first note in the JV Melodic Phrase, but

13   the syllable "danc-" in SS is sung to the first *and second* notes in the SS Melodic

14   Phrase. (*Id.*, Pl. Fact 52). Also, the final pitch in the JV Melodic Phrase occurs half a

15   beat later than the final pitch in the SS melodic phrase, as can be seen in Figure 1.

16   (*Id.*, Pl. Fact 56). Other courts in this district have rejected selection and arrangement

17   claims where metric placement differed in the two songs, as here. *See, e.g.*, *Morrill*,

18   338 F. Supp. 3d at 1059 (rejecting a selection and arrangement theory where the

19   metric placement of the words "light-ah" and "fi-ah" differed in two songs, appearing

20   on beats 3 and 4 in one song, but appearing only on beat 4 in the other).

21        Regarding the chord progressions in the JV and SS Melodic Phrases, the

22   "herculean effort [that Dr. Stewart makes] to assimilate the two [chord progressions]

23   makes manifest the absence of any meaningful degree of similarity." *Johnson*, 409

24   F.3d at 21. Dr. Stewart opines that "a simple rotation of the chords" reveals that the

25   chord progressions in the JV and SS Melodic Phrases are substantially similar.

26   (Stewart Decl., Docket No. 108 ¶ 11). The rotated version of the JV chord

27   progression, however, which Dr. Stewart says is similar to the SS Melodic Phrase,

28   never actually appears in the JV composition in rotated order. (SUF, Fact 118 ("The

1    chord progression in JV never rotates such that it begins on an Eb major or VI

2    chord…); Stewart Dep. Tr., Fluehr Decl. at Exh. 7, 64:6−66:1 (Q: At any point in the

3    J.V. musical composition, does the sequence of chords actually rotate so that it begins

4    on E flat instead of G minor?  A: Of course not.  As I state here, this is an operation

5    that I performed on the harmonies in order to show the similarities.")).  The Ninth

6    Circuit made clear in *Skidmore* that a party cannot "establish substantial similarity by

7    reconstituting the copyrighted work" to make it appear more similar to the allegedly

8    infringing work.  *Skidmore*, 952 F.3d at 1075.

9         Taking the chord progressions *as they actually appear* in each Melodic Phrase,

10   they are not substantially similar.  Yes, the chord progression for JV and SS both

11   include the chords Eb, F, and G-.  (SUF, Pl. Fact 66).  However, SS does not contain

12   the G- D- Eb F chord progression that JV has.  (*Id.*, Facts 107, 108).  The harmonic

13   rhythm of the JV chord progression is one chord per bar, played on the first beat of

14   each bar.  (*Id.*, Fact 115).  In the SS chord progression by contrast, the general

15   harmonic rhythm is as follows: the first chord is six beats, the second chord is two

16   beats, the third chord is four beats or three- and one-half beats, and the fourth chord is

17   four beat or four- and one-half beats, which repeats for the fifth through eighth chords.

18   (*Id.*, Fact 116).  Only one chord in the chord progressions depicted in Figure 2 occur

19   in the same sequence: the sixth chord in SS, D-, occurs in the same position as the

20   second chord in the JV progression, D-, but the harmonic rhythm of that chord is

21   different.  (*Id.*, Fact 117).  Finally, SS uses a "hopscotch schema" chord progression

22   while JV does not.  (*Id.*, Facts 109, 110).  Against the weight of this undisputed record

23   of differences in the chords, Plaintiff cannot claim that the chord progressions are

24   substantially similar by reordering the JV Melodic Phrase to make it match the SS

25   Melodic Phrase more closely.  *See Johnson*, 409 F.3d at 21 (finding that two songs

26   were not substantially similar, even "after undergoing … manipulations" by the

27   plaintiff's experts to make them appear more similar, because the two songs still

28   contained variations).

