Peter Anderson, Esq., Cal. Bar No. 88891
    peteranderson@dwt.com
Cydney Swofford Freeman, Esq., Cal. Bar No. 315766
    cydneyfreeman@dwt.com
Eric H. Lamm, Esq., Cal. Bar No. 324153
    ericlamm@dwt.com
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, CA 90071
Tel: (213) 633-6800
Fax: (213) 633-6899

Attorneys for Defendants
SAMUEL SMITH, NORMANI KORDEI HAMILTON, also sued as SONGS OF NKH, JAMES NAPIER, TOR HERMANSEN and MIKKEL ERIKSEN, also sued as STARGATE, UMG RECORDINGS, INC., UNIVERSAL MUSIC GROUP, INC., SONY MUSIC PUBLISHING (US) LLC, EMI BLACKWOOD MUSIC INC., EMI APRIL MUSIC INC., SONY CORPORATION OF AMERICA, 45TH AND 3RD MUSIC LLC, TIM & DANNY MUSIC LLC, DOWNTOWN MUSIC PUBLISHING LLC, NAUGHTY WORDS LIMITED, SONY/ATV MUSIC PUBLISHING (UK) LTD., sued as "Sony/ATV Music Publishing Ltd.," and EMI MUSIC PUBLISHING LTD

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| Sound and Color, LLC,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>Samuel Smith, *et al.*,<br><br>　　　　Defendants. | Case No. 2:22-cv-01508-WLH-AS<br><br>DEFENDANTS NAUGHTY WORDS LIMITED, SONY MUSIC PUBLISHING (UK) LTD., AND EMI MUSIC PUBLISHING LTD.'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE |

# TABLE OF CONTENTS

Page

1. SUMMARY OF REPLY ..................................................................................1

2. THE COURT STILL LACKS PERSONAL JURISDICTION AFTER *BRISKIN* ..........................................................................................................2

    (a) *Briskin* Reaffirms That Purposeful Direction Must Be Based on Defendants' Own Intentional, Forum-Directed Conduct ........................2

    (b) Naughty Words Did Not Engage in Any Intentional Forum-Directed Conduct That Relates to or Forms the Basis of Plaintiff's Claims ..........3

        (1) Naughty Words' Agreement With Sam Smith Does Not Establish Jurisdiction Regardless of *Briskin* .................................3

        (2) Naughty Words' Agreement With SMP UK and Passive Receipt of Royalties Also Do Not Support Jurisdiction Even After *Briskin* ........................................................................................4

        (3) *Briskin* Does Not Change That the U.S.-Based Sony Publishers Are Not Naughty Word's Agents ...............................6

    (c) *Briskin* Also Does Not Support Jurisdiction Over the UK Publishers ....6

        (1) The UK Publishers' Administrative and Publishing Agreements Do Not Establish Express Aiming Under *Briskin* .....6

        (2) The Intercompany Agreement Does Not Establish Express Aiming Under *Briskin* ................................................................7

        (3) *Briskin* Does Not Affect the UK Publishers' Lack of Agency Relationship with U.S. Based Sony Affiliates ..............................9

        (4) *Briskin* Does Not Cure Plaintiff's Defective Alter Ego Theory ....9

    (d) Asserting Jurisdiction Over the UK Defendants Would Be Unreasonable ...........................................................................................9

3. CONCLUSION ................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*AMA Multimedia, LLC v. Wanat*,
   970 F.3d 1201 (9th Cir. 2020) .................................................................... 1, 2

*Axiom Foods, Inc. v. Acerchem Intl., Inc*,
   874 F.3d 1064 (9th Cir. 2017) ............................................................ 2, 4, 7, 8

*Born v. Celtic Marketing LLC*,
   No. 8:19-cv-01950-JLS-ADS,
   2020 WL 3883273 (C.D. Cal. May 20, 2020) ................................................ 8

*Briskin v. Shopify, Inc.*,
   135 F.4th 739 (9th Cir. 2025) .............................................. 1, 2, 3, 4, 5, 6, 7, 8, 9

