Peter Anderson, Esq., Cal. Bar No. 88891
         peteranderson@dwt.com
Cydney Swofford Freeman, Esq., Cal. Bar No. 315766
         cydneyfreeman@dwt.com
Eric H. Lamm, Esq., Cal. Bar No. 324153
         ericlamm@dwt.com
Alex Cadena, Esq., Cal. Bar No. 352442
         alexcadena@dwt.com
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, CA 90071
Tel: (213) 633-6800
Fax: (213) 633-6899

Attorneys for Defendants
SAMUEL SMITH, NORMANI KORDEI
HAMILTON, also sued as SONGS OF NKH,
JAMES NAPIER, TOR HERMANSEN and
MIKKEL ERIKSEN, also sued as STARGATE,
UMG RECORDINGS, INC., UNIVERSAL
MUSIC GROUP, INC., SONY MUSIC
PUBLISHING (US) LLC, EMI BLACKWOOD
MUSIC INC., EMI APRIL MUSIC INC., SONY
CORPORATION OF AMERICA, 45TH AND
3RD MUSIC LLC, TIM & DANNY MUSIC LLC,
and DOWNTOWN MUSIC PUBLISHING LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| Sound and Color, LLC,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>Samuel Smith, *et al.*,<br><br>　　　　Defendants. | Case No. 2:22-cv-01508-WLH-AS<br><br>JOINT BRIEF RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>Date:　August 14, 2026<br>Time:　1:30 p.m.<br><br>Courtroom of the Honorable<br>Wesley L. Hsu<br>United States District Judge |

# TABLE OF CONTENTS

**Page**

1. INTRODUCTION ...................................................................................1

    (a) Defendants' Introduction ................................................................1

    (b) Plaintiff's Introduction ..................................................................2

2. STATEMENT OF FACTS ........................................................................4

    (a) Defendants' Statement of Facts ......................................................4

        (1) The Alleged Creation of Plaintiff's Song, JV ..............................4

        (2) The Creation of Defendants' Song, SS.......................................4

        (3) Plaintiff Commences This Lawsuit in 2022 .................................5

        (4) The First Bifurcated Phase as to the Extrinsic Test.....................5

        (5) The Second Bifurcated Phase as to Remaining Liability Issues ...6

            (i) Plaintiff Limits Its Theory of Copying to an Allegation of Striking Similarity .................................................................6

            (ii) Plaintiff's JV Contains Unlicensed Samples.......................8

    (b) Plaintiff's Statement of Facts.........................................................9

        (1) Creation of Plaintiff's Song........................................................9

        (2) Creation of Defendant's Song .....................................................9

        (3) Ninth Circuit Opinion ................................................................9

        (4) Defendants' Claims of Independent Creation are Not Credible..10

3. LEGAL STANDARD ............................................................................11

4. DEFENDANTS' ANALYSIS...................................................................11

    (a) Plaintiff Fails to Raise a Genuine Issue as to Whether Copying in Fact Occurred .............................................................................11

        (1) Plaintiff Cannot Raise an Inference of Copying Without Proof of Striking Similarity ................................................................11

        (2) Plaintiff Cannot Establish Striking Similarity ............................12

i

(i)   Striking Similarity Requires Proof of Similarities That Can Only Possibly Be Explained By Copying .................. 12

(ii)   The Claimed Similarities Between the Hooks of JV and SS Fall Far Short of Precluding All Explanations Other Than Copying .................................................... 16

(iii)   Plaintiff Cannot Create a Genuine Dispute as to Striking Similarity by Relying on Its Experts' Ipse Dixit ............... 20

a.   Dr. Stewart's Conclusory Opinions Do Not Establish Striking Similarity ................................. 20

b.   Mr. Bricklin's Opinions Are Likewise Inadmissible to Establish Striking Similarity ............................. 21

(3)   Plaintiff's Admittedly Insufficient Access Evidence Cannot Support a Finding of Striking Similarity .................................... 23

(b)   Plaintiff's Claim Fails Because Unlicensed Samples Pervade JV, Including the Parts Containing the Allegedly Copied Hook ................. 24

(1)   JV Unlawfully Infringes Two Prior Sound Recordings and Musical Compositions ............................................ 25

(2)   The Infringing Samples Pervade JV, Including All Parts Containing the Hook .................................................. 26

5.   PLAINTIFF'S ANALYSIS .................................................... 27

(a)   The Hooks are Striking Similar and Not Independently Created; there is an Expert Musicological Dispute for a Jury on this Issue ........ 27

(1)   The Pitch Sequences of the Songs are the Essentially the Same ........................................................... 29

(2)   The Melodic Contours of the Songs are the Essentially the Same and Extremely Unique ...................................... 31

(3)   The Rhythm and Metric Placement of the Lyrics are Very Similar in the Two Hooks .......................................... 32

(4)   There is, at a Minimum, A Expert Dispute for the Jury on Strikingly Similarity and Independent Creation ........................ 34

(b)   Defendants' Evidence and Arguments are Irrelevant and the Methodologies used by the Defense Experts are Illegitimate and their Opinions Should be Stricken under Rule 702 ............................ 36

(1)   The Defense Experts' Extrinsic Musicological Analysis Methodology is Not Legitimate .................................. 36

(2) Defense Expert's Prior Art Methodology is Not Legitimate ......40

(3) Defense Expert's Sampling Arguments are Irrelevant and Factually False ..................................................................................42

(c) Defendants' Claims of Independent Creation are Inconsistent with Other Evidence ............................................................................45

6. CONCLUSION ....................................................................................47

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ambrosetti v. Oregon Catholic Press*,
   151 F.4th 1211 (9th Cir. 2025) ................................................................... 15

*Ambrosetti v. Oregon Catholic Press*,
   No. 3:21-cv-00211-AR, 2024 WL 709217 (D. Or. Jan. 25, 2024) ...................... 15

*Anderson v. Stallone*,
   No. 87-0592, 1989 WL 206431 (C.D. Cal. Apr. 25, 1989) ................................. 25

*Benay v. Warner Bros. Entm't*,
   607 F.3d 620 (9th Cir. 2010) ..................................................................... 15

*Bernal v. Paradigm Talent and Literary Agency*,
   788 F. Supp. 2d 1043 (9th Cir. 2010)........................................................... 13

*Biani v. Showtime Networks, Inc.*,
   153 F.4th 957 (9th Cir. 2025)........................................... 12, 13, 16, 17, 18, 20, 22

*Boone v. Jackson*,
   206 Fed. App'x 30 (2d Cir. 2006) ............................................................... 19

*Briggs v. Blomkamp*,
   70 F. Supp. 3d 1155 (N.D. Cal. 2014)............................................................ 12, 13

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ................................................................................. 11

*Clanton v. UMG Recordings, Inc.*,
   556 F. Supp. 3d 322 (S.D.N.Y. 2021) ......................................................... 19

*Clover v. Tesfaye*,
   No. 20-55861, 2021 WL 4705512 (9th Cir. Oct. 8, 2021).................................. 22

*Corwin v. Walt Disney Co.*,
   475 F.3d 1239 (11th Cir. 2007)................................................................... 15

*CyberMedia, Inc. v. Symantec Corp.*,
   19 F. Supp. 2d 1070 (N.D. Cal. 1998)........................................................... 14

*Darrell v. Joe Morris Music Co.*,
113 F.2d 80 (2d Cir. 1940) ............................................................................... 13

*Dynamic Solutions, Inc. v. Planning & Control*,
646 F. Supp. 1329 (S.D.N.Y. 1986) ................................................................. 25

*Eden Toys, Inc. v. Florelee Undergarment Co.*,
697 F.2d 27 (2d Cir. 1982) .............................................................................. 25

*Eisenman Chemical Co. v. NL Indus., Inc.*,
595 F. Supp. 141 (D. Nev. 1984) ..................................................................... 14

*Feist Pubs., Inc. v. Rural Tel. Serv. Co., Inc.*,
499 U.S. 340 (1991) ......................................................................................... 26

*Gaste v. Kaiserman*,
863 F.2d 1061 (2d Cir. 1988) ..................................................................... 21, 36

*Gray v. Hudson*,
28 F.4th 87 (9th Cir. 2022) .............................................................................. 17

*Guzman v. Hacienda Records and Recording Studio, Inc.*,
808 F.3d 1031 (5th Cir. 2015) ............................................................. 13, 17, 19

*JBJ Fabrics, Inc. v. Brylane, Inc.*,
714 F. Supp. 107 (SDNY 1989) ....................................................................... 44

*Loomis v. Cornish*,
836 F.3d 991 (9th Cir. 2016) ..................................................................... 12, 23

*Loussier v. Universal Music Grp., Inc.*,
No. 02CV2447KMW, 2005 WL 5644420 (S.D.N.Y. Aug. 30, 2005) ................ 24

*Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*,
922 F.3d 946 (9th Cir. 2019) ..................................................................... 14, 15

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) ......................................................................................... 11

*McRae v. Smith*,
968 F. Supp. 559 (D. Colo. 1997) ........................................................ 13, 19, 22

*Merchant Transaction Systems, Inc. v. Nelcela, Inc.*,
No. CV 02-1954, 2009 WL 1835109 (D. Ariz. June 25, 2009) ......................... 25

*Mirage Editions, Inc. v. Albuquerque A.R.T. Co.*,
856 F.2d 1341 (9th Cir. 1988) ................................................................... 26

*Nationwide Transport Fin. v. Cass Info. Sys., Inc.*,
523 F.3d 1051 (9th Cir. 2008) ................................................................... 21

*Pickett v. Prince*,
207 F.3d 402 (7th Cir. 2000) (J. Posner) ................................................... 25

*Price v. Fox Entm't Grp., Inc.*,
499 F. Supp. 2d 382 (S.D.N.Y. 2007) ....................................................... 14

*Pringle v. Adams*,
No. SACV 10-1656-JST RZx, 2012 WL 1103939 at *6 (C.D. Cal. Mar. 30,
2012), *aff'd* 556 Fed. App'x 586 (9th Cir. 2014) ..................................... 15

*Rentmeester v. Nike, Inc.*,
883 F.3d 1111 (9th Cir. 2018) ............................................................ 11, 12

*SA Music LLC v. Apple, Inc.*,
592 F. Supp. 3d 869 (N.D. Cal. 2022) ....................................................... 24

*Scholz Homes, Inc. v. Maddox*,
379 F.2d 84 (6th Cir. 1967) ....................................................................... 20

*Schrock v. Learning Curve Int'l, Inc.*,
586 F.3d 513 (7th Cir. 2009) ..................................................................... 25

*Schultz v. Holmes*,
264 F.2d 942 (9th Cir. 1959) ..................................................................... 21

*Selle v. Gibb*,
741 F.2d 896 (7th Cir. 1984) ................................. 13, 16, 19, 20, 21, 22

*Shaw v. Lindheim*,
919 F.2d 1353 (9th Cir. 1990) ................................................................... 37

*Silvers v. Sony Pictures Entertainment, Inc.*,
402 F. 3d 881 (9th Cir. 2005) .................................................................... 44

*Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*,
952 F.3d 1051 (9th Cir. 2020) (en banc) ....................................... 11, 12, 41

*Smith v. Weeknd*,
No. CV 19-2507, 2020 WL 4932074 (C.D. Cal. July 22, 2020), *aff'd sub nom. Clover v. Tesfaye*, 2021 WL 4705512 (9th Cir. Oct. 8, 2021) ..................... 23

*Sobhani v. @Radical.Media Inc.*,
257 F. Supp. 2d 1234 (C.D. Cal. 2003)................................................ 24, 26, 27, 44

*Stabile v. Paul Smith Ltd.*,
137 F. Supp. 3d 1173 (C.D. Cal. 2015)................................................ 13, 15, 20, 22

*Swirsky v. Carey*,
376 F.3d 841 (9th Cir. 2004) ...................................... 27, 30, 35, 36, 39, 40, 41

*Tisi v. Patrick*,
97 F. Supp. 2d 539 (S.D.N.Y. 2000) ........................................................ 13, 15, 18

*United States v. Bailey*,
696 F.3d 794 (9th Cir. 2012) ............................................................................. 23

*Warren v. Fox Family Worldwide, Inc.*,
328 F. 3d 1136 (9th Cir. 2003) ......................................................................... 44

**Statutes**

17 U.S.C.
§ 103(a)............................................................................................... 2, 24, 27
§ 103(b).................................................................................................... 43, 44
§ 501(b)........................................................................................................ 44

**Rules**

Fed. R. Civ. P. 56(a) ........................................................................................ 11

Fed. R. Evid. 401 ............................................................................................. 24

Fed. R. Evid. 404 ............................................................................................. 24

Fed. R. Evid. 702 ..................................................................................... 3, 36, 42

**Other Authorities**

1 M. NIMMER & D. NIMMER, NIMMER ON COPYRIGHT at § 3.01 (1986).................... 25

2 M. NIMMER & D. NIMMER, NIMMER ON COPYRIGHT § 8.01 (2026)....................... 12

4 M. NIMMER & D. NIMMER, NIMMER ON COPYRIGHT § 13.02[B] (2005) ................. 12

4 NIMMER ON COPYRIGHT § 13D.07 (2026) ................................................... 12, 17, 20

3 W.F. PATRY, PATRY ON COPYRIGHT § 9:43 (2026) ................................................. 16

## JOINT BRIEF RE: MOTION FOR SUMMARY JUDGMENT

## 1.    INTRODUCTION

### (a)    Defendants' Introduction

Plaintiff's copyright infringement claim fails absent proof that copying in fact occurred. Discovery in the second liability phase has closed and Plaintiff has withdrawn its pleaded theories of access—that Plaintiff's song was widely disseminated or a chain of events connects Plaintiff's song to the creators of Defendants' song. *See* May 27, 2026, Stip. (Doc. 202). Instead, Plaintiff makes a last-ditch attempt to raise an inference of copying through the exacting doctrine of striking similarity.

