UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

SOUND AND COLOR, LLC,
Plaintiff,
v.
SAMUEL SMITH et al.,
Defendants.

Case No. 2:22-cv-01508-WLH-ASx

**ORDER RE MOTION FOR SUMMARY JUDGMENT [204]**

Before the Court is the Defendant's Motion for Summary Judgment ("Motion") filed by Defendants Samuel Smith ("Smith"), Normani Kordei Hamilton ("Hamilton") (also sued as Songs of NKH), James Napier ("Napier"), Tor Hermansen ("Hermansen"), Mikkel Eriksen ("Eriksen") (also sued as Stargate), Universal Music Group ("UMG") Recordings, Inc., UMG, Inc., Sony Music Publishing (US) LLC, EMI Blackwood Music Inc., EMI April Music Inc., Sony Corporation of America, 45th and 3rd Music LLC, Tim & Danny Music LLC, and Downtown Music Publishing LLC (collectively, "Defendants"), against Plaintiff Sound and Color, LLC ("Plaintiff") (Mot., Dkt. No. 204). The matter is fully briefed, and the Court heard oral argument from Plaintiff and Defendants (collectively, the "Parties") on

September 11, 2026. (*See* Reply, Dkt. No. 205; Minutes, Dkt. No. 209). For the reasons discussed below, the Motion is **DENIED**.

## I. BACKGROUND

This copyright-infringement action concerns whether two songs, identically titled and composed three years apart, are so strikingly similar that the later composition cannot reasonably be attributed to independent and original creation. (*See* Second Amended Complaint ("SAC"), Dkt. No. 114).

### A. Factual Background

#### *1. The Parties and Their Two Copyrighted Works*

Plaintiff is owned by Jordan Vincent ("Vincent") and the production duo SKX, consisting of Christopher Miranda ("Miranda") and Rosco Banlao ("Banlao"). (Joint Appendix of Facts ("JAF"), Dkt. No. 204-2 at 144-145; SAC ¶¶ 98, 101). In February or March 2015, Vincent, Miranda and Banlao wrote the song *Dancing with a Stranger* (also known as *Dancing With Strangers*) ("JV"). (JAF at 1). Miranda and Banlao created the instrumental music, or the beat, to JV, and Vincent wrote the accompanying vocal melody and lyrics. (*Id.* at 2–3).

On August 7, 2018, Smith, Napier, Hermansen and Eriksen wrote another song also titled *Dancing with a Stranger* ("SS"). (*Id.* at 5). Smith and Napier wrote SS's vocal melody and lyrics, and Hermansen and Eriksen composed the remaining portions of the song. (*Id.* at 6). Smith performed all vocals on an initial recording of SS. (*Id.* at 8). Hamilton performed vocals on the publicly released recording but did not participate in writing the song. (*Id.* at 9–10). Defendants released SS and its music video in January 2019. (*Id.* at 12).

#### *2. JV's Unauthorized Samples*

JV contains samples from two other copyrighted songs, *The Ha Dance* and *Think (About It*). (JAF at 99, 113). Plaintiff did not obtain licenses or permission to sample these songs. (*Id.* at 102, 117). These samples in question include one "full-

measure vocal part" from *The Ha Dance* by Masters at Work, (*Id.* at 107-110), and one two-measure portion of *Think (About It)* by Lyn Collins, (*Id.* at 118-123). Both samples play continuously throughout nearly all of JV, including in every instance where the allegedly infringed hook at issue appears. (*Id.* at 126-139). The sampled songs are submitted as Audio/Video Exhibit Nos. 19 (*The Ha Dance*) and 21 (*Think (About It)*). (Joint Appendix of Evidence ("JAE"), Audio/Video Exhibits, Audio/Video Ex. Nos. 19, 21). Plaintiff's song is submitted as Audio/Video Exhibit No. 1. (JAE, Audio/Video Exhibits, Audio/Video Ex. No. 1).

*3. Expert Reports*

Plaintiff retained Dr. Alexander Stewart ("Dr. Stewart"), a professor of music, to examine and compare JV and SS and to conduct a preliminary search for earlier compositions containing similar expression (also known as "prior art"). (JAE Tab 54 ("2023 Stewart Decl."), at 1010-35, Dkt. No. 204-4; JAE Tab 55 ("2026 Stewart Decl.") at 1038, Dkt. No. 204-4). Dr. Stewart opines that "the selection and arrangement of musical elements in JV's hook unquestionably forms a distinct, cohesive, creative, unique, and memorable hook" and that songs' "passages are nearly identical in melodic contour, rhythm, and metric placement and the pitch sequences are very similar." (2023 Stewart Decl. at 1012, 1024).

Dr. Stewart further notes that "[w]hile the pitch sequences are not identical, the identity of these passages is also defined by their identical lyrics, rhythmic durations, metric placement and structural significance" and that "[b]oth phrases begin with an anticipation of beat one with the syllable 'dan-' and descend by regular eighth notes to the syllable 'stran-' which is held for a full beat before resolving on a chord tone on the final syllable ('-ger')." (*Id.* at 1025). He also observes a "slight difference"—that "this resolution occurs a half beat later in JV." (*Id.*). He further notes that "[a] prior art search turned up no compositions with anywhere near the degree of similarity as contained in these songs." (JAE Tab 58 ("2022 Stewart Report"), at 1061, Dkt. No. 204-4). Dr. Stewart also offered a rebuttal opinion to Dr. Lawrence Ferrara and

Professor Paul Geluso, avering that "[n]othing in the 283 pages of the defendants' reports changes my earlier conclusions that the selection and arrangement of musical elements in the hooks of SS and JV are highly similar in important lyrical and melodic expression (including rhythmic and metric placement), and structural setting and supportive harmonies of their main themes and choruses" and that "[t]he creative selection and arrangement of the melody, lyrics and other elements in JV are distinctive and original and this expression forms the musical core of SS." (2023 Stewart Decl., at 1011).

Plaintiff also retained Mr. Brian Bricklin ("Mr. Bricklin"), a recording engineer and music producer, to prepare a rebuttal report in response to the expert reports submitted by Defendants' experts, Dr. Lawrence Ferrara and Paul Geluso. (JAE Tab 62 ("Bricklin Rebuttal Report"), Dkt. No. 204-4). Mr. Bricklin compared audio files of JV and SS and was retained to "give an expert opinion on the production, songwriting, and engineering" between JV and SS, and to opine the "similarities between the two songs" and "the creative songwriting process, and whether Defendants' song [was] independently created…" (JAE Tab 56 ("Bricklin Decl."), at 1047, Dkt. No. 204-4). He determined that "[w]hen comparing the melody lines of the two 'hooks,' with the exception of the length of the last note (JV extends longer than SS), *they are strikingly similar.* There are two passing notes that differ, but it is inconsequential, as they are part of the descending melody line." (Bricklin Rebuttal Report at 1145). Mr. Bricklin points out to specific similarities, "[p]articularly the melody and lyric of the 'hook.'" (*Id.*). He then opines "JV's song to be unique in selection and arrangement and this selection and arrangement to be present." (*Id*). In his report, Mr. Bricklin states that Dr. Ferrara's and Paul Geluso's conclusion on independent creation or relevance of prior art "is not legitimate," because they fail to examine the preexisting material used to create SS. (*Id.* at 1142). He also opines that the songs are "strikingly similar and similarities could not have been a coincidence, and[] the prior art identified is not relevant." (*Id.* at 1145).