1    The alleged similarities in the "feel and groove" of the two Melodic Phrases are
2  not persuasive for similar reasons.  Professor Bricklin asserts that the "feel and
3  groove" are the same in the two Melodic Phrases, a conclusion he reaches by
4  comparing the two songs wherein the tempo, pitch, vocals, and drums of the JV
5  Melodic Phrase were altered to match the SS Melodic Phrase more closely.  (Bricklin
6  Decl., Docket No. 109 ¶¶ 20−24 (explaining that, when the tempo and pitch of JV is
7  matched to that of the SS Melodic Phrase, and the "SS Drums are panned Left" and
8  the "JV Drums are panned Right," "[y]ou can clearly hear the lyric and melody of the
9  'hook' are nearly identical, and the feel of the groove is the same")).  This type of
10  analysis does exactly what *Skidmore* held was not permitted—recasting the
11  copyrighted work as containing a different combination of unprotectable elements
12  than it actually contains.  *Skidmore*, 952 F.3d at 1075.  Whether an altered version of
13  the JV Melodic Phrase is similar to the SS Melodic Phrase is irrelevant to the question
14  of whether the *unaltered* JV Melodic Phrase is similar to the SS Melodic Phrase.

15    In sum, the SS Melodic Phrase is not substantially similar to the JV Melodic
16  Phrase as a matter of law, despite Plaintiff's experts' conclusory statements to the
17  contrary.  A selection and arrangement copyright is only available if the otherwise
18  unprotectable elements are "numerous enough and their selection and arrangement
19  original enough that their combination constitutes an original work of authorship,"
20  *Skidmore*, 952 F.3d at 1074 (quoting *Satava*, 323 F.3d at 811); *see also Johnson*, 409
21  F.3d at 25 (finding that the "components themselves are so dissimilar that they cannot
22  sensibly be agglomerated in such a way as to conjure up on overall (legally
23  significant) resemblance ….).

24    **C.    No Vicarious Infringement**

25    "It is well-established that secondary liability for copyright infringement does
26  not exist in the absence of direct infringement." *UMG Recordings, Inc. v. Shelter*
27  *Cap. Partners, LLC*, 718 F.3d 1006, 1031 (9th Cir. 2013) (internal quotations and
28  modification omitted).  Here, the Court has concluded that Defendants are entitled to

30

1  summary judgment on Plaintiff's claim for direct infringement of Plaintiff's musical

2  composition copyright.  Therefore, Defendants are also entitled to summary judgment

3  on Plaintiffs' claims for secondary infringement.  *See, e.g.*, *Lawrence v. Sony Pictures*

4  *Entm't, Inc.*, 534 F. App'x 651, 654 n.2 (9th Cir. 2013) (explaining that a vicarious

5  infringement argument "necessarily" fails in the absence of direct infringement).

6  **IV.    CONCLUSION**

7          The Court reiterates that it does not comment on the originality of the JV

8  Melodic Phrase in this order.  The Plaintiff in this case has argued persuasively that

9  the hook in a song, like the JV Melodic Phrase, may be protectable under copyright

10 law, even if it is comprised of less than ten notes and only four words.  (*See, e.g.*, Pl.

11 Opp'n at 12 ("[C]ommercially appealing hooks, like Plaintiff's, are valuable,

12 protectable intellectual property in the music landscape …. ") (citing SUF, Pl. Fact

13 13)).  Regardless of whether the JV Melodic Phrase is original and protectable,

14 however, the SS Melodic Phrase does not unlawfully appropriate it.  Permitting

15 copyright plaintiffs to prevail on musical selection and arrangement claims by rotating

16 chords, recalibrating the tempo, and altering the pitch of a defendant's song so that it

17 sounds more similar to the plaintiffs' would lead courts to "deem substantially similar

18 two vastly dissimilar musical compositions … for sharing some of the same notes [or]

19 words," a test the *en banc* Ninth Circuit rejected as being "at variance with

20 maintaining a vigorous public domain." *Skidmore*, 952 F.3d at 1075−76.  For the

21 foregoing reasons, Plaintiff has failed to establish that there is a genuine issue of

22 material fact with respect to whether SS is substantially similar to JV under the

23 ///

24 ///

25 ///

26 ///

27 ///

28 ///

31

1   extrinsic test.  The Court therefore **GRANTS** Defendants' Motion for Summary

2   Judgment.  A judgment consistent with this order will be entered contemporaneously.

3

4       **IT IS SO ORDERED.**

5

6   Dated:  September 6, 2023        _____

7                                   HON. WESLEY L. HSU
                                    UNITED STATES DISTRICT JUDGE
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28