*Hit Bound Music, Ltd. v. BBC Films*,
   No. 2:16-cv-7125 CBM (KSx),
   2017 WL 5640543 (C.D. Cal. June 28, 2017) ................................................ 8

*Picot v. Weston*,
   780 F.3d 1206 (9th Cir. 2015) .................................................................... 3, 8

*Rosen v. Terapeak, Inc.*,
   No. CV-15-00112-MWF(Ex),
   2015 WL 12724071 (C.D. Cal. Apr. 28, 2015) ................................................ 8

*Rounds v. Case-Mate Inc.*,
   No. 2:24-cv-08531-WLH-RAO,
   2025 WL 1873999 (C.D. Cal. July 2, 2025) ................................................ 5, 7

*Schwarzenegger v. Fred Martin Motor Co.*,
   374 F.3d 797 (9th Cir. 2004) ................................................................. 2, 4, 9

*Walden v. Fiore*,
   571 U.S. 277 (2014) ................................................................... 3, 4, 5, 6, 8

*Williams v. Yamaha Motor Co. Ltd.*,
   851 F.3d 1015 (9th Cir. 2017) ........................................................................ 8

*World-Wide Volkswagen Corp. v. Woodson*,
   444 U.S. 286 (1980) ..................................................................................... 4

**SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES**

Pursuant to the Court's July 29, 2025 Order (Doc. 175), defendants Naughty Words Limited ("Naughty Words"), Sony Music Publishing (UK) Ltd. ("SMP UK"), and EMI Music Publishing Ltd. ("EMI UK," and together with SMP UK, "UK Publishers") (collectively, "UK Defendants") submit this supplemental brief in support of their pending Federal Rule of Civil Procedure 12(b)(6) Motion to Dismiss (Docs. 120, 121, 133).

**1.    SUMMARY OF REPLY**

*Briskin v. Shopify, Inc.*, 135 F.4th 739 (9th Cir. 2025) overrules *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201 (9th Cir. 2020) only to the extent that *AMA* required "differential targeting" of the forum at issue in order to establish the express aiming element of the purposeful direction test. But *Briskin* does not alter, and in fact reaffirms, the core requirement that purposeful direction must be based on the defendant's *own* intentional, forum-directed conduct. That standard is not met here because the UK Defendants do not license or exploit *Dancing with a Stranger* in the United States, they do not engage in other relevant conduct expressly aimed at the United States, and the activities of the publishing entities who do exploit *Dancing with a Stranger* in this country cannot be imputed to the UK Defendants. Put differently, the now-abrogated "differential targeting" rule is irrelevant because the UK Defendants did not engage in *any* intentional, purposefully directed conduct that creates a substantial connection to the United States and that relates to or forms the basis of Plaintiff's claims. Additionally and separately, the exercise of jurisdiction would not be fair or reasonable under the circumstances and nothing in *Briskin* affects that analysis.

The UK Defendants' Motion should accordingly be granted and the Second Amended Complaint dismissed as to the UK Defendants for lack of personal jurisdiction.

///

1

## 2. THE COURT STILL LACKS PERSONAL JURISDICTION AFTER *BRISKIN*

### (a) *Briskin* Reaffirms That Purposeful Direction Must Be Based on Defendants' Own Intentional, Forum-Directed Conduct

As stated in the Motion, personal jurisdiction in this case involves a three-prong analysis: (1) purposeful direction; (2) the claim must "arise[] out of or relate[] to the defendant's forum-related activities"; and (3) the exercise of jurisdiction must comport with fair play and substantial justice. *See* Mot. (Doc. 120-1) at 4-5; *e.g.*, Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004). Plaintiff bears the burden of establishing the first two prongs, the first of which consists of three elements: "(1) [defendant] committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." Axiom Foods, Inc. v. Acerchem Intl., Inc, 874 F.3d 1064, 1069 (9th Cir. 2017) (citation omitted); *accord* Briskin, 135 F.4th at 750-51.