Plaintiff hopes that the Court of Appeals' decision as to the extrinsic test for unlawful appropriation in this case will dissuade the Court from ruling in Defendants' favor on the issue of striking similarity. But striking similarity is distinctly different from substantial similarity under the extrinsic test, and is a far harder standard to satisfy. To survive summary judgment here, Plaintiff must show that the claimed similarities are such that it is **virtually impossible** for them to have occurred by coincidence or any other reason besides copying. Plaintiff does not come close to meeting that demanding standard. The similarities amount to a four-word phrase, "dancing with a stranger"—which has appeared in more than fifteen songs before Plaintiff's song—and some unprotected pitches and rhythms in each song's otherwise different melodies to which that phrase is sung. These similarities are not unique or so complex as to render coincidence virtually impossible—indeed, Plaintiff's expert admits that *none* of the allegedly copied elements are unique to Plaintiff's song. In light of that and other admissions, Plaintiff's experts' conclusory assertions that they believe copying occurred do not raise a genuine dispute as to striking similarity.

Discovery in this phase has also revealed another independent, fatal defect in Plaintiff's claim. Plaintiff's song contains unauthorized samples (*i.e.*, incorporating other sound recordings' sounds) that include protected musical elements from at least

1

two other copyrighted songs.  Moreover, those samples tend to pervade the entirety of Plaintiff's song—both samples play continuously throughout all of Plaintiff's choruses, which include the allegedly copied elements, among other sections.  In fact, the allegedly copied "hook" never occurs once in Plaintiff's song without being accompanied by *both* unauthorized samples.  As a result, Plaintiff's claim fails because "protection for a work employing preexisting material in which copyright subsists does not extend to any part of the work in which such material has been used unlawfully."  17 U.S.C. § 103(a).

For each of these independent reasons, Defendants' Motion should be granted and judgment entered in Defendants' favor.

### (b)    **Plaintiff's Introduction**

In a prior phase of the case the Ninth Circuit Court of Appeals ruled that there was a jury question on the substantial similarity extrinsic test, and that a jury should decide whether to credit Plaintiff's experts or Defendants' experts. At issue in this phase of the case, and in this motion, is a similar issue: whether, according to competing expert testimony, the works are so strikingly similar that a jury can conclude Defendants accessed Plaintiffs' work.

Plaintiff's experts assert that the two works are virtually identical, any differences are miniscule, and the similarities are not coincidental. Defendants' experts contend the songs are utterly different with no significant similarities. The Ninth Circuit's prior holding is highly relevant for this related analysis because it simply points out that expert musicological disputes are for a jury, not the Court. Because there is an expert dispute of fact for the jury on access, the motion should be denied.

The defense experts claim that the two hooks have no similarity is more akin to advocacy, not a credible musicological opinion. Defendant Tor Hermansen, a world-renowned producer and co-writer, was played the two hooks at his deposition and asked to identify any differences at all between them. ***He was unable to do so.*** He testified that there might be "minor differences," but that he could not identify even

one. Fact 193. This establishes a baseline that the two hooks are incredibly similar even to very good ears; the defense experts pretending as if this similarity does not exist significantly undermines their opinions.

In fact, the defense experts are using improper methodologies in violation of Fed. RE 702 and should be stricken/disqualified. This striking similarity test requires identifying the similarities between two works, identifying the differences, and evaluating the significance or insignificances of these differences within the context of the two pieces to figure out whether independent creation could have happened. The problem from a methodological standpoint is that Defendants' experts refuse to address or identify the similarities between the works in any meaningful way, instead focusing only on categorizing alleged differences.

Obviously, an analysis that only addresses differences can only find differences and will omit critical context. An opinion that two songs have differences means nothing if the similarities of the pieces are not also identified to provide the factfinder with a contextual whole. To paraphrase Arlo Guthrie, there can't be light without the dark.

The defense experts also try to use prior art to bolster their opinion there is no similarity between the hooks also in violation of Rule 702. But, again, they use an improper methodology. It is not disputed that the selection and arrangement of Plaintiff's hook does not appear in the prior art. Fact 160. Ignoring this, the defense experts have taken bit and pieces of Plaintiff's hook and claimed that these bits are similar to bits and pieces *in 49 other songs*. They thus opine that, when the scattered bits and pieces of these 49 songs are considered together the content of Plaintiff's hook is commonplace and can be disregarded. This analysis is farcical, violates binding authority, and is not based in any valid musicological method. Nothing in the prior art is remotely similar to the arrangement of Plaintiff's hook and Defendants' hook.

Lastly, Defendants spend a goodly portion of their motion trying to claim that Plaintiff does not have a copyright in the hook's composition because there is some

entirely unrelated sound recording sampling in the background production. The problem is that Defendants' argument is frivolous. Nothing about the hook composition at issue derives from the identified sound recording sampling, which was independently created by Jordan Vincent, nor does any of this sampling have anything to do with the infringement claims. This issue is entirely irrelevant to the issues in this case and should be disregarded.

## 2.   STATEMENT OF FACTS

### (a)   Defendants' Statement of Facts

#### (1)   The Alleged Creation of Plaintiff's Song, JV

Plaintiff claims that its song, which it now calls *Dancing with Strangers* ("JV"), was written by Christopher Miranda, Rosco Banlaoi, and Jordan Vincent in 2015.  Mr. Miranda and Mr. Banlaoi, calling themselves SKX, prepared the background music or "beat," and Mr. Vincent added the vocal melody and lyrics.  Facts 1-3.  JV includes unauthorized samples from at least two other sound recordings.  Facts 99-113.  Mr. Miranda, Mr. Banlaoi, and Mr. Vincent also prepared a music video for JV.  Fact 4.

#### (2)   The Creation of Defendants' Song, SS

On August 7, 2018, Samuel Smith, James Napier, Tor Hermansen, and Mikkel Eriksen wrote *Dancing with a Stranger* ("SS") at Stellar House Studios.  Mr. Hermansen created the keyboard parts and chords, and Mr. Eriksen created the drum beat and other elements in the accompanying music.  Mx. Smith and Mr. Napier worked together to create the lyrics and vocal melody by improvising to the music Mr. Hermansen and Mr. Eriksen had created.  Facts 5-6.  During the songwriting session, Mr. Napier used his iPhone to record melodic and lyrical ideas he was excited about.  Fact 7; *see also* Audio Exs. 5-14.  When Mx. Smith, Mr. Napier, Mr. Hermansen, and Mr. Eriksen finished writing SS, they made a recording in which Mx. Smith sings all of the vocal parts and lyrics.  Fact 8; Audio Ex. 15.

After the song was recorded, Normani Hamilton arrived at Stellar House Studios later in the afternoon on August 7, 2018.  She met Mx. Smith and the other

writers and listened to the recording of SS in which Mx. Smith sings all of the vocal parts. Ms. Hamilton liked the song and agreed to sing on the sound recording of SS. Her vocal parts were recorded later the same day. *See* Facts 9-10; Hamilton Decl. at 1-2 ¶¶ 3-5. SS was then released in January 2019. Fact 11. A music video directed by Vaughan Arnell was also recorded and released in January 2019. Fact 12.

### (3)    Plaintiff Commences This Lawsuit in 2022

Plaintiff filed this lawsuit in 2022, alleging claims for direct, contributory, and vicarious copyright infringement. Plaintiff initially alleged that SS infringes the copyrights in both the musical composition and the sound recording of JV. *See* Compl. (Doc. 1). However, the Court dismissed Plaintiff's claim for contributory copyright infringement with leave to amend, which Plaintiff declined to do, and dismissed Plaintiff's claim for vicarious copyright infringement with prejudice. *See* Sept. 4, 2025, Order (Doc. 185) at 29:23-25, 47:19-21. Plaintiff also conceded that SS does not sample the JV sound recording and, accordingly, Plaintiff voluntarily dismissed its claim that SS infringes the sound recording copyright in JV. Pltf's Voluntary Dismissal (Doc. 97). Plaintiff's operative Second Amended Complaint is accordingly limited to a single claim for infringement of the copyright in the JV musical composition. *See* Second Am. Complaint (Doc. 114) ("SAC") at 46-47 ¶¶ 309-320. As for that claim's required element that copying in fact occurred, Plaintiff alleged that JV and SS are strikingly similar and, alternatively, that Defendants had access to JV because it was widely disseminated or because JV might have made its way to the creators of SS through a chain of third parties. *Id.* at 6-11 ¶¶ 31-63.

### (4)    The First Bifurcated Phase as to the Extrinsic Test

Discovery in this action was initially bifurcated into a first phase of expert discovery and dispositive motion practice as to the extrinsic test for substantial similarity in protected expression. Sept. 13, 2022, Order (Doc. 55). In that phase, Plaintiff disclosed two claimed experts, Alexander Stewart, Ph.D., a musicologist, and Brian Bricklin, a sound recording engineer who, after admitting that SS includes no

samples, attempted instead to offer musicological testimony as a rebuttal expert. Defendants designated two affirmative and rebuttal experts, Dr. Lawrence Ferrara, a musicologist, and Prof. Paul Geluso, a sound recording engineer, and also designated Ronald Sadoff, Ph.D., a composer and musicologist, as a rebuttal expert. *See* Sept. 6, 2023, Order (Doc. 146) at 6-10. Defendants' Motion for Summary Judgment was granted (*id.*), but Plaintiff appealed. Upon remand after reversal solely as to the extrinsic test, the remaining proceedings were then bifurcated into the current, second phase of fact and expert discovery and dispositive motion practice as to the remaining liability issues, and a final phase of discovery as to damages. Sept. 4, 2025, Order (Doc. 185).

### (5)   The Second Bifurcated Phase as to Remaining Liability Issues

The parties have now completed fact discovery and expert discovery in the second phase as to liability issues other than the extrinsic test.

### (i)   Plaintiff Limits Its Theory of Copying to an Allegation of Striking Similarity

Plaintiff pleaded three legal theories to support its claim that copying in fact occurred: (1) access by widespread dissemination, (2) access by several alternative chains of events; and (3) striking similarity. SAC at 6-11 ¶¶ 31-63. Discovery was pursued and completed as to the factual basis for the three theories.

First, Plaintiff based its wide dissemination theory of access on the claim that JV was streamed on SoundCloud and other internet platforms more than 500,000 times before SS was created in 2018. SAC at 7 ¶ 35. However, fact and expert discovery established that those streams were the result of computer "bots" used to artificially increase streaming numbers. *See* Frank Decl. at 2-3 ¶ 5. Plaintiff also based its wide dissemination theory on the claim that JV was "shopped" around in the music industry. SAC at 7 ¶ 35. However, Plaintiff offered nothing but conclusory speculation as to how many people might have received or heard JV, including

6

whether e-mails sent by a former manager, Trumal Darden, were actually delivered to the people he claimed to email. *See, e.g.*, Lamm Decl. Ex. 33 (Pltf's Supp. Resp. to Interrogatories) at 11; *id.* Ex. 29 (Vincent Depo.) at 214:5-216:17; *id.* Ex. 32 (Darden Depo.) at 153:10-156:25, 158:23-159:13; Bauman Decl. at 1-2 ¶¶ 3-7.

Accordingly, Plaintiff abandoned its widespread dissemination theory of access. May 27, 2026, Stip. (Doc. 202) at 1-2 ¶ 3(a)-(b); Facts 95-98.