Defendants retained six experts. (JAE Tab 18 ("Lamm Decl."), at 103, Dkt. 204-3). Relevant here are the following experts[1]: Dr. Lawrence Ferrara ("Dr. Ferrara"), a musicologist and full-time Professor of Music at New York University's Steinhardt School; Paul Geluso ("Mr. Geluso"), an Assistant Music Professor and the Program Director of the Music Technology Department at New York University; and Dr. Ronald Sadoff ("Dr. Sadoff"), a Professor of Music at New York University's Steinhardt School. (JAE Tab 19 ("2022 Ferrera Report"), Dkt. 204-3; JAE Tab 69 ("Geluso Report"), Dkt. 204-5; JAE Tab 71 ("Sadoff Report"), Dkt. 204-5).

Defendants asked Dr. Ferrara to prepare a comparative musicological analysis of the composition and sound recording of JV and SS. (2022 Ferrera Report). Dr. Ferrara opines, among other things, that he "found that there are no significant structural, harmonic, rhythmic, melodic, or lyrical similarities between JV and SS" and "no musicological evidence suggesting that any expression in SS was copied from JV." (*Id.* at 229). He further asserts that "any similarities between JV and SS are commonplace, coincidental, unremarkable, and not remotely suggestive of copying. (*Id.*). Dr. Ferrara also testifies that samples of original copyrighted songs, *The Ha Dance* and *Think (About It)*, "appear throughout a substantial amount of JV." (JAE Tab 13 ("2026 Ferrera Decl."), at 74, Dkt. 204-3). Dr. Ferrara describes the samples' lengths in JV as one and two measures long, respectively. (*Id.* at 74-75). In a section titled "The Samples in JV and Their Compositional Significance," Dr. Ferrara opines that the samples are important to the overall arrangement of JV." (*Id.* at 76).

---

[1] Defendants retained Dr. Jennifer Fisher ("Dr. Fisher"), an expert in choreography, to opine on the similarities between the music video for JV and SS. Dr. Fisher opined that "the similarities that exist [between the music videos] are few, generic, and not evidence of copying." (Lamm Decl. at 104). Defendants also retained Mark Wethli ("Mr. Wethli"), an expert in the field of visual arts and graphic design, to opine on the similarities between Plaintiff's business card and a textual design in SS's music video. (*Id.*). Because Plaintiff stipulated to withdraw its allegations and contention on demonstrate[ing] a reasonable possibility of access by claims of similarities between the music videos of JV and SS and the textual designs, Defendants did not submit the expert reports or declarations. (*Id.*).

Defendants retained Professor Geluso for a limited purpose: to review the sound recording between the two songs and production techniques. (Geluso Report at 1483). Professor Geluso was also tasked with preparing a rebuttal report in response to Mr. Bricklin's declaration and Dr. Stewart's expert report. (JAE Tab 70 ("Geluso Rebuttal Report"), at 1504, Dkt. 204-5). He opined, among other things, that "[t]here are no sounds recaptured or sampled from the plaintiff's sound recording in the defendants' sound recording," the "production techniques in SS are significantly different from those in JV and do not suggest that copying has occurred" and that "[c]ontrary to Dr. Stewart's statements, when JV is slowed to the tempo of SS, the keys of SS and JV do not match." (*Id.* at 1505).

Finally, Defendants retained Dr. Sadoff to review the reports of Dr. Stewart and Dr. Ferrara. (Sadoff Report at 1524). He opines that "[t]here are no significant similarities in JV and SS," and that "[a]ny similarities between the two songs are unexceptional and exist in songs that predate JV." (*Id.*). He further avers that "[i]n my review and analysis of the Stewart Report, I did not find musicological evidence that suggests that any expression in SS was copied from JV." (*Id.*)

*4. Music Theory Basics*

A note is a sound of specified pitch and duration. (JAF at 21). Pitch refers to the high or low placement of a sound, identified by letter (e.g., A, B-flat) or by scale degree (i.e., its position, first through seventh, in the scale of a song's key). (*Id.* at 22). A melody is a single line of music consisting primarily of a succession or sequence of notes within a melodic phrase structure. (*Id.* at 20). Contour refers to the shape of a melody's pitch movement—up, down, or repeated. (*Id.* at 23).

*5. Lyrics*

JV includes the lyric, "She said I'm gonna die/Dancing with a stranger." (*Id.* at 14). SS includes the lyric, "Ooh, baby, baby, I'm dancing with a stranger/Dancing with a stranger/Dancing with a stranger/Dancing, yeah, ooh." (*Id.* at 15). Apart from the four-word phrase "dancing with a stranger," the Parties agree that the lyrics of JV

and SS share no similarities. (*Id.* at 16). They further agree that the phrase "dancing with a stranger" appears in more than fifteen songs predating JV, including in the title and hook of at least eight such songs. (*Id.* at 18-19).

*6. Music Theory Analysis of JV and SS*

JV is composed in the key of G minor; SS is composed in the key of F minor. (*Id.* at 24–25). Dr. Stewart transcribed JV's and SS's hook melodies as follows: (1) JV's hook is comprised of seven notes on scale degrees 7-6-6-5-4-4-3; (2) SS's hook is comprised of eight notes on scale degrees 7-5-5-5-4-4-3-3.[2] (*Id.* at 26–27; *see also* JAE Tab 72 ("Plaintiff's Stewart Dep."), at 108:17–19, 21–23, Dkt. No. 204-5). A sequence of pitches on scale degrees 7-6-5-4-3 is a portion of a descending scale. (JAF at 29). The JV hook consists of a portion of that descending scale with certain pitches repeated. (*Id.* at 30).

Dr. Stewart opines that the hook melodies for JV and SS share a descending contour, moving from a higher pitch at the first note to a lower pitch at the last. (*Id.* at 34). He also notes that the beginning of each syllable in "dan-cing with a stran-ger" falls on the same beat in both hooks. (*Id.* at 47). Plaintiff's experts do not contend that similarities in the chord progressions, the drum beat or the overall "feel" of the songs amount to, establish, or otherwise constitute evidence of striking similarities. (*See id.* at 65, 72).

*7. Stipulation*

Plaintiff does not contend that it can establish that the authors of SS had any reasonable possibility of access to JV—whether through wide dissemination, a chain of people, companies or events or claimed similarities between the music videos for JV and SS. (*See* Dkt. No. 203, "Order Granting Stipulation").