To the extent that *Briskin* affects existing case law, it does so only as to the express aiming element. Specifically, it overrules *AMA* in holding, in the context of nationally or globally accessible websites, that express aiming does not require "differential targeting" of a particular forum; in other words, the defendant need not engage in some particular conduct directed to the forum state that it does not direct to other forums. Briskin, 135 F.4th at 757-58. However, *Briskin* reaffirms that express aiming requires proof that the defendant's *own* conduct be purposefully directed to the forum state and that the conduct "connect[] [defendant] to [the forum] in a meaningful way." *Id.* at 759 (quoting Walden v. Fiore, 571 U.S. 277, 290 (2014)). In the context of interactive online platforms, a platform "'expressly aims' its wrongful conduct toward a forum state when its contacts are its 'own choice and not 'random, isolated, or fortuitous." *Id.* at 758 (internal quotation marks omitted).

As shown below, the change in law occasioned by *Briskin* in no way establishes jurisdiction over the UK Defendants.

      **(b)    Naughty Words Did Not Engage in Any Intentional Forum-Directed Conduct That Relates to or Forms the Basis of Plaintiff's Claims**

Naughty Words is a foreign entity domiciled and operating in the United Kingdom. Mot. at 2-3. It has no U.S. operations, does not target or interact with U.S. consumers, does not license *Dancing with a Stranger* in the United States, and does not control the entities that do. Id. Personal jurisdiction cannot be established on these facts and *Briskin* does not change that result.

      **(1)    Naughty Words' Agreement With Sam Smith Does Not Establish Jurisdiction Regardless of *Briskin***

As explained in the Motion, Naughty Words' agreement to serve as the publisher for Sam Smith, one of the authors of *Dancing with a Stranger*, does not establish that Naughty Words expressly aimed any conduct at the United States. See Mot. at 5-7; Khan Decl. (Doc. 121) at 1 ¶ 7. Indeed, Naughty Words' publishing agreement—pursuant to which Sam Smith granted a portion of his worldwide copyright interests to Naughty Words—was executed in London. Khan Decl. at 1 ¶ 7. And because the express aiming test, even after *Briskin*, requires that the defendant's own conduct form the necessary connection with the forum state, it is irrelevant that Sam Smith lives part time in Los Angeles. See above at 2; Walden, 571 U.S. at 285 ("If the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot."); *Briskin*, 135 F.4th at 759; *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015).

*Briskin* also does not change the result because the publishing agreement does not provide grounds for finding that the other elements of the personal jurisdiction test have been met. Because the agreement was executed in 2013 (five years before *Dancing with a Stranger* was released), the agreement is not specific to *Dancing with a Stranger*, and Naughty Words does not distribute *Dancing with a Stranger* under it, Naughty Words' execution of that agreement does not form the basis of or "relate[]

3

to" the allegedly wrongful conduct in this action. <u>Schwarzenegger</u>, 374 F.3d at 802. It also was not foreseeable upon executing the agreement that Sam Smith would create *Dancing with a Stranger* five years later or that that work would allegedly cause "harm … likely to be suffered in the forum state." <u>Axiom Foods</u>, 874 F.3d at 1069.

        **(2)    Naughty Words' Agreement With SMP UK and Passive Receipt of Royalties Also Do Not Support Jurisdiction Even After *Briskin***

*Briskin* also does not support establishing jurisdiction over Naughty Words based on the mere fact that Naughty Words granted worldwide administration rights in many musical compositions (including *Dancing with a Stranger*) to SMP UK. SMP UK is, like Naughty Words, a U.K.-based entity, and SMP UK licenses *Dancing with a Stranger* only in the United Kingdom. Accordingly, the grant in no way constitutes U.S.-directed conduct, nor conduct on which Plaintiff's claim is based. *See* <u>Mot. at 3-4</u>.