Second, Plaintiff based its chain-of-events theory of access on the claim that JV might have made its way to the authors of SS through third parties, including Peter Torres or Ricardo Vinas. Mr. Vinas's small record label, Thrive Records, was considering acquiring rights to JV in 2015, but ultimately decided not to. Plaintiff alleged Mr. Torres or Mr. Vinas might have known either Ms. Hamilton's former manager, Brandon Silverstein, or her "mentor," Tim Blacksmith. SAC (Doc. 114) at 7-10 ¶¶ 36-53. However, Ms. Hamilton, Mr. Silverstein, and Mr. Blacksmith never received a copy of JV, and were not involved in the creation of SS. Ms. Hamilton only arrived at Stellar House Studios after SS was already completed and recorded by Mx. Smith. Facts 5-8, 10; Hamilton Decl. at 1-2 ¶¶ 3-7; Silverstein Decl. at 1 ¶¶ 3-5; Blacksmith Decl. at 1-2 ¶¶ 6, 8, 9; Lamm Decl. Ex. 30 (Miranda Depo.) at 107:14-108:3, 108:22-110:3, 118:16-119:8; *see also* Torres Decl. at 1 ¶ 6 (confirming he never sent JV to anyone except Mr. Vinas).

In addition, Plaintiff alleged that Ms. Hamilton or Mr. Silverstein might have received a copy of JV through Jared Cotter, with whom Plaintiff alleged the authors of JV worked in 2015. SAC at 10 ¶¶ 54-57. But Mr. Cotter has confirmed that he never shared JV with anyone, and again, Ms. Hamilton and Mr. Silverstein were not involved in writing SS. Cotter Decl. at 1-2 ¶¶ 4-6, 8, 11; Facts 5, 10.

Plaintiff also claimed that the creators of SS might have known of JV through some chain of events because of alleged similarities (1) between the JV music video and the SS music video and (2) between a design on Mr. Vincent's business card and a text design shown in the SS music video. *See* SAC at 10-11 ¶¶ 58-61. But

Defendants established through unrebutted expert testimony that the claimed similarities in the music video and text designs are strained, generic, and not evidence of copying. Lamm Decl. at 2-3 ¶¶ 9, 11-12. In addition, the music video and title card were created *after SS* was written by London-based artists who have never heard of Mr. Vincent or JV. Arnell Decl. at 1-2 ¶¶ 2, 3, 5, 7; Moross Decl. at 1-2 ¶¶ 2, 3, 5.

Accordingly, Plaintiff also has abandoned that second theory of access. May 27, 2026, Stip. (Doc. 202) at 1-2 ¶ 3(a)-(b); Facts 95-98.

Third and finally—and because Plaintiff's access theories did not withstand discovery—Plaintiff now relies solely on striking similarity. *See* May 27, 2026, Stip. (Doc. 202) at 2 ¶ 3(c). As to striking similarity, both sides re-designated their expert reports and other materials from the first phase of discovery in 2022 and 2023. Lamm Decl. at 2-3 ¶¶ 8-9, 14. As shown below, Plaintiff fails to meet the exacting standard for striking similarity.[1]   *See* below at 11-24.

### (ii)   Plaintiff's JV Contains Unlicensed Samples

In this phase of discovery, Defendants' experts, Dr. Ferrara and Prof. Geluso, provided affirmative reports establishing that JV incorporates at least two samples of preexisting musical works, that the music in each sample constitutes a protectable musical composition, and that the samples pervade JV, including the sections of JV that contain the allegedly infringed elements. Ferrara Decl. at 2 ¶ 6 & Ex. 9; Geluso

---

[1]   Plaintiff also claims that striking similarity is supported by "other facts regarding Plaintiff's song's public availability and Defendants' creative process." May 27, 2026, Stip. (Doc. 202) at 2 ¶ 3(c). However, striking similarity turns on the nature of the similarities between the two works. *See* below at 12-16. Plaintiff cannot raise an inference of copying through a deficient showing of striking similarity combined with a deficient showing of access; creating a genuine dispute as to whether copying in fact occurred requires proof of one or the other. *See* below at 23-24. But given Plaintiff's hedging as to what it will rely upon as supposedly establishing striking similarity, Defendants submit with this Motion some of the evidence rebutting Plaintiff's attempt to rely on JV's "public availability" and a supposed "creative process" of copying.

Decl. at 1-2 ¶ 5 & Ex. 10.  Plaintiff responded only with Mr. Bricklin's one-page "rebuttal report" that merely claims the samples are "irrelevant" to his purported opinion. Lamm Decl. Ex. 11.  As shown below, however, the samples *are* relevant because Plaintiff's copyright in JV does not extend to the sections containing the unauthorized samples, which include JV's allegedly copied hook.  *See* below at 26-27.

### (b)   Plaintiff's Statement of Facts

#### (1)   Creation of Plaintiff's Song

Jordan Vincent authored the vocal melody and lyrics of Plaintiff's hook in late 2014, early 2015, after hearing an NPR story about a young woman with a medical condition who died dancing at a club with a stranger. Moved by this story he was inspired to write Dancing with a Stranger. Christopher Miranda and Rosco Banlao, who are a production duo known as SKX, later added other elements in production, including a beat. Vincent, Miranda, and Banlaoi own Sound and Color LLC, which owns the song.

#### (2)   Creation of Defendant's Song

Defendants Sam Smith and James Napier had scheduled a songwriting session with the production duo defendants Mikkel Eriksen and Tor Hermansen (known as Stargate) at their studio Stellar House on August 7, 2018. Eriksen and Hermansen had prepared some beats prior to the session. The hook lyrics and vocal melody were allegedly created by Smith and Napier. Napier recorded some aspects of the song being worked out on an iPhone. However, Napier did not record the creation of the hook, specifically the lyrics dancing with a stranger and the accompanying vocal melody.

#### (3)   Ninth Circuit Opinion

The Ninth Circuit Opinion is ignored in Defendants' fact section. Following a prior grant of summary judgment for Defendants on the extrinsic substantial similarity test, Plaintiff appealed pointing out that there was a dispute between music experts that

should be decided by a jury. Plaintiff also noted that Defendants' experts were focusing only on differences between the two hooks.

Defendants' experts were claiming the songs were entirely different, while Plaintiff's experts claimed the songs were virtually identical. The Ninth Circuit's opinion reaffirmed longstanding precedent that when confronted with a dispute between two music experts, the Court should let the jury decide that dispute. The opinion also noted that the prior art search by Defendants had not found a single song that had a hook with the same melodic contour as shared by Plaintiff and Defendant's hook.

At oral argument, defense counsel tried to argue to the panel that the prior art was similar to Plaintiff's hook, and it was quickly point out that none of these songs sound anything like Plaintiff's song or Defendants' song. Ex. 18 to Fluehr Decl. – Audio of Oral Argument, at minute 27:49.

### (4) Defendants' Claims of Independent Creation are Not Credible

Defendants claim that they never heard Plaintiff's song and that they created their song independently. These denials lack credibility; that Defendants copied from Plaintiff's work is consistent with other evidence regarding their creative process.

Defendants Sam Smith and James Napier admit that they are fed music by their managers and agents for consideration. Plaintiff's song was publicly available and easily accessed; it was not locked in a safe with no way for anyone to have heard it. Plaintiff's song was publicly released on streaming platforms in March 2018, a few months before Defendants wrote their song in August 2018. In addition, Vincent pushed the song to industry contacts including Universal, as did a promoter and it was considered by a label for production.

Smith and Napier previously wrote a hit song, "Stay with Me," which is essentially identical to parts of the Tom Petty song "Won't Back Down." Just as they do in this case, both Smith and Napier dubiously deny ever hearing Won't Back Down,

10

or even being aware of Tom Petty (incredible assertions given Tom Petty's musical and cultural prominence for decades). The songs are so similar that Defendants gave Petty writing credit. When asked how Petty's song had gotten in Defendants' song, Smith flippantly replied "there are only so many keys on a piano." There are nearly infinite combinations that can be played on a piano. The denials by the Defendants they ever heard Plaintiff's song cannot be taken at face value.

3.    **LEGAL STANDARD**

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  Once the movant shows that summary judgment is appropriate, the burden shifts to the nonmoving party to establish that genuine issues exist as to material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  The nonmoving party must "designate 'specific facts showing that there is a genuine issue for trial'" (*id.*), and "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation marks omitted).

4.    **DEFENDANTS' ANALYSIS**

(a)    **Plaintiff Fails to Raise a Genuine Issue as to Whether Copying in Fact Occurred**

(1)    **Plaintiff Cannot Raise an Inference of Copying Without Proof of Striking Similarity**

"Proof of copyright infringement requires [the plaintiff] to show: (1) that he owns a valid copyright in [his work]; and (2) that [the defendant] copied protected aspects of the work." *Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020) (en banc).  "The second prong of the infringement analysis contains two separate components: 'copying' and 'unlawful appropriation.'" *Id.* (quoting *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1117 (9th Cir. 2018), *overruled on other grounds by* *Skidmore*, 952 F.3d 1051).  "Although these requirements are too

11

often referred to in shorthand lingo as the need to prove 'substantial similarity,' they are distinct concepts." *Skidmore*, 952 F.3d at 1064. Setting aside for the moment whether Plaintiff owns a valid copyright, Plaintiff cannot establish a genuine dispute as to the second prong's requirement that copying in fact occurred.

"Because independent creation is a complete defense to copyright infringement, a plaintiff must prove that a defendant copied the work." *Id.*; 2 M. NIMMER & D. NIMMER, NIMMER ON COPYRIGHT § 8.01 (2026) ("[A]bsent copying, there can be no infringement of copyright, regardless of the extent of similarity."). The plaintiff has the burden of proving the historical fact that the defendant copied the plaintiff's work. *Rentmeester*, 883 F.3d at 1117.

Unless copying is admitted—and here it is vehemently denied—copying can generally be proven circumstantially only by evidence of either (1) a reasonable possibility of access, plus substantial similarities between the defendant's and the plaintiff's works that are probative of copying, or (2) striking similarity. *Loomis v. Cornish*, 836 F.3d 991, 995, 995 n.1 (9th Cir. 2016). Here, Plaintiff concedes it cannot establish access. *See* above at 6-8. As a result, Plaintiff can raise a genuine dispute as to whether copying occurred only if it can prove the works are strikingly similar. Plaintiff cannot.

**(2) Plaintiff Cannot Establish Striking Similarity**

**(i) Striking Similarity Requires Proof of Similarities That Can Only Possibly Be Explained By Copying**

To meet the "high bar" of striking similarity, Plaintiff must demonstrate that the works are "so 'strikingly similar' as to preclude 'the possibility of independent creation.'" *Biani v. Showtime Networks, Inc.*, 153 F.4th 957, 962 (9th Cir. 2025); *Briggs v. Blomkamp*, 70 F. Supp. 3d 1155, 1167 (N.D. Cal. 2014) ("At base, 'striking similarity' simply means that, in human experience, it is virtually impossible that the two works could have been independently created.") (quoting 4 M. NIMMER & D. NIMMER, NIMMER ON COPYRIGHT § 13.02[B] (2005), quoted language now at 4

12

NIMMER ON COPYRIGHT § 13D.07 (2026)).  This standard is met only in "rare cases." *Stabile v. Paul Smith Ltd.*, 137 F. Supp. 3d 1173, 1188 (C.D. Cal. 2015); *Selle v. Gibb*, 741 F.2d 896, 902-04 (7th Cir. 1984) (plaintiff failed to establish striking similarity even though the defendant songwriters mistook plaintiff's song for their own). Striking similarity is "applied with particular stringency in cases, such as here, involving popular music."  *Tisi v. Patrick*, 97 F. Supp. 2d 539, 548 (S.D.N.Y. 2000) (citing *McRae v. Smith*, 968 F. Supp. 559, 566 (D. Colo. 1997)); *Darrell v. Joe Morris Music Co.*, 113 F.2d 80 (2d Cir. 1940) ("simple, trite themes ... are likely to recur spontaneously ... and [only few] ... suit the infantile demands of the popular ear").

"To be 'striking,' the similarities must appear in a unique or complex context such that 'it is ***virtually impossible*** that the two works could have been independently created.'" *Biani*, 153 F.4th at 962; *Bernal v. Paradigm Talent and Literary Agency*, 788 F. Supp. 2d 1043, 1052 (9th Cir. 2010) ("[A]s a matter of logic, the only explanation [for the similarities] … must be copying rather than ... coincidence, independent creation, or prior common source.") (internal quotation marks omitted).

Critically, "'[s]triking similarity' is not merely a function of the number of identical notes that appear in both compositions." *Selle*, 741 F.2d at 903. "[P]laintiffs must demonstrate that 'such similarities are of a kind that can *only be explained by copying*….'" *Id.* at 904 (emphasis added); *see, e.g.*, *Briggs*, 70 F. Supp. 3d at 1172 (where similarities did not originate with the plaintiff's work, plaintiff could not establish striking similarity); *Guzman v. Hacienda Records and Recording Studio, Inc.*, 808 F.3d 1031, 1040 (5th Cir. 2015)  (evidence that "other songs expressed the same phrases, attitudes, and expressions encompassed in [lyrics of songs at issue]" precluded striking similarity).