[2] In his 2023 deposition, Dr. Stewart explained that SS "passes through six on its way to five in a sliding, you know, inflected pitch downward" that he did not notate because "lot of nuances like that that are not really that readily captured in notation in neither Dr. Ferrara's nor my work." (Plaintiff's Stewart Dep. at 108:17–19, 21–23).

**B. Procedural Background**

Plaintiff filed this action on March 4, 2022. (Compl., Dkt. No. 1). On July 25, 2022, Defendants moved to dismiss Plaintiff's claims for contributory copyright infringement, vicarious copyright infringement, statutory damages, attorneys' fees and punitive or exemplary damages, and also moved to strike. (Dkt. No. 40). Plaintiff responded by filing a First Amended Complaint ("FAC") on August 15, 2022. (Dkt. No. 45). The Court thus deemed the Defendants' motions to dismiss and strike moot on August 18, 2022. (Dkt. No. 46).

On September 2, 2022, Defendants again moved to dismiss Plaintiff's claims for contributory and vicarious copyright infringement as legally infirm, and separately moved to dismiss on jurisdictional and venue grounds. (*See* Dkt Nos. 50–51). Plaintiff opposed both motions on September 7, 2022. (Dkt. Nos. 52–53). On the parties' stipulation, the Court bifurcated discovery for an initial expert phase addressing the extrinsic test and the claimed recapture of the sound recording's sounds from another sound recording. (Dkt. Nos. 54–55).

Defendants filed a motion for summary judgment on the extrinsic test on February 17, 2023. (Dkt. No. 98). Plaintiff opposed the motion on March 10, 2023, (Dkt. No. 106), and filed the operative Second Amended Complaint ("SAC") eleven days later on March 21, 2023. (Dkt. No. 114). On April 18, 2023, Defendants again moved to dismiss Plaintiff's vicarious infringement claim. (Dkt. No. 122). Plaintiff opposed that motion on May 2, 2023. (Dkt. No. 129). On September 6, 2023, the Court granted Defendants' motion for summary judgment on the extrinsic test. (Dkt. No. 146). Plaintiff appealed that decision on October 6, 2023, (Dkt. No. 156), and the Ninth Circuit reversed and remanded on June 30, 2025, (Dkt. No. 171).

Following remand, Defendants moved to bifurcate liability and damages discovery, which Plaintiff opposed. (Dkt. Nos. 174, 177). On September 4, 2025, the Court dismissed Plaintiff's vicarious infringement claim, granted Defendants' motion

to bifurcate discovery and directed the Parties to complete liability discovery before turning to damages. (*See* Dkt. No. 185).

On May 27, 2026, the Parties filed a joint stipulation regarding Plaintiff's contentions on the element of factual copying (the "Stipulation," Dkt. No. 202). The Court granted that Stipulation on June 18, 2026, ordering as follows:

> 1. As to the copyright infringement element that copying occurred, Plaintiff has withdrawn its allegations and contentions that it can demonstrate the authors of Defendants' Dancing with a Stranger musical composition ("SS") had a reasonable possibility of access to Plaintiff's Dancing with Strangers a/k/a Dancing with a Stranger ("JV") by way of a particular chain of intermediary individuals, companies, or events, or because JV was widely disseminated.
>
> 2. Plaintiff has also withdrawn its allegations and contentions that it can demonstrate a reasonable possibility of access by way of alleged similarities between the music videos for JV and SS, and/or between a business card for Sound & Color LLC and a visual design that appears in the music video for SS.
>
> 3. Plaintiff's contention at summary judgment is that JV and SS are strikingly similar, as the basis to establish that copying in fact occurred, which Plaintiff contends is supported by expert testimony and other facts regarding Plaintiff's song's public availability and Defendants' creative process.

(Order Granting Stipulation).

The Parties filed the instant Motion on July 7, 2026, along with the JAF, JAE, Joint Appendix of Objections ("JAO", Dkt. No. 204-6) and a Request for Judicial Notice ("RJN," Dkt. No. 204-7). Defendants filed their Reply on July 21, 2026. (Dkt. No. 205).

## II. LEGAL STANDARD

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it may affect the outcome of the case under the governing law. *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012). A dispute is genuine "if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the nonmoving party bears the burden of proof at trial, the moving party may carry its initial burden by "pointing out . . . that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. The burden then shifts to the nonmoving to produce "specific facts," supported by admissible evidence, "showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *accord Bernstein v. Virgin Am., Inc.*, 365 F. Supp. 3d 980, 984 (N.D. Cal. 2019). Alternatively, where the moving party bears the burden of proof at trial, they must "establish[] the absence of a genuine issue of fact on each issue material to its case." *Bernstein*, 365 F. Supp. 3d at 984 (quoting *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000)). If the moving party satisfies its initial burden, and the nonmoving party fails to satisfy their rebuttal burden, then "the moving party is entitled to summary judgment." *Id.* (citing *Celotex Corp.*, 477 U.S. at 322–23).

In determining whether a reasonable trier of fact could return a verdict for the nonmoving party, courts draw "all justifiable inferences in [the nonmoving party's] favor." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Anderson*, 477 U.S. at 255). It is the nonmoving party's obligation, however, to produce the factual predicates from which such inferences may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd sub nom.*, *Richards v. Neilson*, 810 F.2d 898 (9th Cir. 1987). The nonmoving party cannot defeat summary judgment based on "[t]he mere existence of a scintilla of evidence in support of the[ir] . . . position." *Anderson*, 477 U.S. at 252. Nor can they withstand summary judgment through "mere conclusory allegations unsupported by factual data," *Angel v. Seattle-First Nat'l Bank*, 653 F.2d 1293 (9th Cir. 1981),

speculation, *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1061 (9th Cir. 2011), or "mere disagreement," *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989).

## III. REQUEST FOR JUDICAL NOTICE

Defendants request the Court take judicial notice of printout registrations of copyrights in the music compositions and sound recordings for *The Ha Dance*, *Seduction*, and *Think (About It)* from the U.S. Copyright Office. Specifically, Defendants seek judicial notice on:

- The copyright in the musical composition titled *The Ha Dance*, registered on April 23, 1991, as Registration No. PA0000537187;
- The copyright in the sound recording titled *Seduction*, registered on December 15, 1989, as Registration No. SR0000103281, and on January 12, 1989, as Registration No. SR0000100633;
- The copyright in the musical composition titled *Think (About It)*, registered on June 21, 1972, as Registration No. EU338686, and renewed on January 5, 2000, as Registration No. RE0000820154; and
- The copyright in the sound recording of *Think (About It)*, registered on May 5, 1972, as Registration No. N00000000942, and renewed on December 22, 2000, as Registration No. RE0000852198.

(RJN at 1).