Plaintiff attempts to establish U.S.-directed conduct by alleging that Naughty Words gets paid from the U.S. exploitation of *Dancing with a Stranger* through SMP UK's affiliates in the United States (the "US Publishers") who exploit *Dancing with a Stranger* in this country under the Sony Intercompany Agreement.[1] But even after *Briskin*, the mere passive receipt of money from a third party's exploitation in the forum cannot establish purposeful direction in the absence of the defendant's *own conduct* directly targeting the forum state. *See, e.g.*, <u>Walden, 571 U.S. at 284, 285</u> ("the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State" and "it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him"); <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 299 (1980) ("[F]inancial benefits

---

[1] As discussed below, the Intercompany Agreement does not establish jurisdiction over the UK Publishers, and accordingly does not establish jurisdiction over Naughty Words, who is not a party to it, *a fortiori*. *See* below at 7-8.

4

accruing to the defendant from a collateral relation to the forum State will not support jurisdiction if they do not stem from a constitutionally cognizable contact with that State"); *Rounds v. Case-Mate Inc.*, No. 2:24-cv-08531-WLH-RAO, 2025 WL 1873999 at *7 (C.D. Cal. July 2, 2025) (distinguishing *Briskin* and explaining that "jurisdiction must arise out of the contacts that 'defendant himself creates with the forum state,' and not defendant's contacts with entities that do business or reside there") (quoting *Kellytoy Worldwide, Inc. v. Jay at Play Intl. Hong Kong Ltd.*, No. 19-cv-078310-AB, 2019 WL 8064196 at *5 (C.D. Cal. Dec. 5, 2019)).

*Briskin* itself is instructive. In that case, the defendant operated a nationwide e-commerce platform, Shopify. The Court found that purposeful direction was established not because Shopify received money from the forum State (California), but because the defendant, among other things, "permanently install[ed]" tracking software on California consumers' devices and "extract[ed], collect[ed], maintain[ed], distribut[ed], and exploit[ed] for its own profit" the payment information and personal data of California consumers. *Briskin*, 135 F.4th at 755-56, 759. Accordingly, purposeful direction was satisfied because Shopify's contacts with California were its "own choice and not 'random, isolated, or fortuitous.'" *Id.* at 758.

Here, by contrast, Naughty Words did not contact U.S. consumers, did not market to or interact with U.S. consumers, and does not license or control the exploitation of *Dancing with a Stranger* in the United States. Any resulting U.S. royalties Naughty Words allegedly receives accordingly cannot supply the "something more" that *Briskin* and other cases require. *Id.* at 752-53 (discussing prior case law); *Walden*, 571 U.S. at 289 ("[N]o jurisdictionally relevant contacts" where defendant "never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to" the forum.).

///

///

///

   **(3)**  ***Briskin* Does Not Change That the U.S.-Based Sony Publishers Are Not Naughty Word's Agents**

Defendants' Motion establishes—and the Court already held—that Naughty Words and the affiliates of SMP UK that control the licensing of *Dancing with a Stranger* in the United States do not have an agency relationship for jurisdictional purposes. Accordingly, the U.S. publishers' forum activities cannot be imputed to Naughty Words. See Mot. at 9-11; Order (Doc. 102) at 14-15. *Briskin's* ruling as to differential targeting is irrelevant to this issue, and cannot change this result.

  **(c)**  ***Briskin* Also Does Not Support Jurisdiction Over the UK Publishers**

Like Naughty Words, the UK Publishers are foreign entities domiciled and operating in the United Kingdom. Mot. at 12. They administer and license *Dancing with a Stranger*, but pursuant to the global Sony Intercompany Agreement, they do so only in the United Kingdom, and they do not control the licensing or administration of *Dancing with a Stranger* in the U.S. See Mot. 15-20; Spence Decl. at 1 ¶ 4, 3-4 ¶¶ 14-15. *Briskin*'s narrow refinement of the express aiming element in the online-platform context does not change that these UK Publishers' engaged in no U.S.-directed conduct that could support jurisdiction.

   **(1)**  **The UK Publishers' Administrative and Publishing Agreements Do Not Establish Express Aiming Under *Briskin***

The Motion demonstrates that the UK publishers' execution of agreements with other foreign entities—namely SMP UK's agreement with Naughty Words, and EMI UK's publishing agreements with Tor Hermansen and Mikkel Eriksen—do not establish personal jurisdiction. See Mot. at 13. This remains true even after *Briskin*'s holding on differential targeting because jurisdiction still must arise out of the contacts that the "defendant [itself] creates with the forum." Walden, 571 U.S. at 284; Briskin, 135 F.4th at 759 (citing Shopify's direct e-commerce contacts with California).