For example, unusual and extensive typographical errors that are common to both works may preclude a finding of independent creation.  Thus, striking similarity was established where two computer programs had *hundreds* of lines of "identical or nearly identical" code, where "any of the hundreds of code lines… could have been

13

written differently," and the defendants failed to provide evidence of a "common ancestor code." *CyberMedia, Inc. v. Symantec Corp.*, 19 F. Supp. 2d 1070, 1077 n.13 (N.D. Cal. 1998); *see also* Eisenman Chemical Co. v. NL Indus., Inc._, 595 F. Supp. 141, 144-146 (D. Nev. 1984) (forty modules of defendants' drilling training manual included extensive similarities to plaintiff's manual, including misspellings of "Round Off Numbers" as "Round Of Numbers," "gauges" as "guages," and "nongauge" as "nonguage" in same modules); *cf.* Price v. Fox Entm't Grp., Inc._, 499 F. Supp. 2d 382, 388 (S.D.N.Y. 2007) (summary judgment granted for defendant notwithstanding dueling experts; although screenplay and movie both mistakenly stated that dodgeball originated in China, same mistake found in other works).

Two Ninth Circuit published decisions demonstrate the incredibly high standard to meet to establish striking similarity creating an inference of copying in the absence of evidence of access. In *Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*, 922 F.3d 946 (9th Cir. 2019), the Court of Appeals held that the following textile designs are sufficiently similar and complex to be strikingly similar *at the pleading stage*:

| SUBJECT WORK | LABEL LANE PATTERN | SUBJECT WORK | H&M PATTERN |
|---|---|---|---|

14

*Id.* at 953, 956-957.  And in *Ambrosetti v. Oregon Catholic Press*, 151 F.4th 1211, 1226 (9th Cir. 2025), the Court of Appeals, relying on "hundreds of pages of reasoned analysis" by the plaintiff's expert, Dr. Ferrara—who is Defendants' expert here—concluded there was a genuine dispute as to whether two musical compositions were strikingly similar.  The similarities, which are detailed in the Magistrate Judge's Findings and Recommendation, included *twenty-three* aggregate similarities that were "not even remotely commonplace," over a continuous series of twelve consecutive measures, and including identical notes in corresponding parts and the majority of pitches and rhythms in the melodies.  *See Ambrosetti v. Oregon Catholic Press*, No. 3:21-cv-00211-AR, 2024 WL 709217 at *3-*5 (D. Or. Jan. 25, 2024).

Further, as a corollary to the demanding standard for striking similarity, differences preclude striking similarity.  *See, e.g.*, *Biani*, 153 F.4th at 964  ("Even a cursory examination of the works' characters 'exposes many more differences than similarities,' such that none of the Show's characters are 'strikingly similar' to their alleged counterparts from Biani's works.") (quoting *Benay v. Warner Bros. Entm't*, 607 F.3d 620, 625 (9th Cir. 2010), *overruled on other grounds by Skidmore*, 952 F.3d 1051).

Finally, summary judgment is appropriate even in cases involving dueling expert testimony where, as here, the opposing party relies on expert opinions that are "conclusory or contradictory, [or] fail[] to assert that independent creation was not possible…."  *Stabile*, 137 F. Supp. 3d at 1189 (gathering cases); *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1253-1254 (11th Cir. 2007) (affirming summary judgment notwithstanding expert testimony as to striking similarity); *Tisi*, 97 F. Supp. 2d at 548-49 ("Although plaintiff's expert opines that the songs are strikingly similar, an issue of fact cannot be created by merely reciting the magic words 'strikingly similar' and 'no possibility of independent creation.'"); *Pringle v. Adams*, No. SACV 10-1656-JST RZx, 2012 WL 1103939 at *6 (C.D. Cal. Mar. 30, 2012), *aff'd* 556 Fed. App'x

15

586 (9th Cir. 2014); _Selle_, 741 F.2d at 900-01 (affirming grant of defendants' post-trial motion for judgment as a matter of law despite plaintiff's _uncontroverted_ expert testimony that works were "strikingly similar"); _see also_ 3 W.F. PATRY, PATRY ON COPYRIGHT § 9:43 (2026) (discussing the "evils of expert witnesses in striking similarity cases").

### (ii)   The Claimed Similarities Between the Hooks of JV and SS Fall Far Short of Precluding All Explanations Other Than Copying

Plaintiff claims that SS copies JV's "hook," which, according to Plaintiff's experts, is the portion of its chorus that consists of the phrase "dancing with a stranger" and the vocal melody to which that phrase is sung. Fact 13; SAC at 1 ¶ 2. Plaintiff's claimed similarity is that in both hooks, the phrase "dancing with a stranger" is sung to melodies that begin with a pitch on scale degree 7 and end with a pitch on scale degree 3, with a downward melodic contour between those pitches, with the beginning of each syllable of "dan-cing with a stran-ger" having the same metric placement (i.e., placement on or between beats). Facts 16, 26-27, 34, 47. But there is nothing about these limited and fragmentary similarities, even in combination, that establishes it is "_virtually impossible_" for them to be found in SS except by copying JV.[2] _Biani_, 153 F.4th at 962.

It is undisputed that the phrase "dancing with a stranger" appears in more than fifteen songs before JV, including as the title and main phrase in the chorus of many of them. Fact 18. And Plaintiff's expert, Dr. Stewart, also admits that neither the pitch sequence of JV's "hook," nor its descending melodic contour, nor its rhythm (duration and metric placement) is unique to JV. Facts 28, 35, 44. And while Dr. Stewart describes a pitch sequence from 7 to 3 as "unusual," it appears in other songs

---

[2]    A "melody" consists of a sequence of "notes," which are sounds with specified (a) pitch and (b) duration. Melodic contour refers to the direction (up, down, or stay the same) in which pitches move. Facts 20-23.

before JV, including with the words "dancing with a stranger" or similar words. Facts 28, 31-33. Indeed, Dr. Stewart admits that a descent from 7 to 3 is merely a portion of a descending minor scale, which is a commonplace musical building block. Facts 29-30; *Gray v. Hudson*, 28 F.4th 87, 98 (9th Cir. 2022) (minor scales are "common musical building blocks").

These are not the type of "unique or complex" similarities that render all explanations other than copying "virtually impossible." *Biani*, 153 F.4th at 962; *Guzman*, 808 F.3d at 1040 (songs' use of sixteen nearly identical Tejano words meaning 'I have in my possession love letters that you have sent me asking me for compassion' in same part of songs, among other similarities, insufficient to establish striking similarity where evidence that "other songs expressed the same phrases, attitudes, and expressions"); *see also* 4 NIMMER ON COPYRIGHT § 13D.07 ("Even if copying in [*Guzman*] were deemed *very likely*, what is required goes beyond high likelihood to demonstrate virtual certainty.").

Further, there are multiple undisputed differences in the hooks. The phrase "dancing with a stranger" is a fragment of otherwise very different lyrics in each song's chorus. Facts 14-15, 77-78. The *melodies* to which "dancing with a stranger" are sung in JV and SS are different as well. The pitches between scale degrees 7 and 3 are different in JV and SS: 7-6-6-5-4-4-3 in JV but 7-5-5-5-4-4-3-3 in SS (assuming Dr. Stewart's opinion regarding key). Facts 26-27. There are also differences in contour. Facts 40-42. There are differences in the rhythms (duration and metric placement) as well. Facts 45-46, 52-55. Indeed, only two notes have the same pitch and metric placement, and even those have different durations:



Example 1    signature phrases

17

Fact 43. "The numerous differences between the … [elements of songs] precludes as a matter of law a finding of striking similarity." *Tisi*, 97 F. Supp. 2d at 549; *Biani*, 153 F.4th at 964-65 (differences in claimed characters precluded striking similarity).

In addition, that the claimed similarities could be in SS without it copying JV is further confirmed by other songs that include the lyrics "dancing with a stranger" or similar phrases with other claimed similarities. *See* Facts 31-33, 37-39, 48-51. For example, Dr. Ferrara's prior art search established that songs before JV also share the purportedly "unusual" quality of moving from scale degree 7 to 3. Jon Burr Band's prior work *Dancing with a Stranger* sets "dancing with a stranger" to a melody with a pitch sequence 7-5-4-3-4-3 and with similarities in rhythmic duration to JV and SS. Except for one pitch that moves up (3-4), the melodic contour also moves downward from 7 to 3. Facts 32, 37. Regina's prior work *Dancing with an Angel* sets the lyrics "dancing with an angel" to a melody that includes descending pitches moving from scale degree 7 to 3 (namely, 7-6-5-4-3). Facts 31, 38. The prior art also establishes that the metric placements of the beginning of the syllables "Dan-cing with a Stran-ger" are a commonplace way of singing that or similar phrases. Facts 48-51. Indeed, in Kim Herte and the Federation's prior work *Dance with a Stranger*, the beginning of each syllable in "dance with a stran-ger" has the same metric placement as the beginning of each syllable "dan-cing with a stran-ger" in JV and SS, as well as pitches that move downward on 6-5-5-3-1-4-4-3. Facts 33, 39, 48. There are other examples as well. Facts 49-51.

All of Plaintiff's claimed similarities in the hooks of JV and SS were freely floating in popular music before JV. Thus, it is entirely possible that a melody with the claimed similarities—"dancing with a stranger" lyrics, a pitch sequence that begins with scale degree 7 and ends with scale degree 3, downward melodic contour, and metric placement of syllables—could be created by combining elements of other works—for example, the lyrics of Cyndi Lauper's *Dancing with a Stranger*, the pitch sequence and contour of Regina's *Dancing with an Angel*, and the rhythm of Kim

18

Herte and the Federation's *Dance with a Stranger*. Facts 18, 38, 39. Accordingly, Plaintiff is unable to establish that SS could not possibly include the claimed similarities without having copied JV. Fact 48.[3]

Courts have repeatedly rejected experts' claims of striking similarity on far more than what Plaintiff claims here. *See, e.g.*, Selle, 741 F.2d at 899 (expert testimony that songs shared twenty-four notes in first eight measures, thirty "rhythmic impulses," fourteen notes in last four measures with identical pitch, and identical placement of themes was insufficient to establish striking similarity; expert failed to show similarities were in a sufficiently complex or unique context to preclude all explanations other than copying); *Guzman*, 808 F.3d at 1040 (discussed above); *Clanton v. UMG Recordings, Inc.*, 556 F. Supp. 3d 322, 330 (S.D.N.Y. 2021) (lyrics "I'm just tryin' to make my mama proud" in "approximately the same cadence" in each song's chorus, plus call-and-response phrasing, 2/4 time signature, and sustained organ note opening were insufficient to establish striking similarity); *Boone v. Jackson*, 206 Fed. App'x 30, 32 (2d Cir. 2006) (position of phrase "holla back" in the hook, "eighth-note, eighth-note, quarter-note syncopation" of phrase, use of phrase as a call-and-response element, and instrumentation were insufficient). The meager claimed similarities, their presence in prior art, and the numerous differences preclude a finding of striking similarity.

---

[3] In the first phase of discovery, Dr. Stewart and Mr. Bricklin also identified fragmentary similarities elsewhere in the songs, including a few of their chords and a four-on-the-floor beat. Facts 59, 61, 66. However, they no longer appear to claim that these similarities are evidence of copying. Facts 65, 72. Regardless, the fragmentary claimed similarities in aspects of the songs' overall different chord progressions and drum patterns are extremely commonplace and therefore not remotely evidence of copying. Facts 58-64, 66-71; *see, e.g.*, McRae, 968 F. Supp. at 566.

> **(iii)    Plaintiff Cannot Create a Genuine Dispute as to Striking Similarity by Relying on Its Experts' Ipse Dixit**

In light of the uncontroverted facts discussed above, Plaintiff's experts' conclusory assertions do not raise a genuine dispute as to striking similarity. *Stabile*, 137 F. Supp. 3d at 1189 (expert opinions that are "conclusory or contradictory, [or] fail[] to assert that independent creation was not possible" cannot establish striking similarity; summary judgment granted).