A court may consider matters that are proper subjects of judicial notice under Federal Rules of Evidence ("FRE") 201. Under FRE 201(b), "[t]he court *may* judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FRE 201(b) (emphasis added). FRE 201(c) further states that a court "(1) may take judicial notice on its own; or (2) must take judicial notice if a party requests it and the court is supplied with the necessary information." FRE 201(c).

"Copyright certificates are the type of documents that the court may judicially notice under [FRE] 201(b)(2)." *Warren v. Fox Family Worldwide, Inc.*, 171 F. Supp. 2d 1057, 1062 (C.D. Cal. 2001), aff'd, 328 F.3d 1136 (9th Cir. 2003). "This includes

printouts of registrations from the Copyright Office's webpage." *Hybrid Promotions, LLC v. Zaslavsky*, No. CV 16-02227-RAO, 2016 WL 10988656, at *6 (C.D. Cal. Oct. 5, 2016).

Because the printout registrations are properly the subject of judicial notice, the Court **GRANTS** the request for judicial notice.

## IV. EVIDENTIARY OBJECTIONS

The Parties' objections are voluminous and, for the most part, undifferentiated. "In motions for summary judgment with numerous objections, it is often unnecessary and impractical for a court to methodically scrutinize each objection and give a full analysis of each argument raised." *Capitol Recs., LLC v. BlueBeat, Inc.*, 765 F. Supp. 2d 1198, 1200 n.1 (C.D. Cal. 2010) (citation omitted). The objections fall into the three categories: (1) objections to expert testimony, opinions and evidence; (2) form objections, including objections based on speculation, relevance, personal knowledge, hearsay, foundation and legal conclusions and (3) objections to evidence the Court does not rely on in resolving the Motion. The Court addresses the objections by category.

### A. Objections to Expert Evidence

Plaintiff seeks to exclude testimony and opinions of Drs. Lawrence Ferrara and Ronald Sadoff on extrinsic and striking similarity and prior art under FRE 702(c)–(d). (JAO at 1–7). Rule 702 governs the admissibility of expert testimony. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). Generally, an expert's testimony must be reliable. *See* FRE 702(c)–(d). Testimony is reliable if it is "the product of reliable principles and methods," and the expert "reliably appl[ies]" those principles and methods to the facts of the case. *Id*. Generally, flaws in a proffered expert's analysis go to the weight of their testimony rather than its admissibility. *See, e.g.*, *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1188 (9th Cir. 2002) ("In most cases, objections to the inadequacies of a study are more appropriately considered an objection going to the weight of the evidence rather than its admissibility").

Plaintiff broadly asserts that Drs. Ferrara and Sadoff used "improper methodology in violation of . . . 702(c-d)." (JAO at 1–7). That blanket assertion is not enough to warrant excluding Defendants' expert evidence. (*See* Standing Order for Mots. for Summ. J. ("Standing Order MSJ") at 12 ("Blanket or boilerplate objections [to evidence in the JAE] will be overruled and disregarded.")). An objection must state the specific grounds on which it rests as to each particular item of evidence. *Bond v. Arrowhead Reg'l Med. Ctr.,* No. 11-cv-02049-DDP, 2015 WL 509823, at *5 (C.D. Cal. Feb. 5, 2015), *aff'd sub nom. Bond v. Miller*, 684 F. App'x 622 (9th Cir. 2017). The Court cannot assess a methodological challenge that is never applied to any particular opinion that Plaintiff identifies. *Id.*; *see, e.g.*, *Stonefire Grill, Inc. v. FGF Brands, Inc.*, 987 F. Supp. 2d 1023, 1033 (C.D. Cal. 2013) ("[T]he Court will not scrutinize each objection and give a full analysis of identical objections raised as to each fact."). The Court therefore **OVERRULES** Plaintiff's blanket objections.

Plaintiff also objects to expert opinions and evidence Defendants offer in support of the argument that Plaintiff's copyright is invalid because JV allegedly pervasively uses unauthorized sampling from two songs—*The Ha Dance* and *Think (About It)*. (*See* JAO at 7; *see also* Mot. at 42–44). Plaintiff contends that Defendants' expert opinions and evidence are "legally invalid and irrelevant" and "fail to opine that Plaintiff's work derived from alleged unauthorized samples." (JAO at 7). The Parties further dispute whether Defendants' experts *can* "opine that the samples are compositional." (*Id.*). "Objections to evidence on the ground that it is irrelevant, speculative, and/or argumentative, or that it constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself." *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006). The Court therefore "need not entertain such objections." *Sernett v. Unum Grp.*, 787 F. Supp. 3d 1034, 1041 (C.D. Cal. 2025). Accordingly, the Court **OVERRULES** them.

Defendants, for their part, seek to exclude portions of Dr. Stewart's declaration under FRE 702(b) or (c). They do not, however, explain why Dr. Stewart's testimony

is not "based on sufficient facts or data," FRE 702(b), or is not based "reliable principles and methods," *id.* 702(c). (*See generally* FRE 702(b), (d)). Defendants' blanket evidentiary objections, untethered to any specific portion of Dr. Stewart's declaration, identify nothing for the Court to rule on. Their "[b]oilerplate, generalized objections inadequate and tantamount to making no objection at all." *Collins v. Landry's, Inc.*, Case No. 2:13-cv-01674-JCM-VCF, 2014 WL 2770702, at *3 (D. Nev. June 17, 2014) (citing *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)). The Court therefore **OVERRULES** Defendants' objections.

### B. Objections to Form of Evidence and Objections Duplicating the Summary Judgment Standard

At summary judgment, the guiding principle of admissibility is whether the "contents of a document can be presented in a form that would be admissible at trial—for example, through live testimony by the author of the document. . ." *Sandoval v. County of San Diego*, 985 F.3d 657, 666 (9th Cir. 2021). Thus, "a party does not necessarily have to produce evidence in a form that would be admissible at trial" to succeed on or defend against summary judgment. *Nev. Dep't of Corrs. v. Green*, 648 F.3d 1014, 1019 (9th Cir 2011). Form objections, "and objections based on relevance, vagueness, and speculation, if made to the substance of the evidence," are duplicative of the summary judgment standard. *Mountjoy v. Seterus, Inc.*, No. 15-CV-02204-DJC-DB, 2023 WL 4086763, at *6 (E.D. Cal. June 20, 2023); *Burch*, 433 F. Supp. 2d at 1119 ("[O]bjections to evidence on the ground that it is irrelevant, speculative, and/or argumentative, or that it constitutes an improper legal conclusion are all duplicative of the summary judgment standard."). In the same vein, courts need not consider "any objections on the grounds that the evidence is irrelevant, speculative, argumentative, prejudicial, that it constitutes hearsay or inadmissible lay opinion, or that there is a lack [of] personal knowledge." *Holt v. Noble House Hotels & Resort, Ltd.*, 370 F. Supp. 3d 1158, 1164 (S.D. Cal. 2019) (*citing Burch*, 433 F. Supp. 2d at 1122).