### (2) The Intercompany Agreement Does Not Establish Express Aiming Under *Briskin*

The worldwide Sony Intercompany Agreement, which includes the UK Publishers and many other entities, also does not establish express aiming by the UK Publishers. Under the Intercompany Agreement, the licensing and exploitation of Sony music catalog works in each geographical area are controlled by the Sony entity that is located in that geographic area. *See* Mot. at 3; Spence Decl. at 3-4 ¶¶ 12-15, Ex. 2. Thus, under the Intercompany Agreement, the UK Publishers—even though they received worldwide rights from Naughty Words and Messrs. Eriksen and Hermansen—are limited to exploiting *Dancing with a Stranger* in the United Kingdom (and a few other foreign countries). Spence Decl. at 3-4 ¶¶ 12-15. The UK Publishers have affiliates in the United States who control the licensing in this country, but that does not support jurisdiction over the UK Publishers, including because the acts of the affiliates in the United States cannot be imputed to the UK Publishers. *See* Axiom Foods, 874 F.3d at 1071 ("as a general rule, where a parent and a subsidiary are separate and distinct corporate entities, the presence of one ... in a forum state may not be attributed to the other"); Rounds, 2025 WL 1873999 at *7 (defendant's contractual relationship to in-forum entity "is irrelevant to the jurisdictional inquiry").

*Briskin*'s abrogation of the differential targeting principle does not change this result. This is not a case where the UK Publishers engaged in U.S.-directed conduct that would otherwise constitute express aiming but for the fact that the UK Publishers also directed the same conduct to other forums. *See* Briskin, 135 F.4th at 758 ("[R]equiring differential targeting would have the perverse effect of allowing a corporation to direct its activities toward all 50 states yet to escape specific personal jurisdiction in each of those states for claims arising from or relating to their relevant contacts in the forum state…."); Rounds, 2025 WL 1873999 at *6 ("To the extent that the Court [in *Briskin*] overruled the need for forum-specific focus or differential

7

targeting, this holding is limited to … those situations where a company operates nationwide equally and may be agnostic as to targeting one, specific state.") (quotation marks omitted).  Rather, the Intercompany Agreement makes clear that the UK Publishers have *no* right of control or input over their U.S. affiliates' exploitation of *Dancing with a Stranger* other than very narrow approval rights over certain uses of *Dancing with a Stranger* (and other works) in ex-U.K. territories. Spence Decl. at 4-5 ¶ 18; Ex. 2 at 7 §§ 2.1, 2.5.  Those narrow approval rights do not come close to the type of forum-directed conduct that the *Briskin* Court held could establish express aiming.  *See* above at 5 (distinguishing *Briskin*); *see also* Hit Bound Music, Ltd. v. BBC Films, No. 2:16-cv-7125 CBM (KSx), 2017 WL 5640543 at *1-*6 (C.D. Cal. June 28, 2017) (no personal jurisdiction over BBC, which entered into agreements with third parties to distribute a film in territories throughout the world). The Intercompany Agreement accordingly demonstrates that the UK Publishers do *not* engage in U.S.-directed conduct that establishes a substantial connection to the United States.  *See* Walden, 571 U.S. at 284-89; Picot, 780 F.3d at 1214-15; Axiom, 874 F.3d at 1069-71.

      Finally, Defendants also established that the Intercompany Agreement's New York choice of law and forum selection clauses do not establish specific jurisdiction because, these clauses apply to controversies regarding that agreement and its "validity, interpretation, and legal effect," which this lawsuit is not.  *See* Reply (Doc. 133) at 7-8.  *Briskin* is irrelevant to this point because the UK Publishers' agreement to these choice of law and forum selection clauses is not conduct that relates to Plaintiff's claims.  *See id., see also, e.g.*, Rosen v. Terapeak, Inc., No. CV-15-00112-MWF(Ex), 2015 WL 12724071 at *10 (C.D. Cal. Apr. 28, 2015) (assuming defendant had license agreement with eBay purportedly subjecting it to claims in California, agreement was not sufficiently related to forum or to claim regarding infringing photographs posted on eBay).