> **a.    Dr. Stewart's Conclusory Opinions Do Not Establish Striking Similarity**

Dr. Stewart claims in his 2023 Declaration merely that the songs' hooks are "so similar that independent creation is highly unlikely." Fact 81. But "highly unlikely" or "extremely unlikely" are insufficient to establish striking similarity. *Stabile*, 137 F. Supp. 3d at 1189; *Biani*, 153 F.4th at 963 (independent creation must be "*virtually impossible*"); *Selle*, 741 F.2d at 905 (expert affidavit that independent creation was "extremely unlikely" insufficient to establish striking similarity) (quoting *Scholz Homes, Inc. v. Maddox*, 379 F.2d 84, 86 (6th Cir. 1967)); 4 NIMMER ON COPYRIGHT § 13D.07 (same; striking similarity requires more than "high likelihood" of copying). And while Dr. Stewart briefly changed his testimony in his 2026 deposition, claiming that he "does[n't] think it's possible that these were created independently," he then testified that "impossible" to him merely means "highly unlikely." Fact 82.

In any event, Dr. Stewart's opinions are conclusory and should be disregarded. His opinions regarding copying are based on his claims that the hooks of JV and SS are "so similar" and more similar to each other than to prior art. Fact 81. But claiming that two works are very similar does not establish that the similarities can only be the result of copying as opposed to independent creation. *Stabile*, 137 F. Supp. 3d at 1189 (expert testimony that designs are "'nearly identical' … does not amount to a genuine assertion of *striking* similarity"); *id.* ("The mere existence of multiple similarities is

insufficient to meet the test."); _Selle_, 741 F.2d at 903 ("'Striking similarity' is not merely a function of the number of identical notes that appear in both compositions."); _cf._ _Gaste v. Kaiserman_, 863 F.2d 1061, 1068 (2d Cir. 1988) (plaintiff raised genuine dispute as to striking similarity where songs included a "particular method of modulation" that was "in the same place" and was unique; plaintiff's expert had "never seen this … modulation in any other compositions").

Furthermore, Dr. Stewart's claim that JV and SS are more similar to each other than to works of prior art does not establish that SS necessarily must have copied JV. The claimed similarities are admittedly not unique and found in other works, and nowhere does Dr. Stewart establish that it would be "impossible" for these bits and pieces to be present unless they were copied from JV. _See_ above at 16-19.

Dr. Stewart also discounts differences between the hooks of JV and SS, claiming that some of the _different_ pitches (_i.e._, 7-6-6-5-4-4-3 in JV and 7-5-5-5-4-4-3-3) are less significant because in JV, those pitches are "passing tones," or tones that are not part of the underlying chord. Fact 90. But claiming that the _differences_ are "insignificant" does not establish that the _similarities_ can only be the result of copying. Moreover, a difference in little more than a single passing tone can preclude striking similarity. _Schultz v. Holmes_, 264 F.2d 942, 944 n.2 (9th Cir. 1959) (holding copying not established where plaintiff's and defendants' melodies differed by "use of a different passing tone" and fact that plaintiff's song included a rest where defendants' song did not). And there are more significant differences here than two "passing tones." _See_ above at 17.

**b.    Mr. Bricklin's Opinions Are Likewise Inadmissible to Establish Striking Similarity**

Plaintiff also cannot rely on Mr. Bricklin to raise a genuine dispute as to striking similarity. His 2023 Declaration includes the statement that the "melody lines of the two 'hooks,' with the exception of the length of the last note … _**are strikingly similar**_." Fact 83. But that is an inadmissible legal conclusion. _See_ _Nationwide Transport Fin._

21

*v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008) (excluding expert testimony that amounted to legal conclusions).

Furthermore, Mr. Bricklin's opinions are pure ipse dixit.  He simply identifies claimed similarities and asserts they are strikingly similar without explaining *why* those similarities completely foreclose the possibility of independent creation. Accordingly, as with Dr. Stewart's opinions, Mr. Bricklin's opinions are conclusory and should be disregarded.   *See* above at 20-21; *Stabile*, 137 F. Supp. 3d at 1189 (expert testimony that designs are "'nearly identical' … does not amount to a genuine assertion of *striking* similarity").

Mr. Bricklin's opinions should also be excluded because they are not based on reliable principles and methods.  He testified that he does not know how to read music and when asked to identify the pitches of hook melodies at issue, he identified pitches that even Dr. Stewart admits were incorrect.  Facts 85-89, 91-92.  Furthermore, Mr. Bricklin's opinions are based on audio excerpts of JV and SS that *he digitally manipulated* in order to make them sound similar.  Fact 93.  And he never explains how his digitally manipulated audio excerpts could conclusively establish copying and rule out the possibility of independent creation.  Finally, he freely admits that his opinion is based merely on "contrast[ing] and compar[ing] the two pieces of audio and the composition[s]," and he did not research or analyze whether the similarities appear in other works.  Fact 94.  Mr. Bricklin's opinions are thus subjective and unreliable, and in no way sufficient to establish that all explanations other than copying are virtually impossible. *Biani*, 153 F.4th at 962; *Clover v. Tesfaye*, No. 20-55861, 2021 WL 4705512 at *1 (9th Cir. Oct. 8, 2021) (affirming grant of summary judgment on copying notwithstanding expert report and testimony); *Stabile*, 137 F. Supp. 3d at 1189; *McRae*, 968 F. Supp. at 566-67; *Selle*, 741 F.2d at 899 (plaintiff's uncontroverted expert testimony that two songs "could not have been written independently of one another" insufficient to establish striking similarity; expert failed

22

to rule out all explanations other than copying, including prior common source). Accordingly, Mr. Bricklin's opinions are insufficient to establish striking similarity.

Because Plaintiff has conceded that it cannot establish access, and Plaintiff's expert evidence cannot satisfy the standard for striking similarity, Plaintiff's assertions fail as a matter of law.

### (3)   Plaintiff's Admittedly Insufficient Access Evidence Cannot Support a Finding of Striking Similarity

Finally, Plaintiff apparently intends to "support" its claim of striking similarity with "other facts regarding Plaintiff's song's public availability and Defendants' creative process." May 27, 2026, Stip. (Doc. 202) at 2 ¶ 3(c).   But Plaintiff has formally withdrawn its access theories, relying only on its claim of striking similarity. *See* Facts 95-98.  Plaintiff cannot salvage its deficient showing of striking similarity by combining it with a deficient showing of access.  To the contrary, the failure to establish either a reasonable possibility of access or striking similarity is fatal to a copyright infringement claim.  *See, e.g.*, Smith v. Weeknd, No. CV 19-2507, 2020 WL 4932074 at *5-*7 (C.D. Cal. July 22, 2020) (granting summary judgment where plaintiff showed only a "bare possibility of access" and could not establish striking similarity), *aff'd sub nom.* Clover v. Tesfaye, 2021 WL 4705512; Loomis, 836 F.3d at 994-995, 995 n.1.

As for "Defendants' creative process," Plaintiff intends to argue that Mx. Smith and Mr. Napier steal music.  As support for that outlandish claim, Plaintiff will argue that a dozen years ago, someone asserted a claim as to another of their songs, *Stay With Me*, and that claim was settled.  But claims are "merely an accusation of conduct and not, of course, proof that the conduct alleged occurred," and settlements are "not probative of whether the defendant committed the prior conduct, much less whether he committed the conduct in question." United States v. Bailey, 696 F.3d 794, 800-01 (9th Cir. 2012) (There is "no logical relevancy to admitting this type of evidence."). The prior claim and its settlement are not only irrelevant; they are textbook

inadmissible character evidence.  *See* Fed. R. Evid. 401, 404(a)(1); *SA Music LLC v. Apple, Inc.*, 592 F. Supp. 3d 869, 885 (N.D. Cal. 2022) (explaining that Rule 404 bars use of evidence of past infringement to show that defendant has "a propensity to infringe"); *Loussier v. Universal Music Grp., Inc.*, No. 02CV2447KMW, 2005 WL 5644420 at *1, *3 (S.D.N.Y. Aug. 30, 2005) (excluding evidence of "unrelated past copyright actions, a former judgment in a copyright action, claim letters alleging copyright infringement, and settlements of certain copyright claims" under Fed. R. Evid. 404).

Plaintiff also apparently will raise that Mr. Napier testified his team members sometimes send him music.  But there is no evidence that anyone sent JV to Mr. Napier or any other songwriter of SS, and again, Plaintiff has conceded that it cannot raise a genuine dispute as to access through a chain of individuals or otherwise.  Facts 95-98; *see* above at 6-8.

Because Plaintiff cannot raise an inference of copying through striking similarity or access, it cannot satisfy a required element of its copyright infringement claim—that copying in fact occurred.  For that reason alone, Plaintiff's copyright infringement claim fails as a matter of law.

**(b)    Plaintiff's Claim Fails Because Unlicensed Samples Pervade JV, Including the Parts Containing the Allegedly Copied Hook**

Plaintiff's copyright infringement claim also fails for the independent reason that the portions of JV that contain the allegedly infringed hook are not protected by Plaintiff's claimed copyright because they incorporate unauthorized samples.

Section 103(a) of the Copyright Act provides that "protection for a work employing preexisting material in which copyright subsists does not extend to any part of the work in which such material has been used unlawfully."  17 U.S.C. § 103(a).  This Section unambiguously denies copyright protection to "any part of the [new] work" that unlawfully uses a prior work.  *Id.*; *see also Sobhani v. @Radical.Media Inc.*, 257 F. Supp. 2d 1234, 1239-41 (C.D. Cal. 2003) (copyright

24

protection denied to unauthorized derivative works in which the preexisting work "*tends to pervade* the entire derivative work") (quoting 1 M. NIMMER & D. NIMMER, NIMMER ON COPYRIGHT at § 3.01 (1986), quoted language now at 1 NIMMER ON COPYRIGHT § 3.06); *Anderson v. Stallone*, No. 87-0592, 1989 WL 206431 at *8-*9 (C.D. Cal. Apr. 25, 1989); *Eden Toys, Inc. v. Florelee Undergarment Co.*, 697 F.2d 27, 34 n.6 (2d Cir. 1982); *Dynamic Solutions, Inc. v. Planning & Control*, 646 F. Supp. 1329, 1340 (S.D.N.Y. 1986); *Merchant Transaction Systems, Inc. v. Nelcela, Inc.*, No. CV 02-1954, 2009 WL 1835109 at *9 (D. Ariz. June 25, 2009); *Schrock v. Learning Curve Int'l, Inc.*, 586 F.3d 513, 518 (7th Cir. 2009) ("The Copyright Act specifically grants the author of a derivative work copyright protection in the incremental original expression he contributes *as long as the derivative work does not infringe the underlying work*.") (emphasis added) (citing *Pickett v. Prince*, 207 F.3d 402, 407 (7th Cir. 2000) (J. Posner)); 1 NIMMER ON COPYRIGHT § 3.06.

JV contains two infringing samples that pervade the choruses of JV and other parts that contain the purported "hook" with the allegedly similar elements. Plaintiff accordingly lacks copyright protection over the elements in JV's alleged hook.

### (1)    JV Unlawfully Infringes Two Prior Sound Recordings and Musical Compositions

It is undisputed that JV samples at least two other sound recordings and, by doing so, JV copies the protected musical compositions embodied in the samples of those other sound recordings. One sample was digitally copied from a sound recording of a song called *The Ha Dance* by Masters at Work (which in turn appears to have sampled another song called *Seduction*). Facts 99, 103. It is a repeated, full-measure vocal part consisting of ten consecutive notes to which the lyrics "bwele-boo bwe-le boo bwe-le ah ha" are sung. Facts 107-110. Defendants' unrebutted expert evidence establishes that the lyrics and melodic elements in this sample form an original musical design that is copied verbatim in the JV musical composition. Facts

25

111-112; *Feist Pubs., Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 345 (1991) ("To qualify for copyright protection, a work must be original to the author.").

JV also samples the sound recording of the Lyn Collins song *Think (About It)*. Fact 113. That sample is two measures long and consists of a complex combination of many elements: a vocal ad lib with the lyrics "Yeah yah ha ha for real Woo! Don't," seven chords played on the organ, eight notes played on a bass guitar, a sixteenth-note tambourine pattern, and a drum beat. Facts 118-123. Again, Defendants' unrebutted expert evidence confirms that these elements form an original design that JV copies verbatim. Facts 123-124.

Both *The Ha Dance* and *Think (About It)* are copyrighted musical compositions not owned by Plaintiff. Facts 100-101, 103-105, 114-116. Neither Plaintiff, the authors of JV, nor anyone else obtained a license or permission to sample *The Ha Dance* or *Think (About It)*, or to incorporate their respective musical compositions in JV. Facts 102, 106, 117. Accordingly, JV is an unauthorized derivative work of at least two preexisting musical compositions. *See Sobhani*, 257 F. Supp. 2d at 1238 (explaining that, for purposes of Section 103, a "'derivative work' … is one which 'would be considered an infringing work if the material which it has derived from a preexisting work had been taken without the consent of the copyright proprietor of such preexisting work'") (quoting *Mirage Editions, Inc. v. Albuquerque A.R.T. Co.*, 856 F.2d 1341 (9th Cir. 1988)).