Here, a majority of Defendants' objections fall in these categories. The Court therefore **OVERRULES** them.

### C. <u>Mootness</u>

The Court does not rely materially on any evidence to which the Parties object on grounds not addressed above. It therefore need not issue separate evidentiary rulings on all of the Parties' individual objections. *Sernett*, 787 F. Supp. 3d at 1041.

## V. DISCUSSION

Defendants offer two grounds to support their contention that they are entitled to summary judgment on Plaintiff's copyright infringement claim. First, Defendants argue that no reasonable jury could find the JV and SS hooks strikingly similar, which is the only remaining route available to Plaintiff to establish copying. (Mot. at 6–7, 11). Second, Defendants assert that the allegedly infringed portion of the JV hook lies outside the scope of Plaintiff's copyright because that hook itself rests on unauthorized sampling of prior art. (*Id.* at 24). Plaintiff responds that its expert evidence conflicts with Defendants' and that that conflict renders the infringement question a factual one that is reserved for the jury. (*Id.* at 2).

As discussed below, Plaintiff's experts do more than simply trade adjectives with Defendants'. As to Defendants' first ground, Plaintiffs have sufficiently introduced an issue of material fact regarding striking similarity and independent creation which precludes a finding of no copyright infringement on summary judgment. On the second ground, Defendants have failed to demonstrate lack of dispute of material fact regarding the substantiality of Plaintiff's unauthorized samples, which precludes finding that Plaintiffs' copyright claims fail due to such sampling. The Court therefore **DENIES** the Motion.

### A. <u>Copyright Infringement</u>

To prevail on a claim of copyright infringement, a plaintiff must prove: (1) ownership of a valid copyright and (2) copying of protected elements of the work. *Feist Publ'ns v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *accord Three Boys*

*Music Corp. v. Bolton*, 212 F.3d 477, 481 (9th Cir. 2000), *overruled in part on other grounds by Skidmore ex rel. Randy Craig Wolde Tr. v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020) (en banc).

The second prong of infringement "contains two separate components: 'copying' and 'unlawful appropriation.'" *Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020). Copying often requires "direct evidence of copying," but absent such evidence (as is the case here), the plaintiff "can attempt to prove [copying] circumstantially" by showing that, in the absence of evidence of access,[3] the two works share such striking similarities that the similarities must be "due to copying rather than. . . coincidence, independent creation, or prior common source." *Id.* Defendants' Motion focuses on the "copying" requirement, arguing that as a matter of law Plaintiffs cannot establish copying because the works are not strikingly similar. (Mot. at 12). Striking similarity "is a high bar." *Biani v. Showtime Networks, Inc.*, 153 F.4th 957, 962 (9th Cir. 2025). "To be 'striking,' similarities must appear in a unique or complex context such that 'it is *virtually impossible* that the two works could have been independently created." *Id.* (quoting 4 Nimmer on Copyright § 13D.07) (emphasis in original). In assessing striking similarity at summary judgment,

> [T]his Circuit applies a two-part analysis: the extrinsic test and the intrinsic test. The extrinsic test requires plaintiffs to show overlap of concrete elements based on objective criteria, while the intrinsic test is subjective and asks whether the ordinary, reasonable person would find

---

[3] Plaintiff abandons its pursuit of copyright infringement through evidence of access and substantial similarity. (*See* Dkt. No. 202 at 2–3 (stipulating to withdrawal of every access theory it advanced, including access through wide dissemination and particular chain of individuals, companies or events); *see also* Dkt No. 203 (accepting stipulation)). Because Plaintiff has removed its access theories from this case as a basis to establish infringement, the Court does not reach the copying question under the access-plus-substantial-similarity analysis. *See Ambrosetti v. Oregon Cath. Press*, 151 F.4th 1211, 1219 (9th Cir. 2025) ("Even if there is no evidence of access, a plaintiff can still prevail if he or she can show "striking similarity" between the works. As such, a plaintiff can proceed on a copyright claim in one of two ways in the absence of direct evidence: by showing access and substantial similarity, or by showing striking similarity alone").

> 'the total concept and feel of the works' to be substantially similar. Because substantial similarity is usually an extremely close issue of fact. . . summary judgment has been disfavored in cases involving intellectual property. However, a grant of summary judgment for the plaintiff is proper where works are so overwhelmingly identical that the possibility of independent creation is precluded.

*Unicolors, Inc. v. Urb. Outfitters, Inc.*, 853 F.3d 980, 985 (9th Cir. 2017). Because the focus at this stage is whether the defendant actually copied the plaintiff's work (and not whether the alleged copying constitutes unlawful appropriation), proof of striking similarity may rely on similarities between both protectable or unprotectable elements. *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1117 (9th Cir. 2018). A showing of striking similarity creates a presumption of copying, which a defendant can rebut with a showing that the similarities arise from coincidence, independent creation, or prior common source. *Biani*, 153 F.4th at 262-63*; Bernal v. Paradigm Talent & Literary Agency*, 788 F. Supp. 2d 1043, 1052 (C.D. Cal. 2010) (quoting 4 Nimmer on Copyright § 13.02B).

*1. Striking Similarity*[4]

To evaluate whether the works are so dissimilar that they cannot be strikingly similar as a matter of law, we first apply the extrinsic test. *Unicolors*, 853 F.3d at 985; *Biani*, 153 F.4th at 963.[5] In the musical landscape, the Ninth Circuit has declined

---

[4] Plaintiff offers facts about JV's public availability and Defendants' creative process to preemptively rebut any argument that the similarities between the works arise from independent creation. (Mot. at 45-47). As per the parties' joint stipulation, this Court does not construe these facts as evidence of access, (Stipulation at 3), but rather as evidence that it was *possible* to copy JV. *Unicolors,* 853 F.3d at 988 ("[a]lthough plaintiffs need not show evidence of access to demonstrate copying where the works are strikingly similar, [plaintiffs] did present evidence that the Subject Design was not kept under lock and key. . . This evidence demonstrates that [defendant] could have accessed and copied the Subject Design.") Ultimately, however, Defendant's Motion does not rebut Plaintiff's striking similarity arguments by demonstrating that the similarities arise from independent creation, so this Court need not rely on Plaintiff's proffered facts regarding JV's availability or Defendants' creative process.