///

### (3) *Briskin* Does Not Affect the UK Publishers' Lack of Agency Relationship with U.S. Based Sony Affiliates

Defendants have established that the licensing activities of the UK Publishers' affiliates in the U.S. cannot be imputed to the UK Publishers because the UK Publishers lack the right to "substantially control" their affiliates' activities. *See* Mot. at 15-17; Reply at 8-10; Order (Doc. 102) at 20-21; Williams v. Yamaha Motor Co. Ltd., 851 F.3d 1015, 1024-25 (9th Cir. 2017); Born v. Celtic Marketing LLC, No. 8:19-cv-01950-JLS-ADS, 2020 WL 3883273 at *4 (C.D. Cal. May 20, 2020) (collecting cases). Plaintiff's other arguments regarding, for example, the copyright registrations or statements on the Sony Music Publishing website likewise do not establish agency. *See* Reply at 11-13.

*Briskin*'s ruling as to the express aiming element is irrelevant to these issues, and Plaintiff's agency theories accordingly fail for the reasons described in the UK Defendants' Reply. *See* Reply at 8-13.

### (4) *Briskin* Does Not Cure Plaintiff's Defective Alter Ego Theory

Defendants have established that Plaintiff's alter ego theory for specific jurisdiction fails because (1) the UK Publishers and the U.S. affiliates are distinct and separate entities, and (2) there is no evidence of "fraud or injustice." Mot. 17-20; Reply at 13. Nothing in *Briskin* affects this analysis.

### (d) **Asserting Jurisdiction Over the UK Defendants Would Be Unreasonable**

*Briskin* also does not affect the third prong of the specific jurisdiction test, which requires that the exercise of jurisdiction comport with fair play and substantial justice. *See* Briskin, 135 F.4th at 750-52 (applying traditional three-part test); Schwarzenegger, 374 F.3d at 802. And the UK Defendants have established that it would be unreasonable and inconsistent with due process to hale them into this Court when they have no forum presence and no reasonable expectation of being subjected

9

to suit in this forum.  See Mot. at 20-21; Reply at 13-14.

**3.  CONCLUSION**

For the foregoing reasons, the UK Defendants are not subject to personal jurisdiction in this Court and nothing in *Briskin* changes this result.  Accordingly, the UK Defendants respectfully request that the Second Amended Complaint be dismissed in its entirety with respect to the claims asserted against them.

Dated: August 11, 2025

/s/ *Eric H. Lamm, Esq.*
Peter Anderson, Esq.
Cydney Swofford Freeman, Esq.
Eric H. Lamm, Esq.
DAVIS WRIGHT TREMAINE LLP
Attorneys for Defendants
SAMUEL SMITH, NORMANI KORDEI HAMILTON, JAMES NAPIER, TOR HERMANSEN, MIKKEL ERIKSEN, UMG RECORDINGS, INC., UNIVERSAL MUSIC GROUP, INC., SONY MUSIC PUBLISHING (US) LLC, EMI BLACKWOOD MUSIC INC., EMI APRIL MUSIC INC., SONY CORPORATION OF AMERICA, 45TH AND 3RD MUSIC LLC, TIM & DANNY MUSIC LLC, DOWNTOWN MUSIC PUBLISHING LLC, NAUGHTY WORDS LIMITED, SONY/ATV MUSIC PUBLISHING (UK) LTD., and EMI MUSIC PUBLISHING LTD.

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants, certifies that this brief contains 2,948 words, which complies with the word limit of L.R. 11-6.1.

Dated: August 11, 2025

/s/ *Eric H. Lamm, Esq.*
Eric H. Lamm, Esq.
DAVIS WRIGHT TREMAINE LLP