**(2)    The Infringing Samples Pervade JV, Including All Parts Containing the Hook**

Furthermore, the infringing samples in JV "tend[] to pervade" JV. *Sobhani*, 257 F. Supp. 2d at 1240. The sample from *The Ha Dance* plays throughout the entirety of the introduction of JV, the entirety of every one of its choruses, and in the pre-chorus, re-intro, and breakdown sections. Facts 126-127, 129-132. In total, the sample from *The Ha Dance* is part of JV's underlying music for 3 minutes and 10 seconds of JV's total duration of 4 minutes and 33 seconds. Facts 125, 127-128. The

sample from *Think (About It)* likewise plays throughout the entirety of every chorus of JV and its breakdown, for a total of 2 minutes and 18 seconds. Facts 133-137.

Each of these unlicensed samples plays continuously through most of JV, including its most important sections. Facts 127-138, 142. The samples are integral to the overall arrangement of JV, which involves adding and taking away layers of parts (including the samples) to create its musical effect. Facts 140-141. It is accordingly beyond dispute that these samples "tend[] to pervade" JV. *Sobhani*, 257 F. Supp. 2d at 1240.

Furthermore, it is undisputed that *both* samples play continuously throughout all "parts" of JV that include the allegedly infringed hook at issue in the lawsuit, *i.e.*, its choruses and all but a few seconds of the breakdown section that precedes chorus 3. 17 U.S.C. § 103(a); Facts 126-138. Indeed, the allegedly infringed hook never occurs once in JV without being accompanied by *both* unlicensed samples. Fact 139. Accordingly, under the plain language of the Copyright Act, Plaintiff cannot claim copyright protection in the hook of JV because it occurs in "part[s] of the work in which [the preexisting material] has been used unlawfully." 17 U.S.C. § 103(a).

Because Plaintiff's copyright infringement claim is based on portions of JV that are in turn based on and utilize unauthorized infringing samples, Plaintiff cannot claim copyright protection in those portions, and Plaintiff's claim fails as a matter of law.

**5.    PLAINTIFF'S ANALYSIS**

    **(a)    The Hooks are Striking Similar and Not Independently Created; there is an Expert Musicological Dispute for a Jury on this Issue**

Whether for the substantial similarity or striking similarity analysis, the expert's task is to analyze the compositions at issue and determine the similarities and differences. *Swirsky v. Carey*, 376 F.3d 841, 844-45 (9th Cir. 2004)

Defendants repeatedly suggest that Plaintiff and its experts have not established that the "particular" arrangement in Plaintiff's song appears in Defendants' song, and that Plaintiff's expert's opinions that independent creation is precluded are conclusory.

27

This is itself a conclusory and false assertion which simply ignores hundreds of pages of analysis and testimony. This response details the factual basis for Plaintiff's experts' opinions.

The reality is that the defense experts have conducted a methodologically egregious analysis more akin to advocacy than objective evaluation. The flaws in their opinion and analyses are addressed below in detail in an evidentiary request to strike and disqualify them. At a minimum, the striking similarity and independent creation disputes are expert musicological disputes which a jury should resolve.

On a musicological level, the building blocks of the JV and SS hooks are highly similar and exhibit virtual identity when properly considered in their selection and arrangement, instead of improperly filtering out and examining elements in isolation as the defense experts improperly do.

Plaintiff's expert Dr. Alexander Stewart opines in his report, applying selection and arrangement, that the hooks of each song:

> "…are nearly identical in melodic contour, rhythm, and metric placement and the pitch sequences are very similar. While the pitch sequences are not identical, the identity of these passages is also defined by their identical lyrics, rhythmic durations, metric placement and structural significance."

Fact 179.

Dr. Stewart has stated that in his expert opinion, that the pieces as a whole are virtually identical and that independent creation of the two hooks is precluded. Facts 188-90. Former Professor Bricklin[4] agrees that independent creation is virtually impossible and that similarities exhibited by two hooks are not coincidence. Id.

Plaintiff now addresses the compositional elements that Plaintiff asserts are shared by the selection and arrangement of the two hooks which are strking simliar..

---

[4]    Recently medically retired.

**(1)    The Pitch Sequences of the Songs are the Essentially the Same**

Plaintiff's experts have identified the key of Defendants' song as F minor, and the key of Plaintiff's song as G minor. Facts 24-25.

"Melody is a single line of music that consists of a succession (*i.e.*, a sequence or order) of pitches and the rhythmic durations of those pitches within a melodic phrase structure." Fact 20. For instance, a pitch sequence describes the order in which the pitches appear in a song. *Id.* A note combines pitch with a duration. Fact 21. Using a pitch sequence which isolates the ordering of pitches is valid tool for musicological analysis. Fact 167.

The melodic contour of a song describes what pitch the sequence starts on, on what pitch it ends, and its overall direction of movement. Fact 175. (stating that melodic contour is concerned with direction, instead of filtering out each individual step.)

Dr. Stewart provides the following pitch sequence of each song (in F minor for Plaintiff, and G minor for Defendant):

**Minor Key (VI-VII-i-III schema)**

**SS**     75554433

**JV**     7665443

Facts 165-166 (green emphasis added). The only pitches that differ between the songs are the second and third (with the additional exception that Defendants' hook has an additional pitch at the end which merely repeats the 3 at the end of both pitch sequences).

However, the songs' pitch sequences are even more similar than the comparison above conveys. In reality, the second and third pitches in both hooks, the 5s and 6s, barely differ at all because they are "passing" notes or tones. Facts 168-74. A passing note is a nonessential tone interposed between two essential tones to ensure a smooth transition from one note to the next. *Id.* The duration of the tone is usually very brief. *Id.* Passing tones are often quick, not pronounced, and lack qualitative musicological

29

significance. *Id.* In addition, the pitch of a passing tone is regarded as unessential to the phrase. *Id.*

Here, in the pitch sequence for Plaintiff's song illustrated above, the second and third pitches identified as 6s are passing notes which flow into the 5. They are just an eighth beat long and are not pronounced. The notated 6s are also in an unessential tone in this key. Facts 168-74.

Dr. Stewart explained in his deposition that SS also, in fact, quickly passes through 6 when going from 7 to 5. Fact 174. This is because the way the first note of SS is sung slides downward from 7 to the 5. *Id.* Stewart explained that many such slight nuances cannot be "readily captured" in notation. *Id.* ("I did not and neither did Dr. Ferrara [include notation in the reports] because it doesn't really land on six. It passes through it, which kind of what happens in J.V. too, that it passes through six except that it takes a little longer to do it."). This is even pictured on defense expert Geluso's spectrograph. Fact 174.

***The result is that when listening to the song, the first four sung notes in both hooks are virtually identical, even if they are notated slightly differently on paper***. Facts 178-190. This is an example of where paper representation of musical elements conveys a minor technical difference—which Defendants are artificially trying to magnify—but does not convey how musicologically insignificant that difference is. Facts 188-89. This is the province of expert testimony and the jury. *Swirsky*, 376 F.3d at 847-48 (stating that paper analysis can obscure significance of similarities by excluding elements from selection and arrangement analysis). Not surprisingly, Defendants' expert reports attempted to entirely ignore passing notes, because it undermined their attempt to magnify minor differences.

When the pitch sequence diagram from above is again revisited, now with counsel notating the passing notes in Plaintiff's song, and the quick slide through 6 in Defendant's song, it can be seen that the sequence of the hook in the chorus is more or less identical:

30

**Minor Key (VI-VII-i-III schema)**

**SS**    75554433

**JV**    7>>5443

Professor Bricklin observes that with the exception of the insignificant passing notes, the melodic line is "virtually the same." Facts 188-89.

***This is the musicological explanation of why the songs sound the same***, which the defense experts are trying to obscure. They obscure this overwhelming similarity by using paper notation and placing a big red strike for any miniscule difference, ignoring that the differences they are either artificial or insignificant.

**(2)    The Melodic Contours of the Songs are the Essentially the Same and Extremely Unique**

The hooks of the two songs start at 7, end at 3, and at all points continue down to 3, never to go back up. Facts 176-77. This is a near identical contour similarity between the songs. *Id.* Defendant' expert Dr. Ferrara admits that the melodic contours of the two hooks are similar. *Id.* Moreover, going from 7 to 3 is ***not*** a common melodic contour which even Dr. Ferrara admits. Facts 160, 177. This is highly significant and unique. This contour appears nowhere in the prior art that Plaintiff or Defendants have collected, in a similar aesthetic context, only in these two songs. It is like a fingerprint linking the songs.

Even Dr. Ferrara agrees that the melodic lines are overall similar; it is not as if Plaintiff's experts are out in left field. Fact 176. Of course, Dr. Ferrara only makes this significant admission on the very last page of his report, after claiming for over one hundred pages there were no real similarities between the songs. Even then, while making this disclosure, Dr. Ferrara conclusorily tried to claim that these melodic and rhythmic similarities were commonplace and in the prior art. Fact 176. However, he was forced to admit at his deposition that they are uncommon, Fact 177, and they nowhere appear in the prior art in any remotely similar aesthetic context or arrangement. *Id.*; Fact 160, Fact 163 (Stewart testifying that the shared pitch sequence,

31

coupled with the words dancing with a stranger, as well as the accompanying melodic rhythmic configuration, is "unique" and not in the prior art).

### (3)   The Rhythm and Metric Placement of the Lyrics are Very Similar in the Two Hooks

With the similarity of the (a) hook, and (b) pitches and the melodic contour having been established, Plaintiff now turns to the rhythm of the song. Note that, as a starting point, Defendants' expert Ferrara admits there are similarities between the rhythm of the two hooks. Fact 176.

Below is a transcription of the hooks of each song incorporating rhythm and pitches (SS is transposed, a foundational musicological analysis tool to compare composition):



Fact 178. Significantly, the metric placement of the beginning of each syllable of the lyrics is identical in both songs. *Id.* The lyrics and placement anchor the rhythm to a large degree, especially where there is only a vocal melody. *Id.;* Fact 180.

Dr. Stewart states:

> "the same syllables are emphasized with longer durations "Danc-" and "strang-" The first syllable "Danc-" is sustained the same duration of one beat (placed as an anticipation of beat one on the "and" of four) and "stran-" is treated similarly lasting a full beat and placed on beat four). All the other syllables are placed identically as a series of eighth notes."

Facts 180-84

Defendants in their motion, and during Dr. Stewart's depositions, have tried to exaggerate very minor differences in the rhythm of the hook to create the impression that that the overall rhythm between the two hooks is different. For instance,

32

defendants claim that it is significant that the first note of Defendants' song's hook is twice as long as the first note of Plaintiff's hook. Fact 45. Dr. Stewart pointed out in response that because the metric placement of the first lyric syllable in both hooks is the same, and both syllables are sung for the same duration and connect to the prior pitch, this difference was of minimal significance and virtually unnoticeable in their actual aesthetic context. Response to Fact 45; Fact 182. This is a perfect example of Defendants attempting to magnify an insignificant difference, improperly filtering out the element in isolation, to obscure the similarity of the arrangement.

Importantly, Defendants' expert Dr. Ferrara does not dispute that in both songs that the placement of each syllable is the same. Fact 179. He admits, only under cross examination, this is a similarity between the two songs.

Defense counsel tried repeatedly to get Dr. Stewart to state that minor offsets between the rhythms were significant, to which he correctly responded:

> "But basically what is happening here is that you have a very similar pitch sequence and a very similar rhythmic configuration. The only difference being this momentary passing through passing tones. The significant aspects of the rhythm and the significant aspects of the pitch sequence are the same, seven working its way down to three. And that's a distinctive pitch sequence. It is not at all common.

Fact 177 (citing to pages 97-98 in Stewart 2023 deposition).

In response to the half beat offset of a note in the rhythm, Dr. Stewart also stated:

> "I think you are distorting the similarity here where you have overall the lyrics are set to the same rhythm in both of these hooks and the only difference -- and the pitch sequences are almost the same but slightly offset. The words and the rhythms remain virtually identical between both."

Fact 188. Dr. Stewart also testified in this vein:

> "[This analysis] is missing the overall significance of the similarity in these two hooks. The fact that the rhythm -- overall rhythm is very, very close to being the same and the overall pitch sequence

33

is very close to being the same. So just because one pitch is a half a beat displaced one way or another does not diminish the similarity here."

Fact 189.

Former Professor Bricklin, who does not read or transcribe music, but analyzes the composition of songs using the recordings as they were actually composed, testified:

> The first part is obvious to both of us; correct? The lyric is identical. So I -- I say that. I mean the lyrics. So you did amend your question to say melodically. With the exception of the passing note, which by the way I find there are singers that have a lot of trouble with passing notes. That's why they call them passing notes sometime. But, anyway, what I'm saying to you is the notes are virtually the same."