[5] At oral argument, Defendant's counsel cited *Biani*, 153 F.4th 957, and *Rentmeester*, 883 F.3d 1111,

(*Continued on next page.*)

to furnish a uniform set of factors to analyze under the extrinsic test, explaining that "[m]usic, like software programs and art objects, is not capable of ready classification into only five or six constituent elements; music is comprised of a large array of elements, some combination of which is protectable by copyright." *Swirsky v. Carey*, 376 F.3d 841, 849 (9th Cir. 2004), *as amended on denial of reh'g* (Aug. 24, 2004). Courts have instead considered "components of musical compositions, including melody, harmony, rhythm, pitch, tempo, phrasing, structure, chord progressions, and lyrics." *Swirsky*, 376 F.3d at 847–48. "Objective analysis of music under the extrinsic test cannot mean that a court may simply compare the numerical representations of pitch sequences and the visual representations of notes to determine that two choruses are not substantially similar, without regard to other elements of the

---

to argue that when assessing whether two works are so strikingly similar so as to permit an inference of copying, the extrinsic test does not apply. Though it is true that a finding of striking similarity probative of copying "may be based on the overlap of unprotectable as well as protectable elements," *Skidmore*, 952 F.3d at 1064 (9th Cir. 2020) (citing *Rentmeester*, 883 F.3d at 1117), courts must still evaluate the similarities using "concrete elements based on objective criteria," i.e., the extrinsic test. *Unicolors*, 853 F.3d at 985 ("[i]n assessing whether particular works are substantially similar, or strikingly similar, [to establish copying,] this Circuit applies a two-part analysis: the extrinsic test and the intrinsic test"); *see also Biani*, 153 F.4th at 963 ("in assessing the plausibility of [plaintiff's] "copying" allegations, the district court improperly filtered out unprotectable elements of the works, which is the ''extrinsic test' for *unlawful [ ]appropriation*,'" but not the extrinsic test for copying) (emphasis in original). *Biani* clarifies that in assessing whether two works are so strikingly similar that they may permit an inference of copying, courts apply the extrinsic test to consider the objective similarities between both protectable and unprotectable elements of the works. *See id.* at 963-64 (finding that the district court erred when assessing striking similarity under the copying prong by applying the extrinsic test only to protectable elements, rectifying the analysis by also "considering [the objective similarities between] unprotectable elements of the two works," and finding that also applying the extrinsic test to the unprotectable elements still resulted in a finding that the works were not so strikingly similar as to permit an inference a copying). Furthermore, the *Biani* decision's recency does not overrule the previous panel's decision in *Unicolors*. *See CoreCivic, Inc. v. Candide Group, LLC*, 46 F.4th 1136, 1141 (2022) (holding that a circuit panel will not overrule a prior circuit decision unless it is "clearly irreconcilable" with an "intervening higher authority," which is a "high standard" and difficult to overcome); *Hart v. Massanari,* 266 F.3d 1155, 1171 (9th Cir. 2001) ("[o]nce a panel resolves an issue in a precedential opinion, the matter is deemed resolved, unless overruled by the court itself sitting en banc, or by the Supreme Court").

compositions." *Id*. A work must be viewed "as the sum of all the relevant elements together." *Ambrosetti v. Oregon Cath. Press*, 151 F.4th 1211, 1225 (9th Cir. 2025).

Here, Defendants would have the Court compare pitch sequences alone, then rhythm alone, then metric placement alone, then contour alone. (Mot. at 17–18). Disassemble any two works enough and neither would resemble anything. *See Ambrosetti*, 151 F.4th at 1225 (warning courts against "separat[ing] out each piece of glass within the kaleidoscope of an overall work"). This is a particularly challenging path in this case given that the Ninth Circuit has already found that there is a question of fact as to substantial similarity, (Dkt. No. 170 at 4-5), and there is not clear Ninth Circuit authority as to what more the higher standard of striking similarity would require for a finding as a matter of law. *See Malibu Textiles, Inc. v. Label Lane, Int'l, Inc.*, 922 F.3d 946, 953 (9th Cir. 2019) (acknowledging this Circuit "do[es] not have a well-defined standard for assessing when similarity in selection and arrangement becomes . . . striking"). The Court declines Defendant's invitation and instead views the relevant works "as the sum of all the relevant elements together." *Ambrosetti*, 151 F.4th at 1225.

*2. Dr. Stewart's Opinions*

Plaintiffs rely on Dr. Stewart's testimony, declarations and reports to establish striking similarity. Defendants contend that Dr. Stewart's opinions are conclusory and fail to create any genuine dispute as to strikingly similarity. (Mot. at 20–23). In support, Defendants press two points. First, Dr. Stewart says that the JV and SS hooks are "so similar" that independent creation is "highly unlikely," which Defendants view as falling short of foreclosing independent creation. (*Id.* at 21). Second, Dr. Stewart dismisses admitted pitch differences in the hook melodies for JV and SS as "insignificant" without explaining why the remaining similarities "can only be the result of copying." (*Id.*). Each of these arguments fail.

Defendants treat Dr. Stewart's use of the phrase "highly unlikely" as a concession that copying is a mere probability as opposed to a certainty. (*See* Mot.

at 20). But that is the phrase the Ninth Circuit itself has employed in assessing striking similarity. *See Malibu Textiles,* 922 F.3d at 953 (explaining that "similarities are 'striking' enough" when they are "*highly unlikely* to have been the product of independent creation") (emphasis added), *overruled in part on other grounds by Skidmore*, 952 F.3d 1051 (9th Cir. 2020). Dr. Stewart's opinion tracks that standard, yet Defendants inexplicably fault him for it.

Defendants' dissatisfaction for Dr. Stewart's "so similar" remark also misapprehends the applicable standard for striking similarity. The standard is not as mechanical as Defendants suggest. The Ninth Circuit has acknowledged that it "do[es] not have a well-defined standard for assessing when similarity in selection and arrangement becomes . . . striking," "and in truth no hard-and-fast rule could be devised to guide determinations that will necessarily turn on the unique facts of each case." *Malibu Textiles*, 922 F.3d at 953 (quoting *Rentmeester*, 883 F.3d at 1121).

Turning to the musicological analysis underpinning the adverbs and conclusions of Dr. Stewart that Defendants contest, Dr. Stewart opined that the hooks' "pitch sequence between the songs is very similar, the melodic contour is the same, the metric placement of the beginning of the lyrical syllables lines up perfectly, and the rhythmic configuration is virtually identical only being a half beat displaced" (JAE Tab 54, at 1028, Dkt. No. 204-4). He identified the specific pitch divergences—the 7-6-6-5-4-4-3 in JV versus the 7-5-5-5-4-4 3-3 in SS—and explained that the different tones, i.e. the 6s, are "momentary passing tones . . . which [are] definitionally not significant." (*Id*. at 1028). He supported his conclusion that the differences between the works are minor with musicological analysis. (*Id.* at 1027 (citing the *Harvard Dictionary of Music*) ("the 6s are textbook examples of a passing tone… Passing tones are defined as unessential") (cleaned up)). Dr. Stewart further opines that the pitch sequences nonetheless are probative of copying despite these minor differences by pointing out that "the contour, or direction of the pitches from 7 to 3, is the same in both hooks. This is not common at all, as even Dr. Ferrera admits." (*Id.* at 1026). He

concluded that "[i]t is highly unlikely that the similarity in the creative selection and arranging of these elements is coincidental." (*Id.* at 1035; *see also* JAE Tab 59 ("Stewart Rebuttal Report") at 1093).