Fact 189. Professor Bricklin's report stated of the overall similarity:

> 20…. When comparing the melody lines of the two "hooks," with the exception of the length of the last note (JV extends longer than SS), they are strikingly similar. There are two passing notes that differ, but it is inconsequential, as they are part of the descending melody line. The lyric and melody of the "hook" are virtually identical when played at the same tempo and key.
>
> …
>
> 29. Defendants' claims that SS and JV's hooks are different because of a mere passing tone *is akin to taking the recipe for Coca Cola, putting in one less "bubble," and claiming your recipe is different*.

Fact 189 (citing to Bricklin Rebuttal) (emphasis added).

Defendants' motion attempts to seize on minor differences to obscure that these are same pieces of music.

**(4)    There is, at a Minimum, A Expert Dispute for the Jury on Strikingly Similarity and Independent Creation**

At the end of the day, as with the substantial similarity dispute, there are two

34

sets of experts who strongly disagree on the musicological facts. Plaintiff, for its part, strongly contends that the defense experts' methodology is entirely inappropriate and should be stricken. However, whether they are stricken or not, this is exactly the type of extrinsic expert dispute which <u>Swirsky</u> and the prior Ninth Circuit ruling in this case have previously ruled should be determined by a jury, not a Court.

Plaintiff's experts have shown that the particular arrangement of the lyrics and vocal melody in Plaintiff's hook appears in strikingly similar form in Defendants' song. The lyrics are the same, the pitch sequence is highly similar when properly accounting for the passing notes in JV, the metric placement of the syllables is virtually the same, and the rhythm is extremely close.

The defense experts contest this by improperly filtering out specific bits and pieces of Plaintiff's song, and claiming in isolation that a particular bit or piece is different, without addressing its impact on the overall selection and arrangement. This is not a proper methodology for selection and arrangement claims, especially considering that the defense experts refuse to objectively address the similarities between the hooks. Their conclusion that the songs are different is dicated, quite intentionally, by their stunted analysis.

Importantly, despite the defense experts claiming that the hooks have no similarities and that any shared similarities are coincidence because the expression at issue is allegedly commonplace, ***there are no works in the prior art in history of the world which have anything close to the selection and arrangement shared by both SS and JV***. Fact 147. They want the Court to believe it is a coincidence that Plaintiff's song with a unique hook never seen before in history is publicly released in May 2018, and then 2.5 months later Defendants author essentially the same hook.

The contour of the pitch sequence shared by the hooks is extremely uncommon and Defendants have identified no valid, relevant prior art that even uses it. Facts 147, 160, Response to Facts 31-33.

It is not an accident that this rare bit of expression appears in both songs in virtually identical aesthetic contexts for the first time in history a couple months apart; it is a fingerprint linking them. *Gaste v. Kaiserman*, 863 F.2d 1061, 1068 (2d Cir. 1988) (plaintiff raised genuine dispute as to striking similarity where songs included a "particular method of modulation" that was "in the same place" and was unique; plaintiff's expert had "never seen this … modulation in any other compositions"). The exact same scenario in *Gaste* is present here.

Indeed, Defendants' motion is well aware that this unique melodic contour is a serious problem for them. Their motion spends considerable time attempting to mislead the Court by claiming that four of the prior art songs that Dr. Ferrara identified also have this melodic contour (Regina, Jon Burr, Jael, Kim Herte). The problem with this is that (1) Dr. Ferrara arbitrarily picked favorable pitch sequences without doing a key analysis, (2) even if Ferrara's pitch sequences are accepted none of them have the same contour, and (3) it is illegitimate to isolate a pitch sequence when this prior art is otherwise completely dissimilar to JV and SS. Defendants' experts improperly filtered out the contour of these prior art songs (misrepresenting the contour itself), ignoring that the contours of these songs appear in totally different aesthetic contexts.

It is for a jury to determine if Plaintiff's experts' extrinsic analysis is credible, or whether Defendants' analysis is correct. This is not a case with a conclusory or meritless claim of similarity. There are real issues only a jury can resolve.

**(b)  Defendants' Evidence and Arguments are Irrelevant and the Methodologies used by the Defense Experts are Illegitimate and their Opinions Should be Stricken under Rule 702**

**(1)  The Defense Experts' Extrinsic Musicological Analysis Methodology is Not Legitimate**

Whether for the substantial similarity or striking similarity analysis, the expert's task is to analyze the compositions at issue and determine the similarities and differences. *Swirsky*, 376 F.3d at 844-45. The expert must then identify if the

similarities and differences are significant or not as compared to the expression at issue. *Id.* Dr. Ferrara's own report states as much. *See* Ex. 2 to Lamm Declaration, at ¶3. Dr. Stewart agrees. Stewart 2026 Decl., at ¶7-13.

Needless to say, and as the name "striking similarity" suggests, analyzing the similarities the two works share, as well as the differences, is the central point of this analysis.

If an expert only examines differences, they are not conducting an objective, rigorous analysis. *See Shaw v. Lindheim*, 919 F.2d 1353, 1357 (9th Cir. 1990) (stating "no plagiarist can excuse the wrong by showing how much of his work he did not pirate"); *see also* Nimmer, § 13.03[B][1][a]). Under Fed. RE 702(c, d), expert testimony and opinions must be the product of reliable principles and methods, and and a reliable application of the same.

Any analysis that focuses only on differences is going to be at best misleading, and omits critical context needed by the factfinder, in violation of Fed. RE 702(c, d).

The problem is that Dr. Ferrara's analysis, and Dr. Sadoff's more limited analysis, is that their substantial similarity/striking similarity analysis is not methodologically sound and should be stricken. Dr. Ferrara and Dr. Sadoff entirely disregards their obligations as an objective expert to analyze ***both*** the similarities and differences in these works in the process of coming to his opinions. Ferrara and Sadoff blatantly and repeatedly throughout this case refuses to engage in a similarity analysis of the JV and SS hooks, instead only describing isolated and filtered differences out of context. Ferrara's report in particular one of advocacy, not objective analysis.

Ferrara's initial report in this matter perfectly illustrates his disregard of proper methodology. *See generally* Ex. 1 to Decl. of Eric Lamm (Ferrara initial report); *see also* Ex. 5 to Decl. of Eric Lamm (Sadoff rebuttal report). The reports contain no serious attempt to address, explain, quantify, or categorize the overall similarities between the two pieces of expression, nor explain why the pieces exhibit obvious similarities.

His report in each section filters out and isolates pieces of expression, without regard to their overall context in the arrangement of the hooks, invariably finding that each element he isolated is wildly different from SS. Thus, he comes to the remarkable and frankly hyperbolic conclusion that "there are no significant structural, harmonic, rhythmic, melodic, or lyrical similarities between JV and SS." Ex. 1 to Decl. of Eric Lamm at ¶175. Sadoff likewise did not attempt to assess similarity, instead focusing only on differences, finally concluding "In my analysis of SS and JV, I found no significant similarities." Ex. 5 to Decl. of Eric Lamm, at p.2  Indeed, reading Ferrara and Sadoff's opinions gives the impression they cannot fathom why the two works are even the subject of litigation in the first place; of course, this is a deliberate tactic and should be recognized for what it is.

This type of methodology and conclusion, given the obvious similarities between the hooks, indicates that Ferrara is acting as a particularly aggressive and nonobjective advocate. Dr. Stewart notes that this is not proper methodology and is clearly meant to emphasize miniscule differences while obscuring just how similar the two hooks are. Stewart 2026 Decl., at ¶7-13.

The sole acknowledgement that there might be some similarity between the two works is a vague reference by Ferrara to melodic and rhythmic similarities in the second to last paragraph of his report, in paragraph 178 (page 111) of his report, which he does not bother to analyze. Ex. 1 to Decl. of Eric Lamm. This takes "burying the lede" to a whole new level.

Again, this is not a proper methodology and Ferrara and Sadoff's conclusory claims that there are no similarities between the songs is a poor excuse to avoid conducting an actual analysis. Stewart 2026 Decl., at ¶7-13. Contrast Ferrara's nonexistent similarity analysis between JV and SS, to Dr. Ferrara's extensive and illegitimate attempt (addressed *infra*) to use prior art to undermine Plaintiff's hook. Dr. Ferrara's initial report spent pages 46 to 111 breaking down Plaintiff's hook and

38

claiming that isolated bits and pieces of 49 songs in the prior art are similar to bits of Plaintiff's hook.

Setting aside that Ferrara's prior analysis is methodologically invalid, is the Court to understand that Dr. Ferrara could analyze 49 other songs and conclude they had the barest of similarities to Plaintiff's hook (all of which he claimed were very important), but that he was unable to divine any similarities between JV and SS? When Defendants attempted to make this argument to the Ninth Circuit panel, it was curtly observed that none of this prior art Ferrara has cobbled together is anywhere near as similar to JV's hook as is SS's hook. Ex. 18 to Fluehr Decl. – Audio of Oral Argument, at minute 27:49; https://www.youtube.com/watch?v=9E7EYxwkQjc. Ferrara is doing a one-sided analysis to attempt to obscure the overwhelmingly similar nature of these two pieces.

Dr. Ferrara was confronted on his failure to analyze similarities at his most recent deposition in 2026; yet again, he deliberately avoided similarities, only listing alleged differences. Exhibit 19 to Fluehr Declaration – 2026 Ferrara Deposition, at p.50-57. It was then pointed out that he had not answered the question, and he listed a few isolated similarities but only so he could loop back to asserting the songs were entirely different. Id. at p.58-60. He closed by stating "I did mention similarities. It may not seem like I was doing good because there aren't that many that line up." Id. at p.59-60.

This answer about the works not "lining up" also points to additional methodological flaws with Ferrara's analysis. Ferrara is not considering the hooks as as a whole as required by *Swirsky*, but is instead striking and removing any expression which he claims does not "line up" with transcriptions. His reports contain numerous examples of the same, and this very motion relies on this exact tactic. Joint Motion Part 4(a)(2)(ii); Fact 43. The Ninth Circuit has pointed out that this line up and strike method is not a proper objective musicological methodology. *Swirsky*, 376 F.3d at 847-48 ("Objective analysis of music under the extrinsic test cannot mean that a court may

simply compare the numerical representations of pitch sequences and the visual representations of notes to determine that two choruses are not substantially similar ….”).  *Swirsky* has also observed that paper charting of songs can obscure similarities by filtering out important context. *Id.* at 847.

Ferrara's analysis and methodology is additionally improper because he derives his opinion admittedly using filtering, basically considering elements in isolation and excluding any similarities from his analysis that he unilaterally deems "commonplace" and unprotected. *See* Ex. 1 to Lamm Decl, at ¶30-31. This Court and the Ninth Circuit have ruled that applying filtering in selection and arrangement cases is not proper, and that even unprotected elements must be considered in selection and arrangement cases. *See Hanagami*, 85 F. 4th at 942. Dr. Ferrara reached his conclusions using this impermissible methodology. Note that Ferrara concluded on the basis of filtering that "there are no significant lyrical similarities between JV and SS," ***despite the fact that the lyrics in the hooks are identical***. Ex. 1 to Lamm Decl., at ¶31.

Ferrara and Sadoff's refusal, since the very beginning of the case, to follow the proper methodology disqualifies them.

### (2)   Defense Expert's Prior Art Methodology is Not Legitimate

Dr. Ferrara admits that his opinion the songs are not strikingly similar is heavily reliant on his prior art analysis, in which he claims that JV's hook is commonplace. Fluehr Decl. Ex. 19 - 2026 Ferrara Deposition, at p.27. The methodology of his prior art analysis has no musicological basis and should be stricken.

This is a selection and arrangement claim. A selection and arrangement claim exists where the proponent is asserting that an arrangement or combination of musical elements forms an original work that was copied. Defendants admit that the selection and arrangement of the JV hook does not appear in the prior art. Fact 160. Doc. No. 118-3, at p.4:-8-9 ("no one has identified prior art with the exact selection and arrangement of unprotectable elements found in JV"). Indeed, this Court also previously found the same, as did the Ninth Circuit. Fact 160.

Instead, to try to manufacture evidence that Plaintiff's hook is commonplace, defense expert Dr. Ferrara separated out elements from Plaintiff's hook, isolating them from their arrangement in Plaintiff's hook, to compare them to the prior art. Ferrara claims he found in 49 prior songs isolated parts he alleges are similar to parts of Plaintiff's hook. He thus claims that when all these isolated and filtered elements from these 49 songs are considered together, that Plaintiff's hook is commonplace. Ferrara Report, at ¶173; 2026 Ferrara Deposition, at p.27, 36-37; Sadoff 2026 Deposition, at p.140. Dr. Sadoff was asked about this and characterized what Ferrara had done as taking "pieces" of dozens of songs. Fluehr Decl. Ex. 20 - Sadoff 2026 Deposition, at p.140.