Despite Defendants' characterization, Dr. Stewart's opinion is not conclusory. Dr. Stewart listed the elements of the two songs that he compared, identified where the works diverge rather than hiding the divergence, supplied a musicological justification explaining why the divergence carried little weight, and tied his conclusion to the combination of elements rather than to any one of them. (2022 Stewart Report at 1060-1069). Defendants might disapprove of each intermediate analytical step that culminated in Dr. Stewart's conclusion, but Dr. Stewart does considerably more than baldly assert the ultimate facts supporting a determination of striking similarity.

Defendants' reliance on *Schultz v. Holmes*, 264 F.2d 942, 944 n.2 (9th Cir. 1959), does not change the analysis. (Mot. at 21). They read *Schultz* to hold that "a difference in little more than a single passing tone can preclude" a striking-similarity showing. (*Id.*) But *Schultz* is distinguishable. The case reached the Ninth Circuit after a bench trial, and the Ninth Circuit held only that the "findings of the trial court concerning similarity and copying [were not] clearly erroneous." *Schultz*, 264 F.2d at 942. A deferential review of findings made by the factfinder tells the Court nothing about the likelihood of a factfinder making the same findings here.

*Ambrosetti* is the closer fit. There, the Ninth Circuit found a genuine dispute as to striking similarity and reversed the grant of summary judgment, identifying "some noted differences between the works, such as certain differences in pitch sequence and rhythm," and holding that those differences did not "necessarily preclude a finding of striking similarity." *Ambrosetti*, 151 F.4th at 1226. The differences that Defendants press here appear to be of the same order as those in *Ambrosetti* that rendered summary judgment improper.

Defendants further contend that there are several other differences: "[t]he phrase 'dancing with a stranger' is a fragment of otherwise very different lyrics in each song's chorus," "*melodies* to which "dancing with a stranger" are sung in JV and SS are different," "there are differences in the contour," and "there are differences in the rhythms (duration and metric placement)." In doing so, Defendants suggest that the Court separate each element of the work in isolation, such as the pitch sequences, duration and metric placement, contour, rhythm, (Mot. at 17-18), but the Court refuses to do so. As the Ninth Circuit has explained, analyzing each element in isolation is improper. *See Ambrosetti*, 151 F.4th at 1225 ("We cannot separate out each piece of glass within the kaleidoscope of an overall work: rather, we must view the work as the sum of all the relevant elements together"); *see also Swirsky*, 376 F.3d at 847–48 ("Objective analysis of music under the extrinsic test cannot mean that a court may simply compare the numerical representations of pitch sequences and the visual representations of notes to determine that two choruses are not substantially similar,[6] without regard to other elements of the compositions. Under that approach, expert testimony would not be required at all[.]").

*3. Mr. Bricklin's Opinions*

Plaintiffs introduce Mr. Bricklin's statements to, among other things, opine that the songs are "strikingly similar and similarities. Defendants argue that Mr. Bricklin's statement that the JV and SS songs are "strikingly similar" is an inadmissible legal conclusion and that his opinion is not "based on reliable principles and methods." (Mot. at 21–22). The Court addresses each in turn.

It is well settled that, in a civil case, "[a]n opinion [that would be helpful to the trier of fact] is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704(a). In any case, Mr. Bricklin's opinion that the hook melodies of JV and SS "are strikingly similar" (Bricklin Rebuttal Report at 1144), represents the label that he

[6] Because both substantially similar and strikingly similar apply the extrinsic test, the Court sees no reason to doubt that this statement also applies to strikingly similar.

appended to his opinion rather than operating as the opinion itself. Mr. Bricklin "compar[ed] the melody lines of the two 'hooks'" note against note and reported a single difference—the length of the final note, which he stated "extends longer" in JV than in SS. (*Id.* at 1143). Strip the phrase "strikingly similar" from the declaration and that underlying audio comparison still remains. That comparison, rather than the conclusion drawn from it, would certainly help the trier of fact in resolving genuine issues of fact. Moreover, courts have regularly permitted expert testimony on the ultimate issue of striking similarity. *See, e.g.*, *Repp v. Webber*, 132 F.3d 882, 890 (2d Cir. 1997) (noting the experts opined that "no doubt about the striking similarity" and the two songs "are strikingly similar, and are so similar as to preclude separate creation").

Defendants' reliability objection fares better at this stage. Mr. Bricklin compared audio files of JV and SS and opined to the "similarities between the two songs." (Bricklin Decl. at 1047). Mr. Brickin's methodology is a "subjective comparison of the works" that is more aligned with the intrinsic test rather than the extrinsic test. *See Unicolors*, 52 F.4th at 1084 (explaining that a subjective comparison is made under intrinsic test whereas an objective comparison under extrinsic test). Accordingly, the Court does not rely on Mr. Bricklin's analysis and conclusion for this extrinsic test analysis.

Even so, the Court finds that Plaintiff's sole musicologist expert, Dr. Stewart, demonstrated a genuine issue of fact as to whether the works are strikingly similar. As the Ninth Circuit has explained "[s]o long as the plaintiff can demonstrate, through expert testimony that addresses some or all of these elements and supports its employment of them … the extrinsic test is satisfied." *Swirsky*, 376 F.3d at 849. On the basis that Plaintiffs have sufficiently demonstrated a genuine issue of material fact as to the extrinsic test, the Court need not turn to the intrinsic test in order to determine that the two songs should be presented to a jury.

*4. Evidence of Independent Creation*

Establishing striking similarity "creates a presumption of copying, which the defendant can then attempt to rebut by proving independent creation." *Biani*, 153 F.4th at 962–63 (quoting *Rentmeester*, 883 F.3d at 1117 (citation omitted).

Said another way— no matter how strikingly similar the two works appear, the presumption is rebutted "if the plaintiff admits to having kept his or her creation under lock and key." *Selle v. Gibb*, 741 F.2d 896, 901 (7th Cir. 1984). Plaintiff does not admit to this point. Nor does Plaintiff concede that Defendants' song could have been independently created; on the contrary, their experts vigorously assert that it was not. *Compare e.g., Dimmie v. Carey*, 88 F.Supp.2d 142, 149 (S.D.N.Y. 2000) (granting summary judgment in defendants' favor where defendants had substantial evidence of independent creation and plaintiff's expert failed to state that defendants' work could not have been independently created). Dr. Stewart asserts that it is "extremely unlikely that SS was created independently from JV," (2022 Stewart Report, at 1067), and Mr. Bricklin agrees the SS "was not independently created," (Bricklin Rebuttal Report at 573). Defendants dispute this assertion and provide evidence in the form of declarations and expert reports. But "[e]vidence of independent creation is insufficient to justify summary judgment, as it must be weighed against Plaintiff's prima facie case of copying." *Tokidoki, LLC v. Fortune Dynamic, Inc.*, No. 07-cv-01923-DSF-PJWx, 2008 WL 11338730, at *4 (C.D. Cal. May 27, 2008). "Whether the evidence of independent creation here is sufficient to rebut the prima facie case established in this action is a question for the factfinder ...." *Repp*, 132 F.3d at 891. Although Plaintiff's have provided arguments rebutting Defendants' claims of independent creation, (Mot. at 10-11), the Court finds the question of independent creation should be left for the jury to decide. Accordingly, Defendant's Motion is **DENIED**.