None of these isolated bits from the 49 songs are ever considered in their overall context and arrangement in those songs, only as filtered out to try to claim they are similar to isolated expression from Plaintiff's hook. There is no musicological basis for this method, and it is also strictly forbidden by the case law.

An expert musicologist cannot take scattered and discrete portions of dozens of songs it claims are similar to bits and pieces of the selection and arrangement Plaintiff's composition, arbitrarily combine them together, and then claim that the composition of Plaintiff's song is commonplace when nothing like the actual selection and arrangement of the plaintiff's hook appears in the prior art. *Swirsky*, 376 F.3d at 848 ("To pull these elements out of a song individually, without also looking at them in combination, is to perform an incomplete and distorted musicological analysis."); *see also Skidmore v. Zeppelin*, 952 F. 3d 1051, 1075 (9th Cir. 2020) (party cannot take unrelated scattered similarities in a song to create a similarity claim to another song).

Dr. Stewart is clear that this is not a proper musicological methodology to analyze music or the prior art. Stewart 2026 Declaration, at ¶14-20. Dr. Ferrara and Dr. Sadoff are doing this improperly methodology to (1) try to obscure that no other song in history has anything like Plaintiff's hook, and (2) falsely claim that Plaintiff's hook is commonplace and that therefore the SS hook's similarity is just a coincidence. Dr.

41

Sadoff was confronted on this improper methodology, and was extraordinarily evasive, refusing to answer basic questions about selection and arrangement, this improper methodology, and if he could identify even just one song in the history of music that shares a similar selection and arrangement to Plaintiff's hook. Fluehr Decl. Ex. 20 - Sadoff 2026 Deposition, at p.137-49. He refused to answer. Id.

Moreover, Dr. Ferrara's prior art analysis, which Sadoff also relies on, improperly uses filtering. He is admittedly taking isolated bits of expression from Plaintiff's song and the prior art out of context, to claim that they are similar when all the 49 songs in the prior art are considered together.

That Dr. Ferrara has to resort to such extreme lengths to attempt to undermine Plaintiff's striking similarity claim speaks volumes. Keep in mind that not a single one of the prior art songs cited by Ferrara contains a selection and arrangement similar to the vocal melody and lyrics of the hook of Plaintiff's Dancing With a Stranger. Dr. Ferrara's so-called prior art analysis, on which he relies to undermine the claim of striking similarity, is pure advocacy unmoored from any musicological principles.

**(3)     Defense Expert's Sampling Arguments are Irrelevant and Factually False**

Perhaps cognizant of the fact that the hooks are virtually the same, and that this is an expert dispute, Defendants have manufactured a new defense. Defendants claim that because some of the production background of Plaintiff's song contains almost imperceptible samples of recordings, that Plaintiff's copyright is invalid. Defendants' argument is factually and legally frivolous; the evidence and expert testimony it relies on are objected to as irrelevant and also under Rule 702.

Defendants cite to limited district court cases, and two Second and Seventh Circuit cases, to argue that if a plaintiff's work derives from a prior work without authorization, and that prior work also pervades the plaintiff's work, that therefore the plaintiff's copyright is invalidated.  It is important to note that the authority Defendants cite states that for invalidation to be proper ***the expression at issue in question must***

*actually derive from a prior work*, the use of the prior work must be unlawful, and pervade the derivative work. Defendants' argument fails for numerous reasons.

**First**, copyright exists for all original works once fixed in a tangible medium. The uncontradicted evidence is that the vocal melody and lyrics of Plaintiff's hook at issue was independently created by Jordan Vincent on his own and by himself in early 2015 after he heard an NPR interview about a young woman with a medical condition who died dancing at a club with a stranger. Fact 143.

The production which used some sampling that Defendants complain about was created separately. Fact 144. There is also no claim that any of the samples concern this infringement claim or were used in SS. Fact 144. Significantly, this is a composition claim, not a sound recording sampling claim.

It is therefore impossible for Plaintiff's lyric and vocal melody hook to have derived from the samples Defendants identify, nor does these almost imperceptible sound recording sampling pervade[5] the composition of Plaintiff's independently created lyrics and vocal melody. Fact 143-144; Stewart 2026 Declaration, at ¶21-24.

Defendants' motion tries to obscure that it is not enough under the precedent they cite for unauthorized material to be present or "pervade" the Plaintiff's work. The expression at issue that is the subject of the claim must actually derive from the unauthorized material. Defendants' ignore this key point because they know the expression at issue does not derive from any sample.  This alone requires denying their argument.

**Second**, it is black letter copyright law under 17 U.S. Code § 103(b) that original works of authorship, even derivative works of authorship which use prior works, are accorded copyright to the extent they are original. Even if Plaintiff's work could somehow be viewed as derivative (although it is not), the sampling at issue is not

---

[5]    As the term "pervade" is used in the cases cited by Defendants, it means that it is integral to the copyrighted expression at issue. Here, the samples are simply in the background and are not integral to the independently created composition of the hook.

43

relevant. Any case law which contradicts section 103(b) is not valid and should be disregarded. No appellate authority in the Ninth Circuit has ever applied Defendants' argument.

**Third**, the facts of this case are sharply divergent from the cases cited by Defendant. In those cases, the primary elements of the plaintiffs work were directly derived from the prior material to such an extent that it would not exist otherwise. *See, e.g.*, *Sobhani v. @Radical.Media Inc.*, 257 F. Supp. 2d 1234, 1239-41 (C.D. Cal. 2003). Furthermore, unlike here, the derivative material over which the plaintiff claimed copyright was the exact and primary subject matter at issue in the infringement dispute. *Id.*; *see, e.g., JBJ Fabrics, Inc. v. Brylane, Inc.*, 714 F. Supp. 107 (SDNY 1989). These facts are markedly different from this case where Plaintiff's expression is not derivative and the prior work is not the subject of the infringement claim.

**Fourth**, Defendants do not have standing to claim unauthorized use of the sound recording samples. Only the owners or beneficial owners of an exclusive right can raise such a claim. 17 U.S.C. § 501(b); *Silvers v. Sony Pictures Entertainment, Inc.*, 402 F. 3d 881 (9th Cir. 2005); *Warren v. Fox Family Worldwide, Inc.*, 328 F. 3d 1136, 1140 (9th Cir. 2003). Defendants do not such standing, and none of the cases they cite raise this point.

 It is also unknown if this prior work is de minimis or fair use or is in the public domain or has been waived; none of this is at issue in this case and such issues have not been adjudicated, nor should they. Defendants obviously want to create a distraction from their own conduct, which should be rejected.

**Fifth**, Defendants first made conclusory reference to this brand new argument in the meet and confer shortly before this motion was field, but refused to provide any case law or explanation as to what they were talking about when asked. Only after the meet and confer deadline passed, did they provide any case law. Defendants are attempting to obtain a ruling by surprise on a highly novel issue. The issue is a distraction and has not even been actually ligated.

**(c)    Defendants' Claims of Independent Creation are Inconsistent with Other Evidence**

As the Court knows, Plaintiff is relying on striking similarity to establish access, and is not relying on direct access or widespread commercial distribution theories.

However, if Plaintiff's song was simply locked in a safe with no possibility or chance any third party had ever seen it, that would obviously call into question the viability of a claim of access. Here, the Court should know that Plaintiff's song was heavily shopped to the music community and industry by Jordan Vincent, including for instance the head of A&R at defendant Universal, from 2015 to 2017. Fact 153. The song and the music video created for it was almost picked up by Thrive Records in 2015. Fact 154. A promoter emailed it to hundreds of people in the music industry in early 2018. Fact 153. The song was publicly released on all major streaming platforms in May 2018, just 2.5 months before Defendants had their songwriting session on August 7, 2018. Fact 152. Again, Plaintiff is not claiming direct access or widespread distribution, but it is important to know that Plaintiff's song was also not secreted away.

However, the Defendants have also advanced the affirmative defense of independent creation, which Plaintiff is entitled to rebut with additional evidence.

The two Defendants who were identified as allegedly writing Defendants' hook (Smith and Napier) have repeatedly claimed that they never heard Plaintiff's song and that they independently wrote SS's hook. Fact 149. Smith further claims "I have never copied another artist's song or used another artist's songs as a template to write my own songs. That is not my practice when it comes to songwriting." Fact 149. Napier makes the same claim. Fact 149.

Discovery tends to contradict these claims. Napier admits that managers and his industry contacts send him "many" songs per year to evaluate. Fact 150. After reviewing a list of individuals on a potential 2018 distribution list provided by Plaintiff's promoter, he recognized Sam Smith's A&R contact at Universal, Jo

45

Charrington. He said that Charrington routinely sends him artists and music for his consideration and evaluation since around 2011. Fact 151.[6] This inconsistency is a dispute of fact for a jury.

A further indication that Defendants' songwriting process is not independent, and does at times use other works, is a prior infringement claim made by Tom Petty regarding Smith and Napier's hit 2013 song "Stay With Me." Smith and Napier's song contains a portion that is extraordinarily similar to Petty's "Won't Back Down." Fact 155-59. As result, Petty and a co-writer of his were given a total of 25.02% writing credit on Stay With Me (Petty was with ASCAP, and Defendants were with PRS). Fact 156.

Smith was asked in a deposition about how something like this could have happened? Smith's response was flippant and did not deny the similarity: "There's only so many notes on a piano. And that's what happened." Fact 158.[7] Smith's declaration likewise claims that Stay With Me was written independently and the similarities are coincidental. Smith 2026 Declaration, at ¶17. These blithe explanations lack credibility. Dr. Sadoff's, Smith's own expert, testified that "The notion that there's only 88 notes on a keyboard is a worthless example that things are going to duplicate. As soon as you add rhythm to the equation, there's an infinite amount of melodies that could be written." Fact 159.

[6]    Smith denied at his deposition being forwarded music. All Defendants have long denied that that Plaintiff's song was ever sent to them or seen by them. Defendants have also submitted a declaration from a records custodian at UMG, Scott Bauer, claiming that no emails were received by Universal referring to Jordan Vincent or Dancing with Strangers in 2017 or 2018.

[7]    Smith and Napier also denied knowing who Tom Petty was, or ever having hard Won't Back Down, which is very hard to believe given Petty's prominence and Won't Back Down's massive success over numerous decades.

These conclusory and flippant claims of coincidence, pretending as if complex musical expression will just replicate itself, ignores the mathematical impossibilities at play.[8] Smith's testimony and declaration therefore lack credibility.[9]

## 6. **CONCLUSION**

Defendants respectfully request that the Court grant their Motion and enter judgment in Defendants' favor.  Plaintiff respectfully requests that the Court deny Defendants' Motion.

The parties thank the Court for its time and attention in considering Defendants' Motion and Plaintiff's Opposition.

Dated: July 7, 2026

*/s/ Peter Anderson, Esq.*

Peter Anderson, Esq.
Cydney Swofford Freeman, Esq.
Eric H. Lamm, Esq.
Alex Cadena, Esq.
DAVIS WRIGHT TREMAINE LLP
Attorneys for Defendants
SAMUEL SMITH, NORMANI KORDEI HAMILTON, JAMES NAPIER, TOR HERMANSEN, MIKKEL ERIKSEN, UMG RECORDINGS, INC., UNIVERSAL MUSIC GROUP, INC., SONY MUSIC PUBLISHING (US) LLC, EMI BLACKWOOD MUSIC INC., EMI APRIL MUSIC INC., SONY CORPORATION OF AMERICA, 45TH AND 3RD MUSIC LLC, TIM & DANNY MUSIC LLC, and DOWNTOWN MUSIC PUBLISHING LLC

---

[8]   For instance, since the invention of the 52-card deck, it is almost certain that no deck has ever been shuffled into the same order twice given that the number of combinations exceeds the number of atoms in a galaxy.

[9]   Defendants claims that the Tom Petty issue is prohibited propensity evidence under Fed. RE 404(b). Plaintiff is offering it for a different purpose, because it tends to rebut Defendants claims that their songwriting process never uses outside work. Defendants do not get to prevent Plaintiff from offering evidence which rebuts their affirmative defenses.

Dated: July 7, 2026

/s/ AJ Fluehr, Esq.

Alfred (AJ) Fluehr, Esq.
FRANCIS ALEXANDER, LLC
Attorneys for Plaintiff
SOUND AND COLOR, LLC

**<u>Attestation Regarding Signatures</u>**

The undersigned attests that all signatories listed, and on whose behalf this filing is submitted, concur in this filing's content and have authorized its filing.

Dated: July 7, 2026

/s/ Peter Anderson, Esq.

Peter Anderson, Esq.