**B. Plaintiff's Unauthorized Sampling**

Defendants claim that Plaintiff's infringement claim fails as a matter of law because the portions of Plaintiff's song at issue are not protected by copyright as a result of the work's pervasive incorporation of unauthorized samples. (Mot. at 24-26).

The act of sampling copyrighted works itself, even without authorization, does not necessarily strip the end product of copyright protection:

> [E]ven where the fact of copying is conceded, no legal consequences will follow from that fact unless the copying is substantial. The principle that trivial copying does not constitute actionable infringement has long been a part of copyright law. Indeed, as Judge Learned Hand observed over 80 years ago: "Even where there is some copying, that fact is not conclusive of infringement. Some copying is permitted. In addition to copying, it must be shown that this has been done to an unfair extent."

*Newton v. Diamond*, 388 F.3d 1189, 1193 (9th Cir. 2004). "[W]here the [copying party] copies a portion of the [original] work exactly or nearly exactly," as is the case here with Plaintiff's sampling, "the dispositive question is whether the copying goes to trivial or substantial elements. Substantiality is measured by considering the qualitative and quantitative significance of the copied portion in relation to the [original]'s work as a whole." *Id.* at 1195; *see also Worth v. Selchow & Righter Co.*, 827 F.2d 569, 570 n.1 (9th Cir.1987) ("the relevant inquiry is whether a substantial portion of the protectable material in the [original] work was appropriated—not whether a substantial portion of [copier's] work was derived from [original] work"); *Litchfield v. Spielberg*, 736 F.2d 1352, 1357 (9th Cir. 1984) ("a work is not derivative unless it has been substantially copied from the prior work"). Courts describe an unauthorized sample as *de minimis* if "the use is not sufficiently significant." *Newton*, 388 F.3d at 1193.

Applying this standard, Defendants' factual submissions fail to speak to the substantiality of Plaintiffs' unauthorized samples "in relation to the [original] work[s]." *Newton*, 388 F.3d at 1195. The two unauthorized samples in question

include one "full-measure vocal part" from *The Ha Dance* by Masters at Work, (JAF at 99, 107-110), and one two-measure portion of *Think (About It)* by Lyn Collins, (JAF at 113, 118-123). Defendants point out that "*both* samples play continuously throughout 'all' parts of JV that include the allegedly infringed hook at issue," (JAF at 126-139), but fail to submit any testimony or other factual support for whether the samples are from "trivial or substantial elements" of *The Ha Dance* and *Think (About It)*. *Newton*, 388 F.3d at 1195.[7] *See also Fisher v. Dees,* 794 F.2d 432, 434 n.2 (9th Cir.1986). The frequency with which Plaintiffs played the sample in their song does not rectify this failing because even if Plaintiff "looped the [unauthorized] sample throughout" their song, the sample could still be so *de minimis* that Plaintiff would still be entitled to protection of the non-appropriated portions of their work. *Newton*, 388 F.3d at 1195. Because Defendants have failed to submit any factual support that the samples are substantial to the songs from which they originated, they have failed to demonstrate a lack of dispute of material fact sufficient to accept their sampling argument.

---

[7] Defendants cite to Section 103(a) of the Copyright Act to argue that because the unauthorized samples are playing throughout the hook of JV, the entire hook loses Copyright protection. (Mot. at 24). "[T]he effect [of section 103(a)] generally would be to deny copyright to derivative works, in which the *pre-existing work* tends to pervade the entire derivative work." 1 M. Nimmer, § 3.06, pgs. 3–22.3 thru 3–22.4 (emphasis added). Defendants interpret § 103(a) to mean that they merely need to demonstrate that the *samples* pervade Plaintiff's work. Instead, in order to prevail, Defendants must assess whether the samples consist of quantitatively and qualitatively significant portions of *The Ha Dance* and *Think (About It)* such that use of the samples throughout Plaintiff's song removes copyright protection to the derivative work. Defendants cite several authorities that denied copyright protection for a derivative work, (*see* Reply at 7), but these cases are factually distinguishable from the instant one. In Defendants' cited cases, the unauthorized taking in question was demonstrated to be substantial, both quantitatively and qualitatively. *See U.S. Auto Parts Network, Inc. v. Parts Geek, LLC,* 692 F.3d 1009, 1015 (9th Cir. 2012) (where the derivative work in question was an "enhancement[] to software programs" such that the original software program was taken in full); *Anderson v. Stallone* 1989 WL 206431, at *5 (April 25, 1989) (where the derivative movie script used the same characters and backstory of original works); *Sobhani v. @Radical.Media Inc.*, 257 F. Supp. 2d 1234, 1238 (C.D. Cal. 2003) (where the derivative work used the same singular main character for a commercial, to advertise the same product, as the original work's commercial). Defendants make no analogous showing of substantiality.

Finally, the Court's review of the songs from which the unauthorized samples originated does not itself establish lack of issue of material fact. Having listened to *The Ha Dance* and *Think (About It)*, and then Plaintiff's song, this Court finds that reasonable jurors could find that Plaintiff's samples constitute such quantitatively and qualitatively unsubstantial portions of *The Ha Dance* and *Think (About It)* that the samples are de minimis. For example, the samples are both difficult to identify or even hear within Plaintiff's song due to their low volume relative to the main melodic and vocal components of Plaintiff's song. (*See* Audio/Video Ex.s 1, 19 and 21). As a result, the average audience could very well fail to recognize the appropriation of the sampled songs when listening to Plaintiff's song, thus rendering these samples de minimis. *See Fisher v. Dees,* 794 F.2d 432, 434 n. 2 (9th Cir.1986) ("a use is de minimis only if the average audience would not recognize the appropriation [of the sampled song]"). Because this Court finds that a reasonable jury could find Plaintiff's samples to be de minimis takings from *The Ha Dance* and *Think (About It)*, Defendants have failed to prove a lack of issue of material fact as to their unauthorized sampling argument.

Accordingly, Defendants' Motion for Summary Judgment on the grounds that Plaintiff does not have any valid copyright in their work due their use of unauthorized samples is **DENIED**.

## VI. CONCLUSION

For these reasons, the Court **GRANTS** Defendants' Request for Judicial Notice and **DENIES** Defendants' Motion for Summary Judgment.

**IT IS SO ORDERED.**

Dated: September 22, 2026

HON. WESLEY L. HSU
UNITED STATES DISTRICT JUDGE